## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## MONTGOMERY DIVISION

DONALD A. KING and THE )     CIVIL ACTION NO.:
DUSTIN INMAN SOCIETY, INC., )
                            )
    Plaintiffs, )                  2:22- cv - 207 - WKW- JTA
                            )
v.                          )
                            )
THE SOUTHERN POVERTY LAW )
CENTER, INC., )
                            )
    Defendant. )

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA
2022 APR 27  A 11: 26
RECEIVED

## PLAINTIFFS' COMPLAINT

COMES NOW, Donald A. King and The Dustin Inman Society, Inc.,
Plaintiffs and files this their Complaint against Defendant The Southern Poverty Law
Center, Inc., and shows as follows:

### PARTIES

1.

Donald A. King is a resident citizen of Cobb County, Georgia.

2.

The Dustin Inman Society, Inc. is a nonprofit Georgia corporation with its
principal place of business in Cobb County, Georgia and is a corporate resident
citizen of Cobb County, Georgia.

3.

The Southern Poverty Law Center, Inc. is a nonprofit Alabama corporation
with its principal place of business in Montgomery County, Alabama with registered
agent for service Teenie Hutchison, 400 Washington Avenue, Montgomery, Alabama
36104 and is a corporate resident citizen of Montgomery County, Alabama.

1


SCANNED
4/28/22

## JURISDICTION AND VENUE

4.

Plaintiffs reincorporate the allegations contained within Paragraphs 1 - 3 of the Complaint as if fully set forth herein.

5.

This Court has jurisdiction over this matter pursuant to Section 28 U.S.C. 1332(a)(1) and this matter is timely filed pursuant to 28 U.S.C. 1367(d). Jurisdiction is based upon diversity of citizenship and the amount in controversy exceeds $75,000.00.

6.

Venue of this action is proper pursuant to Section 28 U.S.C. 1441(a).

7.

Therefore jurisdiction and venue are proper before this Court.

## FACTS

8.

Plaintiffs re-allege the allegations of Paragraphs 1 - 7 of Plaintiffs' Complaint as if fully set forth herein.

9.

Defendant The Southern Poverty Law Center, Inc., hereinafter "SPLC", maintains a list of organizations it calls "hate groups", including "anti-immigrant hate groups".

10.

This list is published on an annual basis following a census and analysis of the activities of organizations and individuals being monitored by the SPLC.

2

11.

Plaintiff Donald A. King, hereinafter referred to as "King", is the principal of the nonprofit organization and Plaintiff The Dustin Inman Society, Inc., hereinafter referred to as "DIS", an organization recognized under Section 501(c)(4) of the Internal Revenue Code with a stated mission and goal of promoting the enforcement of immigration laws in the United States.

12.

Plaintiff King chartered Plaintiff DIS in 2005 and has maintained the same or substantially similar activities in the seventeen years it has operated.

13.

Plaintiff King on behalf of Plaintiff DIS has testified to numerous legislative panels, including the U.S. House of Representatives, given speeches, written articles, and otherwise advocated for enforcement of immigration laws in the United States. Plaintiff King is the public face of Plaintiff DIS.

14.

Defendant SPLC had not labeled Plaintiff DIS an "anti-immigrant hate group" as late as October, 2017.

15.

In an October 23, 2017 news item in the Atlanta Journal Constitution is found the only explanation ever given by Defendant SPLC for changing its position regarding the designation of Plaintiff DIS:

Heidi Beirich, who directs the SPLC's efforts tracking hate groups and extremists, said she was going to take a new look at the Dustin Inman Society after learning from the AJC about its ties to US Inc. "Hearing about this US Inc. connection, I think we at the SPLC have to take a serious look at King's outfit as possibly a hate group," Beirich said, "because there is no one more extreme than John Tanton and his crew on immigration in the United States."[1]

---

[1] https://www.ajc.com/news/state--regional-govt--politics/georgia-immigration-enforcement-panel-draws-scrutiny/a4dd9fETyMZsuZt6yxSQvN/

16.

Nothing about the alleged association with US Inc causes Plaintiff DIS to meet Defendant SPLC's own definition of a "hate group".

17.

Defendant SPLC made an affirmative decision not to designate Plaintiff DIS as a "hate group". Heidi Beirich speaking on behalf of the SPLC in July of 2011 explaining to the Associated Press why Plaintiff DIS was **not** on the list of hate groups stated of Plaintiff King that, "His tactics have generally not been to get up in the face of actual immigrants and threaten them," said the law center's Heidi Beirich. "Because he is fighting, working on his legislation through the political process, that is not something we can quibble with, whether we like the law or not."[2]

18.

This statement by Defendant SPLC's agent in charge of the "hate group" project clearly demonstrated Defendant SPLC was aware of Plaintiff DIS and its activities in July of 2011 and affirmatively chose not to include Plaintiff DIS on the list of "hate groups". This was not mere neglect on Defendant SPLC's part but a calculated determination that Defendant SPLC publicly discussed in 2011.

19.

Furthermore, this statement demonstrates that Defendant SPLC would not place an organization on its "hate group" list when it is "working on the legislation through the political process" stating that "is not something we can quibble with, whether we like the law or not."[3] Legislative advocacy has been the primary activity of Plaintiff DIS since its founding and remains so today.

20.

Defendant SPLC has not indicated that Plaintiff King or Plaintiff DIS has engaged in activity different from the activities they were engaged in at the time of their July 2011 statement.

---

[2] https://www.statesboroherald.com/local/ga-man-key-to-crafting-illegal-immigration-bill/
[3] Id.

21.

Defendant SPLC did not change the criteria for the "hate group" designation
from 2011 to 2018.

22.

Defendant SPLC did not engage in any reweighing of the existing criteria for
the "hate group" designation with respect to the Plaintiffs in 2018 or subsequent
years.

23.

Plaintiff King and Plaintiff DIS specifically allege that no substantive change
occurred in their approach to supporting enforcement of immigration laws and
opposing illegal immigration.

24.

What did change is that on March 1, 2018, Defendant SPLC registered
lobbyists to work against a pro-enforcement bill pending in the Georgia General
Assembly.

25.

Around the same time, Defendant SPLC issued an annual "Intelligence
Report" of hate groups and for the first time classified Defendant DIS as an "anti-
immigrant hate group". The "hate map" that was published on February 11, 2018
included Plaintiff DIS as an "anti-immigrant hate group."

26.

Defendant SPLC issued another annual "Intelligence Report" about or around
February of 2019 again classifying Defendant DIS as an "anti-immigrant hate group".

27.

Defendant SPLC defines an "anti-immigrant hate group" as:

the most extreme of the hundreds of nativist groups that have proliferated

5

since the late 1990s, when anti-immigration xenophobia began to rise to levels not seen in the United States since the 1920s. Most white hate groups are also anti-immigrant, but anti-immigrant hate groups target only that populatoin (sic) usually arguing that immigrants are unable to assimilate, have a lower intellectual capacity than white people, bring disease or are inherently more criminal. Although many groups legitimately criticize American immigration policies, anti-immigrant hate groups go much further by pushing racist propaganda and ideas about non-white immigrants.[4]

28.

While Defendant SPLC goes on to state that it does not place this classification on individuals, the published reports focuses almost exclusively on allegations regarding Plaintiff King to support the designation as an "anti-immigrant hate group".

29.

In none of the defamatory material published by Defendant SPLC does it allege that Plaintiff King or Plaintiff DIS maligned an entire class of people or at any time fit any part of the Defendant SPLC's own definition of "anti-immigrant hate group.

30.

Further, a cursory review of Defendant DIS's web site would have revealed that the Board of Advisors of Defendant DIS is a diverse group of Americans with a variety of racial and immigration backgrounds.

31.

Most of Defendant SPLC's publications made in support of labeling Plaintiff DIS an anti-immigrant hate group are devoted to either taking statements of Plaintiff King out of context or attempting to impute the statements of others to Plaintiff King or Plaintiff DIS. The most bizarre "evidence" cited by Defendant SPLC is a letter sent to Plaintiffs by then U.S. Senator Jeff Sessions and Plaintiffs' advocacy that local law enforcement agencies utilize the federal program contained within Section 287(g) of the Immigration and Nationality Act. These libelous, defamatory publications include but are not limited to, the Defendant SPLC's Intelligence Report published in

---

[4] See generally, https://www.splcenter.org/20200318/frequently-asked-questions-about-hate-groups#immigrant

2018 and the Defendant SPLC's Intelligence Report published in 2019, and subsequent to the filing of the original complaint in this matter, the SPLC's Intelligence Report and corresponding Hate Maps published in 2020 and 2021.

32.

A letter was sent on behalf of Plaintiffs to Defendant SPLC pursuant to <u>Code of Alabama 6-5-186</u> on February 10, 2020 demanding a retraction of the defamatory classification of Plaintiff DIS as a "hate group" and the associated defamatory accusations regarding Plaintiff King, including the suggestion that he is a white nationalist.

33.

As of the filing of this Complaint, Defendant SPLC has failed to respond to the letter and continues to include Plaintiff DIS as a "hate group" in publications subsequent to the February 10, 2020 letter.

34.

Defendant SPLC has made the verifiably false fabrication and accusation that Plaintiff DIS, led by Plaintiff King, "poses as an organization concerned about immigration issues, yet focuses on vilifying all immigrants."

35.

Defendant SPLC knew at the time of these publications and the publication of the 2020 and 2021 "hate maps" that Plaintiff King's sister is a legal immigrant to the United States, that the Board of Plaintiff DIS is racially diverse and includes legal immigrants, and that the consistent unwavering position of Plaintiff King and Plaintiff DIS has been to oppose illegal immigration.

36.

Despite this knowledge, Defendant SPLC has defamed and continues to defame both Plaintiffs with false statements that are being published with the specific intent to ruin the reputation and good name of the Plaintiffs.

37.

Defendant SPLC has published the following statement:

The SPLC is the premier U.S. non-profit organization monitoring the activities of domestic hate groups and other extremists – including the <u>Ku Klux Klan</u>, the <u>neo-Nazi</u> movement, <u>neo-Confederates</u>, <u>racist skinheads</u>, <u>antigovernment militias</u>, <u>Christian Identity</u> adherents and others. We're currently tracking more than 1,600 extremist groups operating across the country. We publish investigative reports, train law enforcement officers and share key intelligence, and offer expert analysis to the media and public.[5]

38.

Defendant SPLC is not taking the posture of an opinion columnist or political pundit, but instead claims it has specialized knowledge of the groups it monitors, holding itself out as having the ability to conduct in depth investigations and offering expertise on the groups it monitors and to make factual determinations regarding the organizations it includes in the "hate map", not mere opinion.

39.

The impact of the "hate group" designation is not the same as the rantings of a single individual. By repeatedly claiming the mantle of specialized knowledge and expertise and using a specific, fact based definition to determine what a "hate group" is, Defendant SPLC's publication that Plaintiff King and Plaintiff DIS is a "hate group" causes severe reputational damage and for the target to live in a climate of constant fear for personal safety and that of his family. The Family Resource Council was targeted by a deranged individual armed with a semi-automatic handgun because he saw that Family Resource Council had been designated a "hate group" by Defendant SPLC.[6] In March of 2017, Professor Charles Murray was attempting to speak about one of his books when attacked by individuals inflamed by the Defendant SPLC labeling him a racist. One individual coming to his aid was injured so badly by the mob he had to be hospitalized.[7]

40.

Defendant SPLC has alleged in pleadings in the previous case brought before the Court that it did not conduct a basic fact finding about the Plaintiffs, like the

---

[5] See https://www.splcenter.org/fighting-hate
[6] https://www.cnn.com/2013/02/06/justice/dc-family-research-council-shooting/index.html
[7] https://www.bostonglobe.com/metro/2017/03/04/middlebury/hAfpA1Hquh7DIS1doiKbhJ/story.html

8

composition of the Board of Plaintiff DIS or the broader context of the statements of Plaintiff King.[8]

41.

For example, as part of an announcement for a February 8, 2020 public education event entitled "Honoring Immigrants: An Expert, Pro-Enforcement Conversation on Immigration," Plaintiff King speaking on behalf of Plaintiff DIS published the following statement on the website of Plaintiff DIS, "[o]ur constant reminder has always been that we cannot honor real immigrants who join the American family according to our rules and the rich tradition of immigration if we do not enforce our immigration laws."[9]

42.

Despite its claim to having no knowledge of the Board of Plaintiff DIS, Defendant SPLC references the Board of Plaintiff DIS on its own website publication about Plaintiff DIS, "**[d]espite an eight-member board of advisors**, King is responsible for most of the action taken by the organization and "works at his own expense and donations." Since the establishment of DIS, King has taken to the streets to protest and lobby legislators to curb immigration. His strategies are unusual to say the least" (emphasis added).[10]  It will be up to this Court and ultimately a jury to determine if the statement contained in pleadings previously filed by Defendant SPLC categorically denying knowledge regarding Plaintiff DIS is credible given this fact.

43.

Defendant SPLC knew of numerous other examples in the public record where Plaintiff King, speaking on behalf of Plaintiff DIS, has repeatedly articulated a position that is opposed to illegal immigration and in favor of enforcement of immigration laws and has never espoused "anti-immigrant" positions.[11]  Furthermore,

---

[8] See Defendant SPLC's Memorandum of Law in Support of Motion to Dismiss (Case Number 2:20-cv-00120-ECM-KFP, Doc. #10)

[9] https://newdustininmansociety.org/reserved_1/

[10] https://www.splcenter.org/fighting-hate/extremist-files/group/dustin-inman-society

[11] See https://www.nytimes.com/2013/08/07/us/national-push-by-a-local-immigration-activist-no-gop-retreat.html; https://www.statesboroherald.com/local/ga-man-key-to-crafting-illegal-immigration-bill/; https://jorgeramos.com/en/d-a-king-interview-august-2013/; https://www.nationalreview.com/corner/splc-part-karl-part-groucho/; https://www.thedustininmansociety.org/blog/2018/06/08/d-a-king-in-the-ajc-readers-write-torpy-dead-wrong-on-his-immigration-conclusion/; https://www.ajc.com/blog/get-schooled/enforcing-immigration-laws-puts-georgia-right-side-history-and-popular-opinion/IoIyKz9o4swQqvl3Dx5p4I/; https://www.ajc.com/news/opinion/opinion-expand-local-immigration-enforcement-efforts-funding/mlVVpCcZ0Xfty5N2BLkTrJ/; https://newdustininmansociety.org/the-illegal-alien-open-borders-lobby/; https://newdustininmansociety.org/6347-2/

9

Plaintiffs regularly communicate to a publicly available e-mail list and a regularly updated blog at the website for Plaintiff DIS, among other speaking engagements, letters to the editors, published opinion pieces, and other communications all of which make it clear that Defendant SPLC's designation of Plaintiff DIS as a "hate group" does not meet the Defendant's own definition.

44.

Defendant SPLC has demonstrated a failure to conduct any meaningful fact finding or investigation or employ any expertise regarding determining if Plaintiff DIS is a "hate group".

45.

Defendant SPLC has claimed DIS was incorporated in 2003 which is false.

46.

Defendant SPLC has claimed that Plaintiff DIS was previously known as the American Resistance Foundation which is also false.

47.

Defendant SPLC has claimed Plaintiff King has worked on immigration issues since the 1990s when he did not become interested in these issues until 2003.

48.

Defendant SPLC has claimed that Plaintiff King worked for the Georgia Coalition of Immigration Reduction in the 1990s which is false.

49.

These admissions taken together show that Defendant SPLC not only fails to investigate or have expertise at all on groups it monitors but instead shows reckless disregard for the truth and does not appear to perform any fact finding at all, before labeling Defendant DIS as a "hate group".

50.

Defendant SPLC either knew Plaintiff DIS did not meet its own definition of "hate group" and maliciously published the designation anyway or was so grossly incompetent and reckless as to be malicious in publishing the designation without doing any due diligence as they repeatedly hold out to the public that they conduct before issuing these "investigative reports" produced with the benefit of "expert analysis".

51.

Defendant SPLC knew or suspected that the designation of Plaintiff DIS as a "hate group" was false based upon its own, fact dependent definition of what constitutes a "hate group". Despite this knowledge or suspicion, Defendant SPLC published the hate maps mentioned in Plaintiffs' Complaint designating Plaintiff DIS as a "hate group".

52.

As a former longtime staffer of Defendant SPLC stated in 2019:

The annual hate-group list, which in 2018 included a thousand and twenty organizations, both small and large, remains a valuable resource for journalists and a masterstroke of Dees's marketing talents; every year, when the center publishes it, mainstream outlets write about the "rising tide of hate" discovered by the S.P.L.C.'s researchers, and reporters frequently refer to the list when they write about the groups...the fact that, though the center claimed to be effective in fighting extremism, "hate" always continued to be on the rise, more dangerous than ever, with each year's report on hate groups. "The S.P.L.C.— making hate pay," we'd say.[12]

53.

Defendant SPLC has repeatedly designated Plaintiff DIS as a "hate group" as a legislative lobbying strategy. By destroying the reputation of Plaintiff DIS by maliciously defaming it, Defendant SPLC is more likely to be successful in its lobbying efforts before the Georgia General Assembly.

---

[12] https://www.newyorker.com/news/news-desk/the-reckoning-of-morris-dees-and-the-southern-poverty-law-center

54.

Defendant SPLC has repeatedly designated Plaintiff DIS as a "hate group" in order to raise money from donors. By destroying the reputation of Plaintiff DIS by maliciously defaming it, Defendant SPLC is able to claim that the number of hate groups has increased and therefore more money is needed to pursue its mission.

55.

Defendant SPLC has maliciously defamed Plaintiff King in order to advance its own lobbying efforts in Georgia and to raise funds for its activities.

## COUNT ONE - Defamation to Plaintiff DIS

56.

Plaintiffs reincorporate the allegations of Paragraphs 1 - 55 of the Complaint as if fully set forth herein.

57.

The publication of the annual edition of Defendant's Intelligence Report on or about February 19, 2018 and subsequently in 2019, 2020, and 2021 by Defendant SPLC classifying Plaintiff DIS as an "anti-immigrant hate group" constitutes libel.

58.

The statement that Plaintiff DIS is an "anti-immigrant hate group" is false and was published by Defendant SPLC with the intention of harming the reputation of Plaintiff DIS.

59.

Defendant SPLC acted with malice in publishing libelous material intended to damage the reputation of Plaintiff DIS and neutralize the ability of Plaintiff DIS to pursue its mission.

60.

Plaintiff DIS has suffered damages as a result of Defendant SPLC's libel against it in the annual edition of the Intelligence Report published on or about February 19, 2018 as well as SPLC's "2019 Hate Map" released and distributed March 18, 2020.[13]

## COUNT TWO - Defamation to Plaintiff DIS

61.

Plaintiffs reincorporate the allegations of Paragraphs 1 - 60 of the Complaint as if fully set forth herein.

62.

The publication of the annual edition of the Intelligence Report and "Hate Map" in February of 2019, 2020, and 2021 by Defendant SPLC classifying Plaintiff DIS as a "hate group" constitutes libel.

63.

The statement that Plaintiff DIS is an "anti-immigrant hate group" is false and was published by Defendant SPLC with the intention of harming the reputation of Plaintiff DIS.

64.

Defendant SPLC acted with malice in publishing libelous material intended to damage the reputation of Plaintiff DIS and neutralize the ability of Plaintiff DIS to pursue its mission.

65.

Plaintiff DIS has suffered damages as a result of Defendant SPLC's libel against it in the annual edition of the Intelligence Report and the SPLC "Hate Map" published in February of 2019.

## COUNT THREE - Defamation to Plaintiff King

---

[13] See: https://www.splcenter.org/hate-map

13

66.

Plaintiffs reincorporate the allegations of Paragraphs 1 – 65 of the Complaint as if fully set forth herein.

67.

The publication of the annual edition of the Intelligence Report on or about February 19, 2018 and the publication of the 2018 "Hate Map" distributed in March of 2018, 2019, 2020, and 2021 by Defendant SPLC libeled Plaintiff King.

68.

The statement that Plaintiff King leads an "anti-immigrant hate group" is false and was published by Defendant SPLC with the intention of harming the reputation of Plaintiff King.

69.

Defendant SPLC acted with malice in publishing libelous material intended to damage the reputation of Plaintiff King and neutralize his ability to effectively pursue the mission he shares with Plaintiff DIS.

70.

Plaintiff King has suffered damages as a result of Defendant SPLC's libel against him in the annual edition of the Intelligence Report published in February of 2019 and the "Hate Map" published in March 2019 and March 2020 and 2021.

## COUNT FOUR - Defamation to Plaintiff King

71.

Plaintiffs reincorporate the allegations of Paragraphs 1 – 70 of the Complaint as if fully set forth herein.

72.

The publication of the annual edition of the Intelligence Report in February of 2019 as well as the "Hate Map" published in March 2018, 2019, 2020, and 2021 by Defendant SPLC libeled Plaintiff King.

73.

The statements that Plaintiff King leads an "anti-immigrant hate group" and that, "The Dustin Inman Society, led by D.A. King, poses as an organization concerned about immigration issues, yet focuses on vilifying all immigrants." are false and were published by Defendant SPLC with the intention of harming the reputation of Plaintiff King.

74.

Defendant SPLC acted with malice in publishing libelous material intended to damage the reputation of Plaintiff King and neutralize his ability to lead Plaintiff DIS.

75.

Plaintiff King has suffered damages as a result of Defendant SPLC's libel against him in the Intelligence Report published in February of 2019 and "Hate Maps" distributed March 2018, 2019, 2020, and 2021.

## COUNT FIVE - Punitive Damages

76.

Plaintiffs reincorporate the allegations of Paragraphs 1 - 75 of the Complaint as if fully set forth herein.

77.

Plaintiffs sent a written demand on February 10, 2020 for retraction of the libel published by Defendant SPLC against Plaintiffs.

78.

Defendant SPLC has failed or refused to publish within five days of that written demand a full and fair retraction of the libelous material previously published.

79.

Defendant SPLC published the libelous material regarding Plaintiffs knowing the matter was published was false or with reckless disregard of whether it was false or not.

80.

Plaintiffs therefore claim punitive damages against Defendant SPLC.

## COUNT SIX — Injunctive Relief

81.

Plaintiffs reincorporate the allegations of Paragraphs 1 - 80 of the Complaint as if fully set forth herein.

82.

Plaintiffs continue to be harmed as the libelous, defamatory content published by Defendant SPLC continues to be in print and published to Defendant's website to include the newly published Intelligence Report 2021 and "Hate Map" distributed in March of 2021.

83.

That content includes the content of the two annual editions of the Intelligence Report previously mentioned along with numerous other defamatory comments that are routinely uploaded to the Defendant's website.

84.

Plaintiffs are being damaged by the publication of this content, which Defendant SPLC knows to be false and which is published for the express purpose of damaging Plaintiffs' reputation and with malicious intent by Defendant SPLC.

16

85.

In addition to monetary damages, Plaintiffs request injunctive relief as prayed for herein below.

WHEREFORE the Plaintiffs respectfully request the following relief:

(a)   For a trial;

(b)   For compensatory damages to be awarded to the Plaintiffs and against the Defendant in an amount in excess of the jurisdictional threshold of this Court;

(c)   For punitive damages to be awarded in the amount to be determined by the trier of the fact;

(d)   For a permanent injunction ordering Defendant SPLC to remove all libelous, defamatory content regarding the Plaintiffs from its website and all other means of publication available to it and to cease and desist from republication of the same in the future and issue a public retraction and apology to Plaintiffs; and

(e)   For such other, further, and different relief as the Court may deem proper.

This 27th day of April, 2022.

/s/    **James R. McKoon, Jr.**
JAMES R. MCKOON, JR
Alabama Bar No. MCK020
Counsel for Plaintiffs

MCKOON & GAMBLE
P.O. Box 3220
Phenix City, Alabama 36868
334.297.2300
jrmckoon@aol.com