IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DONALD A. KING and THE | ) | |
| DUSTIN INMAN SOCIETY, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | |
| | ) | 2:22-cv-00207-WKW-JTA |
| THE SOUTHERN POVERTY | ) | |
| LAW CENTER, INC., | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT SOUTHERN POVERTY LAW CENTER, INC.'S
MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(B)(6)
AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Shannon L. Holliday [ASB-5440-Y77S]
Robert D. Segall [ASB-7354-E68R]
COPELAND FRANCO SCREWS & GILL, P.A.
Post Office Box 347
Montgomery, Alabama  36101-0347
Telephone: 334-834-1180
Facsimile: 334-834-3172
Email:  holliday@copelandfranco.com
Email:  segall@copelandfranco.com

Chad R. Bowman (*pro hac vice forthcoming*)
Maxwell S. Mishkin (*pro hac vice forthcoming*)
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, DC 20006
Telephone:  202-661-2200
Facsimile:  202-661-2299
Email:  bowmanchad@ballardspahr.com
Email:  mishkinm@ballardspahr.com

Attorneys for Defendant The Southern Poverty Law Center, Inc.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES...................................................................................iii

PRELIMINARY STATEMENT ........................................................................... 1

FACTUAL BACKBROUND AND PROCEDURAL HISTORY ...................................... 4

   I.    THE PARTIES.................................................................................... 4

   II.   THE CHALLENGED STATEMENTS AND PUBLICATIONS ..................... 4

   III.  SPLC'S PUBLICLY STATED GROUNDS FOR CHARACTERIZING DIS AS AN ANTI-IMMIGRANT HATE GROUP .................................................. 6

        A.  Statements by King and Elbel Reflecting That Plaintiffs Villify And Malign Immigrants................................................................................. 6

        B.  Plaintiffs' Links to Anti-Immigrant Activists and White Nationalists ......... 9

        C.  Plaintiffs' Links to White Nationalist And Anti-Immigrant Groups .......... 10

   IV.  PROCEDURAL HISTORY ............................................................... 12

ARGUMENT..................................................................................................... 12

   I.    STANDARD OF REVIEW .................................................................. 13

   II.   THE APPLICABLE STATUTE OF LIMITATIONS AND "OF AND CONCERNING" DOCTRINE SUBSTANTIALLY RESTRICT THE SCOPE OF THE CLAIMS IN THIS CASE .................................................................. 14

        A.  The Statute Of Limitations Leaves Only One Statement In Suit. .............. 15

        B.  King Is Not A Proper Plaintiff Because The Only Statement In Suit Is Not "Of And Concerning" Him. ........................................................................ 17

   III.  THE ANTI-IMMIGRANT HATE GROUP DESIGNATON IS A SUBJECTIVE OPINION THAT CANNOT SUPPORT A LIBEL CLAIM ... 18

        A.  The First Amendment Protects The "Anti-Immigrant Hate Group" Designation As A Subjective Expression Of Opinion ................................. 19

i

B. Georgia Law Also Provides That The "Anti-Immigrant Hate Group" Characterization Is A Non-Actional Opinion.................................................27

IV.   THE COMPLAINT DOES NOT CONTAIN SUFFICIENT WELL-PLEADED FACTS PLAUSIBLY TO ALLEGE ACTUAL MALICE ..............................30

A. The Actual Malice Standard Places A "Daunting" Burden On Plaintiffs... 31

B. The Doctrine Of Collateral Estoppel Limits The Allegations At Issue ...... 34

C. None Of The "New" Allegations Satisfies The Actual Malice Test...........34

CONCLUSION .................................................................................................. 39

CERTIFICATE OF SERVICE........................................................................... 40

EXHIBIT 1, Declaration of Shannon L. Holliday

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*800 Mktg. Solutions, Inc. v. GMAC Ins. Mgmt. Corp.*,
    2008 U.S. Dist. LEXIS 53680 (M.D. Ga. July 14, 2008) ..................................... 29

*Abramson v. Pataki*,
    278 F.3d 93 (2d Cir. 2002) ................................................................... 17

*Adelson v. Harris*,
    973 F. Supp. 2d 467 (S.D.N.Y. 2013) ..................................................... 30

*Air Wisconsin Airlines Corp. v. Hoeper*,
    571 U.S. 237 (2014) ........................................................................... 38

*Armscorp of America, Inc. v. Daugherty*,
    380 S.E.2d 729 (Ga. Ct. App. 1989) ...................................................... 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................. *passim*

*Bell v. Smith*,
    281 So. 3d 1247 (Ala. 2019) ................................................................ 27

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................. *passim*

*Bergen v. Martindale-Hubbell, Inc.*,
    337 S.E.2d 770 (Ga. Ct. App. 1985) ............................................. 19, 28

*Boley v. Atl. Monthly Grp.*,
    950 F. Supp. 2d 249 (D.D.C. 2013) ........................................................ 30

*Bose Corp. v. Consumers Union of U.S., Inc.*,
    466 U.S. 485 (1984) ........................................................................... 20

*Brian v. Richardson*,
    660 N.E. 2d 1126 (N.Y. 1995) ............................................................. 24

*Brimelow v. N.Y. Times Co.*,
    2020 U.S. Dist. LEXIS 237463 (S.D.N.Y. Dec. 17, 2020), *aff'd*, 2021 U.S. App.
    LEXIS 31672 (2d Cir. Oct. 21, 2021), *cert. denied*, 142 S. Ct. 1210 (2022) ........ 10

*Buckley v. Littell,*
    539 F.2d 882 (2d Cir. 1976) ........................................................... 21, 25

*Cantwell v. Connecticut,*
    310 U.S. 296 (1940) ........................................................................ 24

*Chaparro v. Carnival Corp.,*
    693 F.3d 1333 (11th Cir. 2012) .................................................... 13

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.,*
    406 F. Supp. 3d 1258 (M.D. Ala. 2019), *aff'd on other grounds*, 6 F.4th 1247 (11th Cir. 2021)....................................................................................*passim*

*Cottrell v. Smith,*
    788 S.E.2d 772 (Ga. 2016) ............................................................ 19

*Condit v. Clermont Cty. Review,*
    675 N.E.2d 475 (Ohio Ct. App. 1996) ....................................... 26

*Cox Enters., Inc. v. Bakin,*
    426 S.E.2d 651 (Ga. Ct. App. 1992) ........................................ 17, 18

*Edelman v. Croonquist,*
    2010 U.S. Dist. LEXIS 43399 (D.N.J. May 4, 2010) .............. 26

*Egiazaryan v. Zalmayev,*
    880 F. Supp. 2d 494 (S.D.N.Y. 2012) ...................................... 24, 25

*Farah v. Esquire Magazine,*
    736 F.3d 528 (D.C. Cir. 2013) ....................................................... 7

*Fiske v. Stockton,*
    320 S.E.2d 590 (Ga. Ct. App. 1984) ........................................ 17, 18

*Fitts v. Minn. Mining & Mfg. Co.,*
    581 So. 2d 819 (Ala. 1991) ............................................................ 27

*Forte v. Jones,*
    2013 U.S. Dist. LEXIS 39113 (E.D. Cal. Mar. 20, 2013)....... 26

*Garrison v. Louisiana,*
    379 U.S. 64 (1964) ....................................................................... 2, 30

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ................................................................ 18, 20, 22

*Gettner v. Fitzgerald*,
    677 S.E.2d 149 (Ga. Ct. App. 2009) ...................................... 19

*Gitlow v. State of New York*,
    268 U.S. 652 (1925) ................................................................ 22

*Grayson v. Savannah News-Press*,
    139 S.E.2d 347 (Ga. Ct. App. 1964) ...................................... 28

*Guilford Transp. Indus., Inc. v. Wilner*,
    760 A.2d 580 (D.C. 2000) ...................................................... 25

*Hamze v. Cummings*,
    652 F. App'x 876 (11th Cir. 2016) ........................................ 22

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
    491 U.S. 657 (1989) ................................................................ 31

*Horsley v. Rivera*,
    292 F.3d 695 (11th Cir. 2002) ................................................ 23

*Hotchner v. Castillo-Puche*,
    551 F.2d 910 (2d Cir. 1977) .................................................. 28

*Hustler Magazine, Inc. v. Falwell*,
    485 U.S. 46 (1988) .................................................................. 20

*Immuno AG v. Moor-Jankowski*,
    567 N.E.2d 1270 (N.Y. 1991) ................................................ 24

*Jackson v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*,
    2009 WL 10704261 (N.D. Ala. Feb. 23, 2009).................... 25

*Jaillett v. Ga. Television Co.*,
    520 S.E.2d 721 (Ga. Ct. App. 1999) .................................... 2, 29

*Jankovic v. Int'l Crisis Grp.*,
    494 F.3d 1080 (D.C. Cir. 2007) ............................................ 18

*King v. SPLC*,
No. 20-cv-120-ECM-SMD, 2022 U.S. Dist. LEXIS 56569
(M.D. Ala. Mar. 29, 2022)...............................................................*passim*

*Klayman v. City Pages*,
2015 U.S. Dist. LEXIS 49134 (M.D. Fla. Apr. 3, 2015), *aff'd*, 650 F.
App'x 744 (11th Cir. 2016) .................................................................. 31

*Lee L. Saad Const. Co. v. DPF Architects, P.C.*,
851 So. 2d at 507 .............................................................................. 34

*Lil' Joe Wein Music, Inc. v. Jackson*,
245 F. App'x 873 (11th Cir. 2007)........................................................ 7

*Linn v. United Plant Guard Workers of Am., Local 114*,
383 U.S. 53 (1966) ............................................................................ 31

*Martin v. Brock*,
2007 U.S. Dist. LEXIS 57207 (N.D. Ill. July 19, 2007) ........................ 26

*McCafferty v. Newsweek Media Grp., Ltd.*,
955 F.3d 352 (3d Cir. 2020) ......................................................... 25, 33

*Michel v. NYP Holdings, Inc.*,
816 F.3d 686 (11th Cir. 2016).....................................................*passim*

*Milkovich v. Lorain Journal Co.*,
497 U.S. 1 19 (1990) ..................................................................*passim*

*Monge v. Madison Cnty. Record, Inc.*,
802 F. Supp. 2d 1327 (N.D. Ga. 2011) ................................................ 29

*Montgomery Ward & Co. v. McGraw-Hill Publ'g Co.*,
146 F.2d 171 (7th Cir. 1944)............................................................... 25

*Nat'l Ass'n of Letter Carriers v. Austin*,
418 U.S. 264 (1974) .......................................................................... 31

*Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*,
951 F.3d 952 (8th Cir. 2020)............................................................... 32

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964) ..................................................... 14, 17, 24, 33

*Nichols v. HealthSouth Corp.*,
    281 So. 3d 350 (Ala. 2018) .................................................................... 15

*O'Neil v. Peekskill Faculty Ass'n*,
    507 N.Y.S.2d 173 (N.Y. App. Div. 1986)............................................... 26

*Provisional Gov't of New Afrika v. ABC*,
    609 F. Supp. 104 (D.D.C. 1985) ............................................................ 18

*Ratajack v. Brewster Fire Dep't, Inc.*,
    178 F. Supp. 3d 118 (S.D.N.Y. 2016) .................................................... 25

*Rosa & Raymond Parks Inst. for Self Dev. v. Target Corp.*,
    812 F.3d 824 n.12 (11th Cir. 2016) .................................................. 15, 27

*Sandals Resorts Int'l Ltd. v. Google, Inc.*,
    925 N.Y.S.2d 407 (N.Y. App. Div. 2011)............................................... 30

*Sanders v. Smitherman*,
    776 So. 2d 68 (Ala. 2000) ...................................................................... 27

*Scott v. News-Herald*,
    496 N.E.2d 699 (Ohio 1986) .................................................................. 21

*Silvester v. ABC*,
    839 F.2d 1491 (11th Cir. 1988) .............................................................. 31

*Smith v. Sch. Dist. of Phila.*,
    112 F. Supp. 2d 417 (E.D. Pa. 2000)...................................................... 26

*Squitieri v. Piedmont Airlines, Inc.*,
    2018 U.S. Dist. LEXIS 25485 (W.D.N.C. Feb. 16, 2018) ..................... 26

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ............................................................................... 31

*Standing Comm. on Discipline v. Yagman*,
    55 F.3d 1430 (9th Cir. 1995).................................................................. 26

*Sure, Inc. v. Premier Petroleum, Inc.*,
    807 S.E.2d 19 (Ga. Ct. App. 2017) ........................................................ 34

*Tizes v. Curcio*, 1
    997 U.S. Dist. LEXIS 13726 (N.D. Ill. Sept. 9, 1997)............................................ 36

*Troche v. Smith*,
    1998 Conn. Super. LEXIS 2251 (Conn. Super. Ct. Aug. 6, 1998) ...................... 36

*Turner v. Wells*,
    879 F.3d 1254 (11th Cir. 2018) ...................................................................... *passim*

*Ward v. Zelikovsky*,
    643 A.2d 972 (N.J. 1994) ...................................................................................... 26

*Webster v. Wilkins*,
    456 S.E.2d 699 (Ga. Ct. App. 1995) .................................................................... 29

*Whitney v. California*,
    274 U.S. 357 (1927) .............................................................................................. 22

*Williams v. Kanemaru*,
    309 P.3d 972 (Table), 130 Haw. 304 (Haw. Ct. App. 2013) ................................ 26

## Statutes & Other Authorities

Ala. Code § 6-2-38(k)............................................................................................... 15

Federal Rule of Civil Procedure 12(b)(6)............................................................... 12

Restatement (Second) of Conflicts of Laws ...................................................... 27, 29

Robert D. Sack, *Sack on Defamation* ........................................................... 14, 26

Section 501(c)(4) of the Internal Revenue Code ..................................................... 4

COMES NOW Defendant the Southern Poverty Law Center, Inc., and moves this Honorable Court to dismiss Plaintiffs' Complaint, ECF 1, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.  In support of this Motion, Defendant submits the following Memorandum of Law.

## PRELIMINARY STATEMENT

This is a re-filed lawsuit.  On March 29, 2022, Chief Judge Emily C. Marks dismissed the same defamation claims brought by the same plaintiff, the Dustin Inman Society, Inc. ("DIS") and its leader Donald A. King ("King"), against the same defendant, the Southern Poverty Law Center, Inc. ("SPLC").  That prior case similarly alleged that SPLC defamed the plaintiffs, principally through identifying DIS as an "anti-immigrant hate group."  *King v. SPLC*, No. 20-cv-120-ECM-SMD, 2022 U.S. Dist. LEXIS 56569 (M.D. Ala. Mar. 29, 2022) ("*King I*").  As the Chief Judge explained in granting a motion to dismiss under Rule 12(b)(6), DIS and King "ask[ed] the Court to ignore the protections of the First Amendment," which "[t]he Court decline[d] to do."  *Id.* at *11.

Rather than file an amended complaint in that action, DIS and King filed an amended complaint in this new lawsuit against the SPLC.  Again, it asks the Court to ignore the protections of the First Amendment for speech.  Because the new Complaint fails to state a claim for the same reasons that their prior pleading failed as a matter of law in *King I*, this Court should reach the same conclusion and dismiss this action.

**First**, SPLC's statement that DIS is an anti-immigrant hate group is not susceptible to empirical proof, because quantums of hate and tolerance are not measured on a numerically verifiable scale, and is therefore an expression of subjective opinion protected

1

under the First Amendment.  The First Amendment allows only *provably false* statements to be potentially actionable as defamation.  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990) (statement on matter of public concern "must be provable as false before there can be liability under state defamation law, at least in situations . . . where a media defendant is involved").

**Second**, even if such a characterization could be deemed subject to objective proof and therefore potentially provable as false, the designation *still* would not be actionable under the First Amendment or state law because it is a conclusion based on disclosed facts. *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (a statement is a "pure opinion" when "the defendant makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public" and "pure opinion[s] are protected from defamation actions by the First Amendment"); *see also Jaillett v. Ga. Television Co.*, 520 S.E.2d 721, 726 (Ga. Ct. App. 1999) (same protections provided by Georgia law).

**Finally**, the Complaint fails on the additional separate and independent ground – applied by Chief Judge Marks – that DIS and King are public figures who have not alleged facts that would, if proven, plausibly establish that SPLC published with "actual malice" fault, a standard that requires publication with subjective knowledge of falsity or a "high degree of awareness" of "probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964); *Turner*, 879 F.3d at 1273 (dismissing defamation claim under Rule 12(b)(6) for failure to plead sufficient facts that, if proven, would plausibly establish actual malice).

In considering the prior iteration of this lawsuit, the Court concluded it need not reach or decide the first and second grounds for dismissal because Plaintiffs so clearly failed to adequately plead that SPLC published the challenged statements with actual malice fault. *See King I*, 2022 U.S. Dist. LEXIS 56569, at *8 n.6. That choice led the Court to dismiss the prior action without prejudice based on the Eleventh Circuit's guidance that libel plaintiffs in such a situation "should have the opportunity to amend [their] complaint." *Id.* at *11-12 & n.9 (quoting *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 706 (11th Cir. 2016)).

Plaintiffs did not take that opportunity. They chose instead to file this action with an amended version of the complaint labeled as "Plaintiffs' Complaint." This litigation, however, is not written on a blank slate. The doctrine of collateral estoppel bars Plaintiffs from re-litigating issues that were decided in the prior lawsuit, including actual malice allegations made and argued in that lawsuit. Additionally, because Plaintiffs opted to file a new case, the applicable statute of limitations bars claims arising from statements published prior to April 27, 2020, which includes *all but one* of the published statements that Plaintiffs are attempting to re-litigate here.

Whether on the same actual malice pleading grounds that the Chief Judge dismissed the prior lawsuit or on the as-yet unaddressed basis of the First Amendment and state law protections for opinions and conclusions based on disclosed facts, this Court should dismiss these Plaintiffs' claims again under Rule 12(b)(6). Moreover, because Plaintiffs have now made three unsuccessful attempts to state such a claim, the Court should dismiss this Complaint with prejudice rather than providing Plaintiffs a fourth bite at the same apple.

3

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.    THE PARTIES

Defendant SPLC is a nonprofit civil rights organization with a stated mission of fighting hate and bigotry and seeking justice for the most vulnerable members of society. *See, e.g.*, *What We Do*, SPLC, https://www.splcenter.org/what-we-do.   Among other activities, SPLC monitors various groups and publishes on its website a "Hate Map" containing an annual census of groups it has designated as hate groups. *Id.; see also* Compl. ¶¶ 9-10. SPLC does not characterize individuals as hate groups.  *Id.* ¶ 28.

Plaintiff DIS is "an organization recognized under Section 501(c)(4) of the Internal Revenue Code with a stated mission and goal of promoting the enforcement of immigration laws in the United States."  *Id.* ¶ 11.  Plaintiff King "chartered" DIS in 2005 and remains "the public face" of the organization today.  *Id.* ¶¶ 12-13.

### II.    THE CHALLENGED STATEMENTS AND PUBLICATIONS

Based on its research and investigations, SPLC designates certain organizations as "hate groups."  *Id.* ¶ 9.  A list of hundreds of groups currently designated as hate groups is publicly available online.   *See* https://www.splcenter.org/hate-map/by-ideology.   The SPLC defines a "hate group" as "an organization that – based on its official statements or principles, the statements of its leaders, or its activities – has beliefs or practices that attack or malign an entire class of people, typically for their immutable characteristics."  *Id.*  SPLC categorizes hate groups into numerous "ideologies," including Anti-Immigrant, Anti-LGBT, Anti-Muslim, Black Nationalist, White Nationalist, Neo-Confederate, and Neo-Nazi, among others.  *Id.*

SPLC designated DIS as an anti-immigrant hate group in 2019.   Compl. ¶ 26. According to SPLC:

> Anti-immigrant hate groups are the most extreme of the hundreds of nativist groups that have proliferated since the late 1990s, when anti-immigration xenophobia began to rise to levels not seen in the United States since the 1920s. Most white hate groups are also anti-immigrant, but anti-immigrant hate groups single out that population with dehumanizing and demeaning rhetoric. Although many groups legitimately criticize American immigration policies, anti-immigrant hate groups go much further by pushing racist propaganda and ideas about non-white immigrants.

*Id.* ¶ 27 (quoting https://www.splcenter.org/20200318/frequently-asked-questions-about-hate-groups#immigrant).[1]   SPLC published a lengthy report, explaining the many reasons for its decision to characterize DIS as an "anti-immigrant hate group."   *See* https://www.splcenter.org/fighting-hate/extremist-files/group/dustin-inman-society (cited at Compl. ¶ 42 & n.10); Ex. 2 to the Declaration of Shannon Holliday, which is Ex. A hereto ["Holliday Declaration" or "Holliday Decl"].   The report's subheading reads, "The Dustin Inman Society, led by D.A. King, poses as an organization concerned about immigration issues, yet focuses on vilifying all immigrants."   *Id.*; *see also* Compl. ¶ 34.

---

[1] By referring to and quoting from these SPLC publications, Plaintiffs have incorporated them into the pleadings for purposes of the instant motion.  *See King I*, 2022 U.S. Dist. LEXIS 56569, at *3 n.1 ("The Plaintiffs, in their complaint, allege that the SPLC defamed them in its Intelligence Report and Hate Map, but they do not attach either to their complaint. SPLC instead attached the relevant parts of the reports to its motion to dismiss as well as a report on SPLC's website, the contents of which are referred to in the Complaint. Because the contents of the reports are alleged in the complaint and form the basis of the Plaintiffs' claims, and are not challenged on authenticity or content by either party, the Court properly considers the contents of the reports in ruling on the SPLC's motion to dismiss.") (citation omitted).

This case, like its predecessor, challenges those two statements – that is, **(1)** SPLC's characterization of DIS as an "anti-immigrant hate group," *see* Compl. ¶ 26; and **(2)** SPLC's observation that DIS, "led by [Plaintiff] King, poses as an organization concerned about immigration issues, yet focuses on vilifying all immigrants," *see id.* ¶ 34. A copy of the portion of SPLC's "Hate Map" published in 2021, which lists DIS as a Georgia-based anti-immigrant hate group, is attached as Exhibit 1 to the Holliday Declaration.

## III.   SPLC'S PUBLICLY STATED GROUNDS FOR CHARACTERIZING DIS AS AN ANTI-IMMIGRANT HATE GROUP

The bases for SPLC's designation of DIS as an anti-immigrant hate group and its opinion that DIS vilifies immigrants are fully disclosed in the report on SPLC's website about DIS (the "SPLC DIS Report") and include, but are not limited to, (a) statements by King and DIS board member Fred Elbel; (b) Plaintiffs' associations with prominent anti-immigrant figures; and (c) Plaintiffs' associations with anti-immigrant groups and white nationalist groups that are also anti-immigrant.  *See* Ex. 2 to Holliday Decl. (SPLC DIS Report).

### A.   Statements by King And Elbel Reflecting That Plaintiffs Vilify And Malign Immigrants

SPLC reported the following statements by King and Elbel that support SPLC's opinion that King and DIS both vilify and malign immigrants.[2]

---

[2] This Memorandum references the report about King and DIS that has been referred to, and quoted from, on SPLC's website.  SPLC relies on the report not for the truth of the information it contains, but because its existence provides the necessary context for evaluating the challenged designation of DIS as a hate group and for assessing whether Plaintiffs could plausibly plead that SPLC designated DIS as a hate group with the requisite actual malice. Federal courts properly

1.     King, at a Newton County (GA) Republican Party meeting in April 2007, said that undocumented immigrants are "not here to mow your lawn—they're here to blow up your buildings and kill your children, and you, and me.'" Ex. 2 to Holliday Decl. (SPLC DIS Report) at 2.

2.     King, in a blog post in July 2004, wrote, "We have become sadly acquainted with the absolute and brazen disregard for the law that comes from the third world horde that is allowed to swarm over our border with Mexico. . . .  It is clear that when the mostly Mexican mob illegally 'migrates' into our nation, it brings with it the culture of lawlessness and chaos that is responsible for the very conditions that they flee in the rapidly deteriorating example of Democracy without the rule of law that is Mexico." *Id.* (ellipsis in original).

3.     King, according to the Anti-Defamation League, was quoted in 2008 as describing the United States as a country "being invaded and colonized" by immigrants and having its "way of life" destroyed. *Id.*

**4.**     King asked in 2004, "Must the United States silently suffer the incursion of one million people a year because they are brown?" *Id.*

---

take judicial notice of such press reports, videos, speeches, and other publicly available materials on a motion to dismiss in defamation cases, such as this one, where the broader context in which a given statement was disseminated is an important element of the legal analysis. *See, e.g.*, *Lil' Joe Wein Music, Inc. v. Jackson*, 245 F. App'x 873, 879 (11th Cir. 2007) (taking judicial notice of widespread distribution of a film based on newspaper articles); *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013) (taking judicial notice of prior news articles in considering motion to dismiss defamation claims).

5.      King, in a 2010 blog entry on the anti-immigrant hate website VDARE, wrote the following about his experience at an event called March for Dignity: "[The march was composed of] mostly Hispanic demonstrators. . . . I got the sense that I had left the country of my birth and been transported to some Mexican village, completely taken over by an angry, barely restrained mob. . . . My first act on a safe return home was to take a shower." *Id.* at 1-2 (alterations in original).

6.      King, in promoting an anti-immigration rally in March 2008, wrote on the DIS website, "We support the concept of attrition of the illegal population through enforcement of existing laws," referring to the concept of attrition through enforcement. *Id.* at 4.  As SPLC has explained, the "'attrition through enforcement' concept mentioned by King was popularized in 2005 by the anti-immigrant hate group Center for Immigration Studies (CIS)," whose executive director has described "attrition through enforcement as making it as difficult as possible for an immigrant to live so that they 'self deport.'" *Id.*

7.      King wrote in a June 2006 VDARE article, "'For me, while standing a few feet away from group after group, the impulse to reach out and personally deport these Third World invaders was nearly uncontrollable.'" *Id.* at 3.

8.      King retweeted the anti-Muslim "Voice of Europe" Twitter account dozens of times in 2017.  The tweets included statements such as:

> "The beautiful Italy is rapidly being Islamised. This looks more like Tehran or Kabul"

> "The usual suspects were rioting in Brussels. Sad, it was once a great city with wonderful people"

"Italian psychiatrist: Italy could soon look like Nigeria and
could completely lose control"

*Id.* at 6.  In March 2018, King retweeted an account that shared a screenshot of a tweet that
read: "Friendly reminder that Muslims murder gay people" and has continued to retweet
the tweets of other anti-immigrant groups and individuals as well.  *Id.* at 6.

9.      SPLC has also reported the following statement that DIS board member and
former webmaster Fred Elbel made in 2004: "Damned right. I hate 'em all—negroes,
wasps, spics, eskimos, jews, honkies, krauts, ruskies, ethopians, pakis, hunkies, pollocks
and marxists; there are way too many of them. I'm all for trout, elephants, bacteria, whales,
wolves, birds, parrot fish, deciduous foliage and mollusks. Time to rebalance the planet,
bleeding heart liberals be damned."  *Id.* at 2.

**B.      Plaintiffs' Links to Anti-Immigrant Activists and White
Nationalists**

SPLC has also documented connections between King, DIS, and individuals known
for their anti-immigrant activism:

1.      **John Tanton:**  One long-time association is between King and John Tanton,
"a Michigan ophthalmologist turned white nationalist who has created a network of anti-
immigrant organizations." Ex. 2 to Holliday Decl. (SPLC DIS Report) at 2.  As SPLC
reported, "Tanton has a long track record of working with white nationalists and espousing
racist rhetoric."  *Id.*  "In a radio interview, King said he was 'proud' of the relationship
[with Tanton] and stated, 'I am also very proud that John Tanton is a personal friend and a
personal hero.'"  *Id.*  The SPLC DIS Report provides further information about Tanton and
some of the organizations he started.

9

2.      **Chris Simcox:**   King has organized and participated in several rallies protesting legislation that would aid undocumented immigrants in any way.   Ex. 2 to Holliday Decl. (SPLC DIS Report) at 3.   Chris Simcox, the former leader of the Minuteman Civil Defense Corp., "a nationwide anti-immigrant vigilante organization known for its armed-citizen border patrols," spoke at a 2005 rally organized by King.   *Id*.   Members of the group were also in attendance.   King has also advertised the group on his website.   *Id*.

3.      **Peter Brimelow:**   King has written for the SPLC-designated hate group VDARE, which is an anti-immigration website founded by white nationalist Peter Brimelow "'dedicated to preserving our historical unity as Americans into the 21st century.'"   Ex. 2 to Holliday Decl. (SPLC DIS Report) at 3.   "It is a hub for white nationalists and antisemites who write on the issue of immigration."   *Id.*[3]

C.      **Plaintiffs' Links To White Nationalist And Anti-Immigrant Groups**

SPLC has further documented connections between King, DIS, and other groups with anti-immigrant platforms:

1.      **The Social Contract and The Social Contract Press (TSCP):**   SPLC reported that "[b]oth Fred Elbel—who once served as DIS's webmaster and sits on the group's board—and King have written for *The Social Contract*, a quarterly journal founded

---

[3] Brimelow recently sued The New York Times for libel over its characterization of him as a "white nationalist," and the U.S. District Court for the Southern District of New York dismissed that complaint with prejudice under Rule 12(b)(6) for failure plausibly to allege actual malice, concluding that "The Times was within its right to base its description of Plaintiff on its own evaluation of Plaintiff's published writings and other public commentary and on the analysis of an organization The Times perceived as having relevant expertise, namely the SPLC."   *Brimelow v. N.Y. Times Co.*, 2020 U.S. Dist. LEXIS 237463, at *22 (S.D.N.Y. Dec. 17, 2020), *aff'd*, 2021 U.S. App. LEXIS 31672 (2d Cir. Oct. 21, 2021), *cert. denied*, 142 S. Ct. 1210 (2022).

by [John] Tanton known for routinely publishing race-baiting articles penned by white nationalists." Ex. 2 to Holliday Decl. (SPLC DIS Report) at 3. Moreover, "[o]n numerous occasions, King has spoken at The Social Contract Press's (TSCP) Writer's Workshop, an annual gathering of white nationalists and the anti-immigrant lobby." *Id.* TSCP is itself a SPLC-designated white nationalist hate group. *Id.*

2.   **VDARE:**  As noted above, SPLC reported that "King has written for the white nationalist SPLC-designated hate group VDARE," which is "an anti-immigration website 'dedicated to preserving our historical unity as Americans into the 21st century'" and a "hub for white nationalists and antisemites who write on the issue of immigration." Ex. 2 to Holliday Decl. (SPLC DIS Report) at 3.

3.   **Colorado Alliance for Immigration Reform (CAIRCO):**  DIS board member Elbel "also works for Colorado Alliance for Immigration Reform (CAIRCO), another anti-immigrant hate group." *See* Ex. 2 to Holliday Decl. (SPLC DIS Report) at 3.

*       *       *

In sum, the SPLC DIS Report contains comprehensive information that formed the bases for SPLC's conclusion that DIS is a hate group that maligns immigrants and that it vilifies immigrants.  In addition, the page has multiple links to other sources as further support for the information reported on the web page.  SPLC adopts that information as if fully set forth herein in support of its Motion to Dismiss. *See generally* Exhibit 2 to the Holliday Declaration (SPLC DIS Report), the online version of the SPLC DIS Report, and the hyperlinked material therein.

IV.   **PROCEDURAL HISTORY**

Plaintiffs filed their initial defamation complaint against SPLC in February 2020 in the Circuit Court for Montgomery County, Alabama, and SPLC removed the case to this District.  *See King I*, ECF 1.  Plaintiffs filed an Amended Complaint in April 2020, *see id.* ECF 3, which SPLC moved to dismiss, *see id.* ECF 10.  The Chief Judge granted the motion in March 2022 and dismissed the case without prejudice.  *See id.* ECF 19.

The following month, Plaintiffs filed their Complaint in this action.  *See* ECF 1. On May 17, 2022, the Court granted SPLC's unopposed motion to extend its time to respond until June 13, 2022.  *See* ECF 8.  SPLC now timely moves to dismiss Plaintiffs' Complaint *with prejudice* pursuant to Federal Rule of Civil Procedure 12(b)(6).

## ARGUMENT

Each of Plaintiffs' claims fails as a matter of law for several independent reasons. As an initial matter, Plaintiffs' claims are time-barred to the extent they challenge any statements published before April 27, 2020, which leaves as the *only* statement in suit the characterization of DIS as an "anti-immigrant hate group."  Because that statement is not of-and-concerning King personally, he is no longer a proper plaintiff in this action.  The sole remaining defamation claim fails as a matter of law because the characterization of DIS as an "anti-immigrant hate group" is not actionable because it expresses SPLC's opinion about DIS, which is protected by the First Amendment and state law. Furthermore, even if that characterization were capable of being proven true or false, Plaintiffs cannot plead facts that would plausibly allege SPLC published it with knowledge of its falsity or a high degree of awareness of its probable falsity – *i.e.*, with

the level of "actual malice" fault that the First Amendment requires here.  For these reasons, the entire Complaint should be dismissed with prejudice.

## I.   STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While courts accept the factual allegations in a complaint as true and construe them in the light most favorable to the plaintiff, *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012) (per curiam), such factual allegations still must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also Michel*, 816 F.3d at 694. Therefore, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see also Turner*, 879 F.3d at 1273 (rejecting "conclusory" allegations in defamation case).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and making this determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678-79.

The Eleventh Circuit has held that where constitutional defenses involving protected speech are raised, rigorous application of the plausibility standard takes on particular importance. *Michel*, 816 F.3d at 702.  This is because, in such cases, "there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending

against expensive yet groundless litigation" and "[f]orcing publishers to defend inappropriate suits through expensive discovery proceedings in all cases would constrict" the "'breathing space' needed to ensure robust reporting on public figures and events." *Id.* (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 271-72 (1964)).

Moreover, pre-discovery evaluation of claims is often warranted in defamation cases, because "unlike in most litigation, in a libel suit the central event—the communication about which suit has been brought—is ordinarily before the judge at the pleading stage. . . .  He or she may assess it upon a motion to dismiss, firsthand and in context." 2 Robert D. Sack, *Sack on Defamation* § 16.2.1 (5th ed. 2017).  Courts thus can, and frequently do, resolve defamation claims at the motion to dismiss stage.  *See, e.g.*, *Turner*, 879 F.3d at 1259 (affirming dismissal of defamation claims for failure to plausibly plead actual malice and because the challenged statements were non-actionable opinion); *Michel*, 816 F.3d at 706 (affirming dismissal of defamation claims where complaint failed to plausibly plead actual malice).  For all the reasons below, this Court should reach the same result here by dismissing this Complaint with prejudice.

## II.    THE APPLICABLE STATUTE OF LIMITATIONS AND "OF AND CONCERNING" DOCTRINE SUBSTANTIALLY RESTRICT THE SCOPE OF THE CLAIMS IN THIS CASE

Plaintiffs' claims must be pared down at the outset based on the applicable statute of limitations and the "of and concerning" doctrine.  Specifically, defamation claims based on any SPLC statement published prior to April 27, 2020 are time-barred, which leaves only the characterization of DIS as an "anti-immigrant hate group" in suit.  And because

that one remaining statement is not "of and concerning" King himself, he is no longer a proper plaintiff in this case.

### A.     The Statute Of Limitations Leaves Only One Statement In Suit.

While Georgia law applies to the substantive claims in this case,[4] Alabama law applies to procedural issues.  *See Nichols v. HealthSouth Corp.*, 281 So. 3d 350, 356 (Ala. 2018).  Alabama's statute of limitations for defamation is two years.  Ala. Code § 6-2-38(k) ("All actions of libel or slander must be brought within two years.").  Alabama "generally applies what is known as the single-publication rule to tort claims."  *Rosa & Raymond Parks Inst. for Self Dev. v. Target Corp.*, 812 F.3d 824, 829 n.12 (11th Cir. 2016) (citing Alabama case law).  The statute of limitations thus begins to run in Alabama on defamation claims with the first publication of a statement – whether on the internet or elsewhere.

According to the express allegations in the Complaint, all of the allegedly defamatory statements *with the exception of one* were published before April 27, 2020.  In Counts Three and Four, King pleads as a basis for defamation that the SPLC reported that "Plaintiff King leads an 'anti-immigrant hate group.'"  *See* Compl. ¶¶ 68 & 73.  In Count Four, King sets out an additional statement as a basis for his defamation claim – that DIS "focuses on vilifying all immigrants."  *Id.* ¶ 73. Both of those statements were made in an article published before the initial lawsuit was filed in early 2020 and, in fact, they formed

---

[4] *See infra* at 27-28; *King I*, 2022 U.S. Dist. LEXIS 56569, at *6 n.4.

the bases for King's defamation claim in the prior case.[5]  These alternative bases for King's defamation claim are due to be dismissed in their entirety on statute-of-limitations grounds because the report in which they are found was first published well before April 27, 2020, the cut-off date for the statute of limitations here. *See also* Holliday Decl. at ¶ 3 (categorizing claims by paragraph and count) and ¶ 5.

All four of Plaintiffs' counts – Counts One and Two for DIS and Counts Three and Four for King – are also explicitly based on the *Intelligence Reports* and Hate Maps SPLC published in February and/or March 2018, 2019, 2020 and 2021.  *See also* Holliday Decl. at ¶ 3 (categorizing claims by paragraph and count).  Plaintiffs specifically take issue with these reports' classification of DIS as an "anti-immigrant hate group."  *See* Compl. ¶¶ 57, 62, 67 & 72. All but two of these reports fall outside the two-year statute of limitations period.  Thus, Plaintiffs' hate-group-designation claims, except to the extent based on the *Intelligence Report* and Hate Map published in the spring of 2021, are barred by the statute of limitations.

In conclusion, only Plaintiffs' claims for defamation arising out of the 2021 Intelligence Report's and Hate Map's designation of DIS as an "anti-immigrant hate group" are not time-barred.  The remainder of the claims set out in Counts One through Four are due to be dismissed.[6]

---

[5] *See King I,* ECF 3 at ¶¶ 38 & 43. The current version of the article in which these statements were made is exactly the same as the one in existence prior to the filing of the 2020 lawsuit.  *See* Holliday Declaration, Ex. 2.

[6] Counts Five and Six are necessarily premised on Counts One through Four and merely ask for different remedies, punitive damages (Count Five) and Injunctive Relief (Count Six).  Thus, their dismissal follows from the dismissal of the first four substantive counts.  *See King I*, 2022

**B.      King Is Not A Proper Plaintiff Because The Only Statement In Suit Is Not "Of And Concerning" Him.**

Because the only statement that is not time-barred here is the characterization of DIS as an "anti-immigrant hate group," King is not a proper plaintiff and should be promptly dismissed from the case.  Under Georgia law and the First Amendment, "[t]o sustain an action for libel the allegedly defamatory words must refer to some ascertained or ascertainable person, and that person must be the plaintiff."  *Cox Enters., Inc. v. Bakin*, 426 S.E.2d 651, 653 (Ga. Ct. App. 1992) (alterations omitted) (quoting *Fiske v. Stockton*, 320 S.E.2d 590, 592 (Ga. Ct. App. 1984)); *see also Sullivan*, 376 U.S. at 288 (statements must be "of and concerning" plaintiff).  Moreover, where, as here, the alleged defamation involves a matter of public concern, the First Amendment requires the plaintiff to demonstrate that he or she was "clearly identifiable" as the challenged statement's subject. *Abramson v. Pataki*, 278 F.3d 93, 102 (2d Cir. 2002) (citing *Sullivan*, 376 U.S. at 288-89).

The designation of DIS as an "anti-immigrant hate group" is obviously not "of and concerning" King.  It is, by its plain terms, about DIS.  Indeed, the Complaint itself acknowledges that SPLC "does not place this [hate group] classification on individuals." Compl. ¶ 28. That is legally significant because an allegedly false statement about an *entity* does not give rise to a claim by associated *individuals*.  As the D.C. Circuit has explained:

> [D]efamation is personal; . . . [A]llegations of defamation by an organization and its members are not interchangeable. Statements which refer to individual members of an organization do not implicate the organization. *By*

---

U.S. Dist. LEXIS 56569, at *11 (noting that Plaintiffs' "requests for punitive damages and injunctive relief[] cannot be sustained" given the Court's dismissal of the underlying defamation claims).

> *the same reasoning, statements which refer to an organization do not implicate its members.*

*Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1089 (D.C. Cir. 2007) (emphasis added and ellipsis in original) (quoting *Provisional Gov't of New Afrika v. ABC*, 609 F. Supp. 104, 108 (D.D.C. 1985)); *see also Bakin*, 426 S.E.2d at 653.

In *Jankovic*, the D.C. Circuit rejected the contention that "the namesake of a corporation can be defamed when false misdeeds are attributed to his company." 494 F.3d at 1089-90. Similarly, in *Armscorp of America, Inc. v. Daugherty*, the Georgia Court of Appeals held that it did not matter if there might be evidence that readers associated the challenged statements with the plaintiff where the defamatory words themselves did not refer to that person. 380 S.E. 2d 729, 730 (Ga. Ct. App. 1989); *accord Fiske*, 320 S.E.2d at 603. The same reasoning governs here: designation of DIS as a hate group applies to the organization, and the law does not allow King to treat it as "of and concerning" him personally.

The "of and concerning" requirement is designed to curtail defamation claims, like this one, based on statements made not about a plaintiff, but about other persons or groups with which she is affiliated. *See, e.g.*, *Jankovic*, 494 F.3d at 1089; *Bakin*, 426 S.E.2d at 653. SPLC's designation of DIS as an "anti-immigrant hate *group*" is not "of and concerning" King as a matter of law, and the Court should dismiss King from the case.

## III.   THE ANTI-IMMIGRANT HATE GROUP DESIGNATION IS A SUBJECTIVE OPINION THAT CANNOT SUPPORT A LIBEL CLAIM

In *Gertz v. Robert Welch, Inc.*, the Supreme Court explained that "[u]nder the First Amendment there is no such thing as a false idea. However pernicious an opinion may

seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." 418 U.S. 323, 339-40 (1974).  The Court subsequently reaffirmed that "a statement of opinion relating to matters of public concern which does *not* contain a provably false factual connotation will receive full constitutional protection." *Milkovich*, 497 U.S. at 20-21 (emphasis added). Similarly, under the Georgia law applicable in this case, "a defamation action will lie only for a statement of fact.  This is because a statement that reflects an opinion or subjective assessment, as to which reasonable minds could differ, cannot be proved false." *Cottrell v. Smith*, 788 S.E.2d 772, 781 (Ga. 2016) (quoting *Gettner v. Fitzgerald*, 677 S.E.2d 149, 153 (Ga. Ct. App. 2009)). Whether a challenged statement is one of provable fact or non-actionable opinion is a question of law for the court.  *Turner*, 879 F.3d at 1262–63; *see also Bergen v. Martindale-Hubbell, Inc.*, 337 S.E.2d 770, 772 (Ga. Ct. App. 1985).

SPLC's characterization of DIS as an "anti-immigrant hate group" is just such an expression of opinion that cannot give rise to a claim because it is not capable of being empirically proven true or false.  That protection arises under both federal and state law, and thus both sources of law require dismissal of all claims before the Court.  However, while federal and state protections overlap substantially, the relevant analyses differ sufficiently that this Memorandum will address them separately in turn, as follows.

A.     **The First Amendment Protects The "Anti-Immigrant Hate Group" Designation As A Subjective Expression Of Opinion.**

As another Court in this District has already concluded, SPLC's hate group designation is an opinion that the First Amendment protects from defamation claims. *Coral*

*Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 406 F. Supp. 3d 1258, 1277 (M.D. Ala. 2019), *aff'd on other grounds*, 6 F.4th 1247 (11th Cir. 2021).   That decision, and the authority relied on therein, particularly the Supreme Court's decision in *Milkovich*, requires the same result here.

As *Coral Ridge* makes clear, pursuant to the First Amendment, an opinion such as the one at issue here cannot be the basis for a defamation claim. "The immunity granted to opinions reflects, in part, the First  Amendment principle that there can be no false ideas."   *Michel*, 816 F.3d at 695 (citing *Gertz*, 418 U.S. at 339-40).    The protection afforded to opinions is strong:

> At the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern. "The freedom to speak one's mind is not only an aspect of individual liberty—and thus a good unto itself—but also is essential to the common quest for truth and the vitality of society as a whole." *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 503-04 (1984). We have therefore been particularly vigilant to ensure that individual expressions of ideas remain free from governmentally imposed sanctions.

*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50-51 (1988).

In *Milkovich*, the Supreme Court ruled that an opinion may be actionable as defamation *only* when the assertion "is sufficiently factual to be susceptible of being proved true or false."  497 U.S. at 21.  There, the challenged assertion was that the speaker believed the plaintiff had lied under oath, and the Court concluded that such an assertion could be tested for its veracity in, for example, a perjury prosecution.   *Id*. at 21-22.  The Court contrasted this "'objectively verifiable'" allegation with a "'subjective assertion'" that "does not contain a provably false factual connotation," noting that the latter "will receive

full constitutional protection." *Id*. at 20, 22 (quoting *Scott v. News-Herald*, 496 N.E.2d 699, 707 (Ohio 1986)).

Here, the challenged statement that DIS is an anti-immigrant hate group, is, in the words of the *Milkovich* Court—and as found by this Court in *Coral Ridge*—not "sufficiently factual to be susceptible of being proved true or false." 497 U.S. at 21; *see also Coral Ridge*, 406 F. Supp. 3d at 1277. Unlike the question of whether a plaintiff committed perjury, which the *Milkovich* Court recognized could be decided by a jury "on a core of objective evidence," 497 U.S. at 21, there is *no* methodology by which one could *prove* that DIS, as a factual matter, is *not* an anti-immigrant hate group. No legally established elements define what is or is not an anti-immigrant hate group: it is a purely subjective assertion.[7] As a result, the term "'hate group' has a highly debatable and ambiguous meaning" and "suffers from 'tremendous imprecision of . . . meaning and usage . . . in the realm of political debate.'" *Coral Ridge*, 406 F. Supp. 3d at 1275-78 (second ellipsis in original) (quoting *Buckley v. Littell*, 539 F.2d 882, 893 (2d Cir. 1976)).

SPLC's "anti-immigrant hate group" designation constitutes an opinion, based on SPLC's interpretation and review of materials produced, and positions espoused, by DIS and King on behalf of DIS, with respect to immigrants, and especially with regard to undocumented immigrants. *Milkovich*, 497 U.S. at 20-22; *Coral Ridge*, 406 F. Supp. 3d at 1277-78 (holding that hate group designation is protected under *Milkovich* because it is not

---

[7] Nor has SPLC accused DIS of violating any statute or other objectively established criteria. *Cf. Milkovich*, 497 U.S. at 22 ("Unlike a subjective assertion the averred defamatory language is an articulation of an objectively verifiable event.") (quoting *Scott*, 496 N.E.2d at 707).

provable as false).  SPLC's position is thus like many other statements that have been deemed constitutionally protected opinions. *See, e.g.*, *Turner,* 879 F.3d at 1262-65 (whether speech constituted "homophobic taunting" was not objectively verifiable and whether someone was "unprofessional" was likewise non-actionable opinion); *see also Hamze v. Cummings,* 652 F. App'x 876, 881 (11th Cir. 2016) (quoting *Milkovich* and concluding that statement that plaintiff committed "brutal, senseless, road rage killing" that showed "disregard for human life" was opinion that could not support defamation claim). Here, too, the subjectivity of SPLC's designation necessitates constitutional protection.

That SPLC expresses its opinion with the intention of persuading others does nothing to alter its subjective nature.  *Cf. Gitlow v. State of New York*, 268 U.S. 652, 673 (1925) (Holmes, J., dissenting) ("Every idea is an incitement.").  Indeed, the attempt to convince others to join one's own opinion, particularly on matters of great public concern, is *the* core activity protected by the First Amendment.  *E.g.*, *Gertz*, 418 U.S. at 339-40 ("[W]e depend for [the correction of pernicious opinions] not on the conscience of judges and juries but on the competition of other ideas."); *Whitney v. California*, 274 U.S. 357, 375-76 (1927) (Brandeis, J., concurring) ("[The Founders] believed that freedom to think as you will and to speak as you think are means indispensable to the discovery and spread of political truth . . . and that the fitting remedy for evil counsels is good ones.").  The First Amendment accordingly recognizes the difference between a statement that the proponent *believes is correct* and a statement that can be *proven as true* in the context of a legal proceeding.

In addition, in evaluating whether a statement is entitled to protection under *Milkovich*, a court "must consider the circumstances in which the statement was expressed." *Horsley v. Rivera*, 292 F.3d 695, 702 (11th Cir. 2002); *see also Milkovich*, 497 U.S. at 16-17 (discussing cases establishing that statements must be evaluated as reasonable readers would perceive them under the circumstances). In this case, context further supports deeming SPLC's "anti-immigrant hate group" designation a constitutionally protected opinion. The relevant circumstances include:

- SPLC is a non-profit organization that, among other activities, disseminates a "Hate Map" that contains an annual census of groups it designates as hate groups, *see* Compl. ¶¶ 9-10; *Coral Ridge*, 406 F. Supp. 3d at 1269;

- SPLC designated DIS as an anti-immigrant hate group in part because of the denigrating comments of its leadership about immigrants and in part because of its association with other anti-immigrant hate groups and anti-immigrant advocates and its aggressive, public, and vocal activities lobbying for the harsh treatment of immigrant groups, especially undocumented immigrants, *see supra* at 6-11; *see also* Ex. 2 to Holliday Decl. (SPLC DIS Report));

- DIS advocates broadly and intends that its words and actions be persuasive in the political arena, *see supra* at 4; and

- SPLC intends that its designations be persuasive in countering groups like DIS in the political arena, *see id.*

Considering these factors in the context of the current political climate, it is clear that DIS's position was espoused, and the "anti-immigrant hate group" designation made, within a charged national debate regarding immigration and the manner in which undocumented immigrants in the United States should be treated. In such a context, a reasonable reader of SPLC's statements would understand that each side of such a debate is expressing *its opinion* on these highly controversial matters.

In a similar context involving charges of anti-Semitism and xenophobia, another federal district court found the context of the statements highly relevant:

> Turning to the immediate context, the article describes the author . . . as the director of an organization "dedicated to fighting anti-Semitism and xenophobia," thereby "signaling that he was not a disinterested observer." The article appeared in . . . [a] publication that seems calculated "to draw the situation to the attention of interested parties," who bring to the article a "well-developed understanding of the issues" raised.

*Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 507 (S.D.N.Y. 2012) (citations and alterations omitted) (quoting *Brian v. Richardson*, 660 N.E. 2d 1126, 1131 (N.Y. 1995), and *Immuno AG v. Moor-Jankowski*, 567 N.E.2d 1270, 1280 (N.Y. 1991)).  The publication of SPLC's hate group designations on its website, in the context of an organization dedicated to fighting discrimination and hate, likewise makes clear to the reasonable reader that the statement represents a political opinion.  *Cf. Sullivan*, 376 U.S. at 271 ("In the realm of . . . political belief, sharp differences arise . . . [and] the tenets of one man may seem the rankest error to his neighbor. . . . [But] these liberties [to air political differences] are, in the long view, essential to enlightened opinion and right conduct on the part of the citizens of a democracy.") (quoting *Cantwell v. Connecticut*, 310 U.S. 296, 310 (1940)).

The nature of the "anti-immigrant hate group" characterization also demonstrates its protected status.  Allegations of prejudice, hatred, or political extremism are classic examples of opinions believed to be correct by the speaker, but not objectively verifiable as true or false. As one court explained, in holding that "allegations of hostility to labor" constituted protected speech:

> To say that one is unfair to labor is not a statement of a fact, but of an opinion. Likewise to say of one: you are reactionary, you are undemocratic, you are a nationalist, you are an isolationist, you are a New Dealer, you are a Union Leaguer, you are opposed to labor, you are a coddler of labor, is similarly to express an opinion.

*Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 598 (D.C. 2000) (quoting

*Montgomery Ward & Co. v. McGraw-Hill Publ'g Co.*, 146 F.2d 171, 176 (7th Cir. 1944));

s*ee also, e.g.*, *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 357 (3d Cir. 2020)

("Under the First Amendment, opinions based on disclosed facts are absolutely privileged,

no matter how derogatory they are. . . . That holds true even when an opinion is extremely

derogatory, like calling another person's statements anti-Semitic." (internal marks

omitted)); *Buckley*, 539 F.2d at 893-95 (description of plaintiff as "fascist" is "loose" and

"ambiguous" and cannot be regarded as statement of fact because of "tremendous

imprecision" of the term); *Ratajack v. Brewster Fire Dep't, Inc.*, 178 F. Supp. 3d 118, 165

(S.D.N.Y. 2016) (statement "that Plaintiff was a racist or a future threat to others" was

"nonactionable opinion"); *Egiazaryan*, 880 F. Supp. 2d at 499 (holding that accusations of

various types of bias, including "xenophob[ia]," were protected assertions of opinion

incapable of being proved true or false); *Jackson v. United Steel, Paper & Forestry,

Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 2009 WL 10704261, at

*39 (N.D. Ala. Feb. 23, 2009) (statements that plaintiff was "racist" and "radical" were

"non-fact-based name-calling and rhetoric that d[id] not sufficiently assert representations of actual facts") (collecting cases).[8]

While SPLC continues to believe that its opinion that DIS is an anti-immigrant hate group is well founded, the discussion above demonstrates that SPLC's opinion is nevertheless not one that is susceptible to objective proof of truth or falsity as constitutionally required in a defamation context under *Milkovich*. To the contrary, the anti-immigrant hate group designation reflects SPLC's constitutionally protected opinion regarding the nature of hate. *See Milkovich*, 497 U.S. at 20-21; *Coral Ridge*, 406 F. Supp. 3d at 1277. It necessarily follows that any defamation claim arising from the "anti-

---

[8] This principle is well established across the country. *See, e.g.*, *Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1440 (9th Cir. 1995) (calling a judge "anti-Semitic" was a non-actionable opinion); *Squitieri v. Piedmont Airlines, Inc.*, 2018 U.S. Dist. LEXIS 25485, at *12-13 (W.D.N.C. Feb. 16, 2018) ("Statements indicating that Plaintiff is racist are clearly expressions of opinion that cannot be proven as verifiably true or false.") (collecting cases); *Forte v. Jones*, 2013 U.S. Dist. LEXIS 39113, at *15 (E.D. Cal. Mar. 20, 2013) ("[T]he allegation that a person is a 'racist' . . . is not actionable because the term 'racist' has no factually-verifiable meaning."); *Edelman v. Croonquist*, 2010 U.S. Dist. LEXIS 43399, at *17-18 (D.N.J. May 4, 2010) ("[The] characterization of [plaintiffs] as racists is a subjective assertion, not sufficiently susceptible to being proved true or false to constitute defamation."); *Martin v. Brock*, 2007 U.S. Dist. LEXIS 57207, at *10 (N.D. Ill. July 19, 2007) ("[U]nder Illinois law, statements of opinion that someone is racist 'fit comfortably within the immunity for name-calling' unless they imply the existence of undisclosed, defamatory facts.") (citation omitted); *Smith v. Sch. Dist. of Phila.*, 112 F. Supp. 2d 417, 429 (E.D. Pa. 2000) ("While . . . a statement that plaintiff is 'racist and anti-Semitic,' if it was made, would be unflattering, annoying and embarrassing, such a statement does not rise to the level of defamation as a matter of law because it is merely non-fact based rhetoric."); *Williams v. Kanemaru*, 309 P.3d 972 (Table), 130 Haw. 304 (Haw. Ct. App. 2013) (accusation of racism based on disclosed facts not actionable for defamation); *Ward v. Zelikovsky*, 643 A.2d 972, 983 (N.J. 1994) (accusation that plaintiffs "hate[d] . . . Jews" non-actionable opinion); *see also, e.g.*, *Condit v. Clermont Cty. Review*, 675 N.E.2d 475, 478 (Ohio Ct. App. 1996) ("Numerous courts have concluded that allegations of fascism, anti-Semitism, or other accusations of ethnic bigotry are not actionable as defamation.") (citing cases); *O'Neil v. Peekskill Faculty Ass'n*, 507 N.Y.S.2d 173, 180 (N.Y. App. Div. 1986) (holding that accusations of "bigotry" were "classic examples of pure opinions"). *See generally* 1 Robert D. Sack, § 2:4-7, at 2-48 & n.196 (5th ed. 2017).

immigrant hate group" characterization fails as a matter of law.  Moreover, because the character of the challenged statements cannot be changed by amendment, the claim should be dismissed with prejudice.  *See id.* at 1280.

### B.   Georgia Law Also Provides That The "Anti-Immigrant Hate Group" Characterization Is A Non-Actionable Opinion

In addition to the protections for opinions arising from the First Amendment, Georgia, as a matter of state defamation law, also provides protection for opinions such as the only one remaining at issue in this case.  Georgia law therefore provides an independent basis for dismissing the Complaint with prejudice.[9]

#### 1.   *Georgia substantive law applies in this case.*

A district court sitting in diversity looks to the choice-of-law rules of the forum state.  *Target Corp.*, 812 F.3d at 829.  In tort cases, Alabama generally applies the choice-of-law principle of "[*l*]*ex loci delicti* . . . the law of the state where the injury occurred." *Fitts v. Minn. Mining & Mfg. Co.*, 581 So. 2d 819, 820 (Ala. 1991); *accord Target Corp.*, 812 F.3d at 829.  Although Alabama courts have not specifically addressed the issue in the context of internet defamation, in the case of an "aggregate communication" such as one distributed over the internet, the primary place of injury in a defamation case is generally considered to be the domicile or primary place of business of the plaintiff – here, as to both Plaintiffs, Georgia.  *See, e.g.*, Restatement (Second) of Conflict of Laws, § 150(2)-(3)

---

[9] If Alabama law applied, the result would be the same.  *See, e.g.*, *Bell v. Smith*, 281 So. 3d 1247, 1252–56 (Ala. 2019); *Sanders v. Smitherman*, 776 So. 2d 68, 74 (Ala. 2000).

(2019).  Except where preempted by the federal constitutional limitations discussed above, therefore, Georgia law governs the substance of Plaintiffs' defamation claims.

> 2.    *Under Georgia law, the "anti-immigrant hate group" label is an opinion not capable of defamatory meaning.*

The characterization of DIS as an "anti-immigrant hate group" is non-actionable not only for the constitutional reasons outlined above, but also as a matter of Georgia law. Under Georgia law, "[a]n assertion that cannot be proved false cannot be held libelous.  A writer cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it may be." *Bergen*, 337 S.E.2d at 771-72 (quoting *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir. 1977)).  For the reasons explained above, SPLC's anti-immigrant hate group designation is not capable of being proved false, but is an opinion expressed as part of a political debate, and thus it is non-actionable under Georgia law.

In a matter involving statements that were less political, but equally subjective, the Georgia Court of Appeals held that publication of attorney ratings by Martindale Hubbell was non-actionable as a matter of law, explaining that "[t]he expression of opinion on 'matters with respect to which reasonable men might entertain differing opinions' is not libelous.  The relative abilities of different lawyers is patently such a matter, wholly subjective and not capable of proof or disproof." *Id.* at 771-72 (citations omitted) (quoting *Grayson v. Savannah News-Press,* 139 S.E.2d 347, 352 (Ga. Ct. App. 1964)).  Here, it is just as apparent that the relative merits of opposing political positions regarding immigration – as well as whether certain such positions are "anti-immigrant" or "hateful"

– are "subjective and not capable of proof or disproof." *Id.*; *see also Webster v. Wilkins*, 456 S.E.2d 699, 700-01 (Ga. Ct. App. 1995) (statement that mother was "unfit to have a kid" was pure opinion where it was "apparent from the context of the article that [defendant] did not use the phrase 'unfit to have a kid' in its legal sense or as a legal conclusion, but used it only to express his subjective opinion criticizing [plaintiff's] parental abilities," which was matter upon which reasonable people "might entertain differing opinions").

Georgia law additionally "excludes from defamation liability any statements that may be characterized as rhetorical hyperbole or are clearly recognizable as pure opinion *because their factual premises are revealed*." *Monge v. Madison Cnty. Record, Inc.*, 802 F. Supp. 2d 1327, 1335 (N.D. Ga. 2011) (emphasis added) (quoting *800 Mktg. Solutions, Inc. v. GMAC Ins. Mgmt. Corp.*, 2008 U.S. Dist. LEXIS 53680, at *23 (M.D. Ga. July 14, 2008)).[10]  Rather, "a statement of opinion is actionable only if it implies the allegation of *undisclosed* defamatory facts as the basis for the opinion." *Jaillett*, 520 S.E.2d at 726 (emphasis in original) (quoting Restatement (Second) of Torts, § 566) (alterations omitted). "If an opinion is based upon facts already disclosed in the communication, the expression of the opinion implies nothing other than the speaker's subjective interpretation of the facts." *Id.*

---

[10] The First Amendment likewise protects conclusions based on fully disclosed factual bases. *See Turner*, 879 F.3d at 1262 (holding that a statement is a "pure opinion" when "the defendant makes a comment or opinion based on facts which are set forth in the publication or which are otherwise known or available to the reader or listener as a member of the public" and that such "statements of pure opinion are protected from defamation actions by the First Amendment").

Under this standard, the characterization of DIS as an "anti-immigrant hate group" is clearly non-defamatory as a matter of law, because the facts upon which that characterization was based are fully disclosed, including through hyperlinks from the Hate Map.[11]  *See* Ex. 1 to Holliday Decl. (Hate Map); Holliday Decl. ¶¶ 4-5 (providing URLs for Hate Map on SPLC website and explaining that SPLC's DIS Report can be accessed by a link to the Hate Map DIS listing).  Upon review of those fully disclosed facts, there can be no doubt that the challenged statement is protected under Georgia law.  Georgia law thus supplies a separate and independent basis for dismissing the Complaint with prejudice.

## IV.   THE COMPLAINT DOES NOT CONTAIN SUFFICIENT WELL-PLEADED FACTS PLAUSIBLY TO ALLEGE ACTUAL MALICE

Alternately, Plaintiffs' claims are properly dismissed on the separate and independent ground that Plaintiffs are concededly public figures,[12] and they have failed to plead facts sufficient plausibly to allege that SPLC published that characterization with actual malice fault – *i.e.*, with knowledge of its falsity or despite a high degree of awareness of its probable falsity.  *Garrison*, 379 U.S. at 74.  Indeed, that was the basis for the Court's

---

[11] Many courts have concluded that hyperlinked content is deemed part of a publication's overall context in a defamation action, including in determining that a challenged statement constitutes a protected opinion based on disclosed facts. *See, e.g.*, *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 925 N.Y.S.2d 407, 416 (N.Y. App. Div. 2011) (allegedly defamatory statement in email was "supported by links [in the email] to the writer's sources"); *Boley v. Atl. Monthly Grp.*, 950 F. Supp. 2d 249, 262 (D.D.C. 2013) (hyperlink to earlier article was sufficient to "incorporat[e] that article by reference and provid[e] the necessary context for the allegedly defamatory remark"); *see also Adelson v. Harris*, 973 F. Supp. 2d 467, 484 (S.D.N.Y. 2013) ("The hyperlink is the twenty-first century equivalent of the footnote for purposes of attribution in defamation law . . . [Indeed,] a hyperlink provides benefits that a footnote does not. . . . [It] instantaneously permits the reader to verify an electronic article's claims.").

[12] *See King I*, 2022 U.S. Dist. LEXIS 56569, at *7 ("Plaintiffs concede they are public figures").

dismissal of the *King I* case, and none of the cosmetic alterations that Plaintiffs have made to their pleadings between that action and this one should lead to a different conclusion.

### A.    The Actual Malice Standard Places A "Daunting" Burden On Plaintiffs

In the First Amendment context, actual malice is a term of art that does not denote personal spite or ill will, but rather that the defendant published the statement either with knowledge that it was false, or in reckless disregard of its possible falsity. *See, e.g.*, *King I*, 2022 U.S. Dist. LEXIS 56569, at *9 (citing *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989)).   This standard is "not an objective one," and therefore the beliefs or actions of a hypothetical reasonable person are irrelevant.   *Michel*, 816 F.3d at 702-03 (citing *St. Amant v. Thompson,* 390 U.S. 727, 731 (1968)).   Courts instead ask whether the defendant *actually* entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false.   *Id.*; *Silvester v. ABC*, 839 F.2d 1491, 1493 (11th Cir. 1988).   This constitutional standard "is a rather daunting one for public-figure plaintiffs."   *Klayman v. City Pages*, 2015 U.S. Dist. LEXIS 49134, at *39-40 (M.D. Fla. Apr. 3, 2015), *aff'd*, 650 F. App'x 744 (11th Cir. 2016).

Under this "daunting" standard, even "the most repulsive speech enjoys immunity provided it falls short of a deliberate or reckless untruth."   *Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 284 (1974) (quoting *Linn v. United Plant Guard Workers of Am., Local 114*, 383 U.S. 53, 63 (1966)).   Moreover, a public figure libel plaintiff's heightened burden to ultimately prove actual malice by clear and convincing evidence must necessarily factor into the *Iqbal*/*Twombly* plausibility pleading standard. *See Michel*, 816 F.3d at 702.

SPLC maintains that the Complaint should be dismissed because the only challenged statement within the statute of limitations is not even *capable* of truth or falsity, and it is paradoxical to suggest that SPLC could somehow have "serious doubts" about the truth of a characterization that is inherently incapable of being true or false. Nevertheless, even assuming that the description of DIS as an "anti-immigrant hate group" could be established as empirically false, the Complaint fails to plead facts that could support a *plausible* allegation that SPLC was subjectively aware of such falsity. As such, the Complaint fails plausibly to allege constitutional actual malice. *Cf. Coral Ridge*, 6 F.4th at 1252-53 (holding that plaintiff failed to plausibly allege actual malice in SPLC's designation of plaintiff as a hate group).

As noted above, the Eleventh Circuit has held that actual malice must meet the *Iqbal/Twombly* pleading requirements in defamation lawsuits involving public figures. *Michel*, 816 F.3d at 702. The Circuit explained this requirement as follows:

> [E]very circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice. [Citing cases from First, Second, Fourth, Seventh, and Tenth Circuits.] Joining that chorus, we hold that the plausibility pleading standard applies to the actual malice standard in defamation proceedings.

*Id.* (citations omitted).[13] The Court then explained the importance of enforcing this standard in public figure defamation suits:

---

[13] The Eighth Circuit recently "join[ed] the chorus" as well, *see Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020) (citing *Michel*), as has the Third

> In these cases, there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation. Indeed, the actual malice standard was designed to allow publishers the "breathing space" needed to ensure robust reporting on public figures and events. *Forcing publishers to defend inappropriate suits through expensive discovery proceedings in all cases would constrict that breathing space in exactly the manner the actual malice standard was intended to prevent.* The costs and efforts required to defend a lawsuit through that stage of litigation could chill free speech nearly as effectively as the absence of the actual malice standard altogether.

*Id.* (emphasis added) (quoting *Sullivan*, 376 U.S at 271-72).

The Eleventh Circuit explained in *Michel* that courts "can disregard the portions of the complaint where [plaintiff] alleges in a purely conclusory manner that the defendants were 'reckless' in publishing the article." *Id.* at 703-04 (citing *Iqbal*'s rejection of "threadbare recitals" and "mere conclusory statements"). The court then examined certain more detailed factual allegations made in the complaint, including that the defendant newspaper failed to use due diligence in investigating the story it published, but found that even those allegations, taken as true, were not enough to support a reasonable inference of actual malice. *Id.* at 704-05.

The case now before this Court is even weaker than the one in *Michel*, including because these Plaintiffs are barred by collateral estoppel from re-litigating the actual malice issue to the extent they seek to do so based on allegations pleaded or argued in *King I*. As a result, very little remains to be considered by this Court as a basis for actual malice.

---

Circuit, *see McCafferty*, 955 F.3d at 360 ("Because [plaintiff] has not adequately pleaded actual malice, he may not use discovery to probe [defendant's] state of mind.").

## B.     The Doctrine Of Collateral Estoppel Limits The Allegations At Issue

Under both Alabama and Georgia law, collateral estoppel requires that, in the prior action, the same issue be actually litigated between the same parties.[14]  Alabama adds an additional layer to the equation by requiring that resolution of the issue be "necessary to the prior judgment."  *See Lee L. Saad Const. Co.*, 851 So. 2d at 520.

All of these elements are satisfied here.  The *King I* judgment was between these same parties.  The issue in question – whether actual malice was plausibly pled as required by *Twombly/Iqbal* – was "actually litigated" in the prior action.  Indeed, failure to plausibly allege actual malice was the basis for the prior dismissal and therefore was essential to the prior judgment.  *See King I,* 2022 U.S. Dist. LEXIS 56569, at *11.  As a result, all that remains for this Court to resolve on the issue of actual malice is whether any of Plaintiffs' "new" allegations satisfy *Twombly*/*Iqbal*.  None of them does.

## C.     None Of The "New" Allegations Satisfies The Actual Malice Test

### 1.     Allegations concerning John Tanton

The first set of "new" allegations is found in the Complaint at Paragraphs 15 through 23, in which Plaintiffs allege that an SPLC official told the press that SPLC would reconsider whether to look at DIS as a possible hate group based on DIS's ties

---

[14] Georgia law provides that "[t]he doctrine of collateral estoppel, also known as issue preclusion, prevents the re-litigation of an issue actually litigated and adjudicated on the merits between the same parties or their privies."  *Sure, Inc. v. Premier Petroleum, Inc.*, 807 S.E.2d 19, 25 (Ga. Ct. App. 2017) (citation and internal marks omitted).  Similarly, Alabama law provides that collateral estoppel requires four elements: "(1) that an issue in a prior action was identical to the issue litigated in the present action; (2) that the issue was actually litigated in the prior action; (3) that resolution of the issue was necessary to the prior judgment; and (4) that the same parties are involved in the two actions."  *Lee L. Saad Constr. Co. v. DPF Architects, P.C.*, 851 So. 2d 507, 520 (Ala. 2002) (citations and internal marks omitted).

with John Tanton "'because there is no one more extreme than John Tanton and his crew on immigration in the United States.'" Compl. ¶ 15.[15]  Plaintiffs do not deny that DIS had ties to Tanton or his organization, which is also mentioned in the excerpt from the newspaper article quoted in Plaintiffs' Complaint.  *Id*.  Nor do Plaintiffs deny that one of the factors SPLC deems relevant in deciding whether to designate an organization as an "anti-immigrant hate group" is its association with other anti-immigrant groups or activists.  The SPLC official's statement that SPLC would have to reevaluate whether to describe DIS as a hate group after learning of the links between DIS and Tanton thus illustrates a *lack* of doubt about that subsequent characterization.  Indeed, it is only further evidence that SPLC subjectively believed in the *truth* of that characterization at the time of publication.

### 2.     *Allegations Concerning U.S. Senator Jeff Sessions*

The second set of "new" allegations is Plaintiffs' passing reference to SPLC's alleged reliance on then-Senator Jeff Sessions' letter to Plaintiffs advocating that local law enforcement use the federal program contained within Section 287(g) of the Immigration and Nationality Act.  Compl. ¶ 31.  Plaintiffs call this "bizarre 'evidence'" but make no further assertion about it.  *Id.*  But this letter – in which then-Senator Sessions "thank[ed]" King for his "extraordinary service to the Republic in the immigration realm," *see* Ex. 2 to Holliday Decl. (SPLC DIS Report) at 4 – is further

---

[15] For the convenience of the Court, Exhibit 4 to the Holliday Declaration highlights the differences between the Complaint in this action and the Amended Complaint that the Court dismissed in *King I*.

indication of Plaintiffs' prominence in the heated debate over immigration policy.  It thus does not in any way suggest that SPLC's characterization of DIS as an anti-immigrant hate group was false – let alone that it was knowingly false.

> 3.   *Allegations Concerning DIS's Connections To Immigrants*

The third set of "new" allegations is found at Paragraphs 35-36.  Here Plaintiffs allege that SPLC knew DIS's board is racially diverse and includes immigrants and that King's sister, too, is an immigrant.  Complaint ¶ 35-36.[16]  Whether DIS's board contains immigrants or its founder's sister is an immigrant says nothing, however, about whether DIS's *positions and activities* can accurately be characterized as anti-immigrant – let alone whether SPLC subjectively doubted the truth of that characterization at the time it was published.  *Cf. Tizes v. Curcio*, 1997 U.S. Dist. LEXIS 13726, at *10 (N.D. Ill. Sept. 9, 1997) ("One can be Jewish, and be anti-Semitic. One can be black, and be anti-black."); *Troche v. Smith*, 1998 Conn. Super. LEXIS 2251, at *8 (Conn. Super. Ct. Aug. 6, 1998) (noting "the kind of subliminal prejudice expressed in such comments as 'some of my best friends are black'").

---

[16] These paragraphs also reference Plaintiffs' position that DIS opposes only "illegal" immigrants, but that was alleged in *King I* and thus is not new.  *See King I*, ECF 3 at ¶¶ 11-13.

4.   *Allegations Concerning SPLC's Investigation Of Plaintiffs*

In the fourth "new" section, which can be found at Paragraphs 40 and 44-49, DIS

and King allege that SPLC failed to conduct a meaningful inquiry into DIS and made

certain factual errors in its reporting about DIS.[17]   In particular, Plaintiffs allege:

- that SPLC said DIS was incorporated in 2003 when it was incorporated in 2005, *see* Compl. ¶ 45;

- that SPLC erred by saying that DIS was formerly called American Resistance Foundation, *see id.* ¶ 46;

- that SPLC said King became interested in immigration in the 1990s when, Plaintiffs say, King did not do so until 2003, *see id.* ¶ 47; and

- that SPLC asserted falsely that King worked for the Georgia Coalition of Immigration Reduction, *see id.* ¶ 48.

Plaintiffs' allegation that SPLC failed to adequately investigate DIS history has no legal

bearing in the actual malice analysis, however, as the law is clear that "the failure to

investigate does not give rise to a finding of actual malice," *Michel*, 816 F.3d at 705,

particularly where, as here, the defendant did conduct some investigation, *id.*   But, even if

SPLC published each of the four statements identified above, and even assuming each was

false, collateral inaccuracies would not affect the actual malice analysis.   As the Supreme

Court explained in its most recent discussion of the actual malice requirement, the First

Amendment "require[s] more than mere falsity to establish actual malice:  The falsity must

---

[17] Plaintiffs allege that SPLC asserted in its briefing in *King I* that SPLC "did not conduct a basic fact finding about the Plaintiffs, like the composition of the board of Plaintiff DIS or the broader context of the statements of Plaintiff King."  Compl. ¶ 40.  To be clear, however, SPLC never asserted in its prior briefing that it had failed to conduct basic fact-finding into DIS.

be 'material.'" *Air Wisconsin Airlines Corp. v. Hoeper*, 571 U.S. 237, 247 (2014).  Here, none of the four allegedly false statements listed are in any way *material* to SPLC's decision to characterize DIS as an anti-immigrant hate group given the voluminous grounds for that characterization discussed above and in the DIS Report.  As a result, those four statements cannot yield a *plausible* allegation that SPLC acted with actual malice.

*        *        *

In sum, none of the "new" allegations in this action yields a plausible assertion that SPLC acted with actual malice in characterizing DIS as an anti-immigrant hate group.  To the contrary, the documents incorporated by the Complaint make clear that, at a minimum, SPLC *believed* that DIS met its definition of an "anti-immigrant hate group."  Indeed, by linking to extensive information in its DIS Report (Ex. 2 to Holliday Decl.), SPLC provided readers its basis for believing that DIS fit its definitions.  These materials, which are cognizable on a motion to dismiss as explained above, demonstrate the basis for SPLC's conclusion as to the hate group designation and thus defeat any reasonable inference that SPLC subjectively acted with actual malice.  *See Michel*, 816 F.3d at 704 (holding that "conclusory statement [in the complaint] is rebutted by the article itself, which was included as an exhibit to the complaint" where article laid out defendants' basis for challenged statements); *Coral Ridge*, 6 F.4th at 1253 ("the district court was correct to dismiss Coral Ridge's defamation claim on the ground that Coral Ridge did not sufficiently plead actual malice, and we affirm as to this issue").

Because DIS still has not and cannot allege facts sufficient for this Court to draw a reasonable inference that SPLC subjectively entertained "serious doubts," *Michel*, 816

F.3d at 703, as to whether DIS was "anti-immigrant" or as to whether DIS met its definition of a "hate group," the entire Complaint should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant SPLC respectfully moves this Court for an order dismissing Plaintiffs' Complaint in its entirety, with prejudice, and granting such other relief as it deems just and proper.

Dated: June 13, 2022                    Respectfully submitted,

/s/ Shannon L. Holliday
Shannon L. Holliday [ASB-5440-Y77S]
Robert D. Segall [ASB-7354-E68R]
COPELAND, FRANCO, SCREWS & GILL, P.A.
Post Office Box 347
Montgomery, AL  36101-0347
Telephone:  334-834-1180
Facsimile:  334-834-3172
Email:  holliday@copelandfranco.com
Email:  segall@copelandfranco.com

Chad R. Bowman (*pro hac vice forthcoming*)
Maxwell S. Mishkin (*pro hac vice forthcoming*)
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, DC 20006
Telephone:  202-661-2200
Facsimile:  202-661-2299
Email:  bowmanchad@ballardspahr.com
Email:  mishkinm@ballardspahr.com

**Attorneys for Defendant The Southern Poverty Law Center, Inc.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of June, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

James R. McKoon
McKoon & Gamble
P.O. Box 3220
Phenix City, AL  36868
Email:  jrmckoon@aol.com

s/Shannon L. Holliday
Of Counsel