UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| DONALD A. KING and THE DUSTIN INMAN SOCIETY, INC., | Case No. 2:22-cv-207 |
| *Plaintiffs*, | |
| v. | |
| SOUTHERN POVERTLY LAW CENTER, INC., | |
| *Defendant*. | |

**NON-PARTY CENTER FOR IMMIGRATION STUDIES'
MOTION FOR A PROTECTIVE ORDER AND TO QUASH**

Non-party Center for Immigration Studies ("CIS") moves pursuant to Federal Rules of Civil Procedure 26 and 45 to quash and for a protective order against Defendant Southern Poverty Law Center's ("SPLC") subpoena and ordering the discovery SPLC seeks not be had or, alternatively, that the discovery be conditioned on SPLC paying for the costs, employee time, and attorney fees CIS has and will incur as a result of SPLC's duplicative subpoena, and that any discovery produced by CIS be limited to outside counsel Attorneys Eyes Only. This motion is based on the attached memorandum, the declarations of Mark Krikorian and Joseph St. John, and such other argument as the Court may allow. A proposed order is attached.

Counsel for CIS conferred in good faith with counsel for SPLC via telephone on March 13, 2024, but was not able to reach an amicable resolution. *See* St. John Decl. Exh. 1.

Dated March 19, 2024

Respectfully submitted,

/s/ Bryan Taylor
Bryan Taylor (ASB 0390-Y81T)
BACHUS, BROM & TAYLOR LLC
3125 Blue Lake Drive, Ste. 101
Birmingham, AL 35243
Tel: (205) 539-0238
btaylor@bachusbrom.com

/s/ Joseph Scott St. John
Joseph Scott St. John
    (LSB 36682, *pro hac forthcoming*)
ST. JOHN LLC
1701 Jefferson Avenue
New Orleans, LA 70115
Tel: (410) 212-3475
scott@stjohnlaw.com

*Counsel for Non-Party Movant*
*Center for Immigration Studies*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| DONALD A. KING and THE DUSTIN INMAN SOCIETY, INC., | Case No. 2:22-cv-207 |
| *Plaintiffs*, | |
| v. | |
| SOUTHERN POVERTLY LAW CENTER, INC., | |
| *Defendant*. | |

**NON-PARTY CENTER FOR IMMIGRATION STUDIES'**
**MEMORANDUM ISO MOTION FOR A PROTECTIVE ORDER**

# INTRODUCTION

This litigation has been pending for nearly two years, but Defendant Southern Poverty Law Center did not make good use of that time. Indeed, it didn't bother to have a Rule 26(f) conference for over a year. Now, taking up the mantle of a parricide pleading for mercy because of his orphanage, SPLC points to the impending close of discovery and Plaintiffs' ongoing document production to justify burdening nonparties—including movant Center for Immigration Studies—with subpoenas for documents SPLC concedes are "presumably" in Plaintiffs' possession. Such facially duplicative discovery richly warrants a protective order under Rule 26(b)(2)(C).

Making matters worse, SPLC's subpoenas was based on nothing more than a conspiracy theory. The net result is a fishing expedition against a non-party the SPLC's leadership committed to "completely destroy[ing]." To the degree responsive documents exist — preliminary investigations reveal no transfers of funds, but a significant number of potentially responsive communications — there is no reason to burden CIS with the cost of searching for, reviewing, and producing documents already possessed by the parties, or the reputational harm that would follow from CIS producing documents to SPLC. CIS accordingly moves for a protective order that the discovery SPLC seeks not be had or, alternatively, that the discovery be conditioned on SPLC paying the costs and attorneys fees CIS has and

1

will incur as a result of SPLC's duplicative subpoena, and that any discovery produced by CIS be limited to Attorneys Eyes Only.

## <u>BACKGROUND</u>

The Center for Immigration Studies is an independent, non-partisan, non-profit, research organization. Krikorian Decl. ¶ 4. Since its founding in in 1985 by history professor Otis Graham Jr., CIS has pursued a single mission – providing immigration policymakers, the academic community, news media, and concerned citizens with reliable information about the social, economic, environmental, security, and fiscal consequences of legal and illegal immigration into the United States. *Id.* ¶ 5. CIS's experts have testified before Congress over 150 times. *Id.* ¶ 6.

For example, CIS Resident Fellow and former Immigration Judge Andrew "Art" Arthur has testified before Congress at least 11 times; was a drafter of the Homeland Security Act and various amendments to the Immigration and Nationality Act; and last year was retained by Louisiana to provide testimony as an immigration policy expert on behalf of 19 states, including Alabama. *Id.* ¶ 7. CIS Senior Legal Fellow George Fishman has similarly served as the Deputy General Counsel of the Department of Homeland Security; and was heavily involved in drafting the REAL ID Act, the Homeland Security Act, the USA PATRIOT Act, and the Illegal Immigration Reform and Immigrant Responsibility Act. *Id.* ¶ 8. CIS's experts are overseen by an equally prominent Board of Directors, which includes a retired Army

Lieutenant General, a former U.S. Attorney, and the President and CEO of the Urban League of Miami. *Id.* ¶ 9. Like many non-profits, CIS's prominence and impact are disproportionate to its size and resources. CIS has only about 20 staff members and 9 fellows. *Id.* ¶ 10. It has no dedicated information technology staff. *Id.*

SPLC's Subpoenas

This lawsuit was filed nearly two years ago by The Dustin Inman Society, Inc., and Donald King. Plaintiffs allege SPLC defamed them by labelling them an "anti-immigrant hate group" and the leader of an "anti-immigrant hate group," respectively, apparently based on undefined "ties" to an organization called "US Inc." ECF 1. Plaintiffs further allege SPLC's "hate group" designation has real impact: "By repeatedly claiming the mantle of specialized knowledge and expertise and using a specific, fact based definition to determine what a 'hate group' is," SPLC's designation "causes severe reputational damage and for the target to live in a climate of constant fear for personal safety and that of his family." *Id.* ¶ 39. Plaintiffs make no allegations about movant CIS.

After this case had been pending for over a year, the Court entered an order "remind[ing]" the parties of their "obligation, imposed by Rule 26(f) of the Federal Rules of Civil Procedure, to confer and to develop a discovery plan." ECF 23. Another year has now passed. Plaintiffs have apparently identified 54,000 "artifacts"

and have produced documents, but that production is not yet complete. *See* St. John Decl. Exh. 1. Plaintiffs have not been deposed.

On March 1, SPLC issued subpoenas to CIS and four other organizations, in each case seeking:

> 1. All Communications between you and King, from January 1, 2017 to present, concerning DIS, immigrants, aliens, refugees, or any other categories of persons who have crossed international borders, whether lawfully or unlawfully.

> 2. All Documents, from January 1, 2017 to present, relating to all transfers of funds made from you to King or from you to DIS, regardless of how that transfer was categorized (e.g., gift, grant, loan, pass-through, investment, etc.).

St. John Decl. Exh. 2; *see also id.* Exhs. 3-6. On their face, both requests seek documents that should be in Plaintiffs' possession.

CIS retained outside counsel, who conferred with SPLC's counsel on March 13. St. John Decl. Exh. 1. SPLC's counsel explained that subpoenas were issued "to third parties who *may* have communicated" with Plaintiffs about immigration. When asked why SPLC believes CIS communicated with Plaintiffs, SPLC's counsel responded with a conspiracy theory about a so-called "Tanton Network": "[T]he main basis … is the fact that [Plaintiff DIS] coordinates with other groups in the Tanton Network like NumbersUSA." SPLC's counsel conceded he was "not sure [SPLC] can point to anything specific to CIS other than it's in the same [so-called] Tanton Network," and the "[a]nswer might be there are no such communications."

4

He further admitted that it is "not like [SPLC] can say we've got an email from [CIS Executive Director] Mark Krikorian" to justify the subpoena.

SPLC then admitted Plaintiffs "presumably" have all documents that are responsive to SPLC's subpoena, but claimed Plaintiff King is having unspecified "computer issues" and noted that discovery was closing shortly. When asked why SPLC was burdening a non-party with a subpoena rather than seeking relief vis-a-vis Plaintiffs, SPLC's counsel responded that SPLC had elected to proceed collegially with Plaintiffs rather than via motion practice. The meet-and-confer closed with SPLC refusing to put its subpoena on hold until after it had received and reviewed discovery from the Plaintiffs.

During the meet-and-confer, SPLC's counsel agreed to provide its evidence of the supposed Tanton Network. SPLC's did so a few hours later: three links to pages on SPLC's website making various accusations about CIS. Two of those pages were naked assertions with no source material. The third was an after-the-fact SPLC attempt to backfill support for labelling CIS as a hate group. A fourth link had nothing to do with CIS. St. John Decl. Exh. 7. Apparently appreciating the trivialness of its evidence, SPLC's counsel emailed two days later with a *National Review* column by CIS's Executive Director discussing this case and encouraging the public to donate to support Plaintiffs, as well as an email apparently produced in response to one of SPLC's March 1 subpoenas. St. John Decl. Exh. 8.

CIS served timely responses and objections to SPLC's subpoena. St. John Decl. Exh. 19. CIS now timely moves for a protective order and to quash.

## LEGAL STANDARDS

In addition to or as an alternative to a motion pursuant to Rule 45, "any person from whom discovery is sought may move for a protective order in the court where the action is pending[.]" Fed. R. Civ. P. 26(c); *see also, e.g.*, *Burch v. P.J. Cheese, Inc.*, 2010 U.S. Dist. LEXIS 143543 (N.D. Ala. Aug. 20, 2010) (quashing non-party subpoena on technical grounds and granting protective order on substantive grounds). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; … [and]; (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way…." Fed. R. Civ. P. 26(c). "Rule 26(c) gives the district court discretionary power to fashion a protective order" and "does not depend upon a legal privilege." *Farnsworth v. Procter & Gamble*, 758 F.2d 1545, 1548 (11th Cir. 1985). In contrast,

the court "must" act to limit discovery where "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

## **ARGUMENT**

### I.   **SPLC's Subpoena Is Duplicative, Unduly Burdensome, and Not Proportionate.**

#### **A. SPLC's subpoena improperly seeks documents possessed by Plaintiffs.**

On its face, SPLC's subpoena seeks communications and financial information that should be in Plaintiffs' possession. SPLC even concedes Plaintiffs "presumably" possess any documents that would be responsive. The Federal Rules do not countenance such duplicative discovery. "[T]he court *must* limit the frequency or extent of discovery otherwise allowed … if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; [or] (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C); *see also, e.g.*, *Rodriguez v. Burnside*, 38 F. 4th 1324, 1335 (11th Cir. 2022); *Poole v. Lambert*, 819 F.2d 1025, 1029 (11th Cir. 1987); *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979)).

The prohibitions on duplicative discovery and undue burden act as a nearly *per se* bar to duplicative discovery from a nonparty like CIS. "A non-party should not be burdened with gathering and producing documents that can be obtained from … one of the parties in the lawsuit." *Bogus v. City of Birmingham*, 2019 U.S. Dist. LEXIS 249326, at *6 (N.D. Ala. Mar. 7, 2019). "Where the same or similar materials can be obtained reasonably and economically from … another litigant, requiring a non-party to gather and produce them is an 'undue burden' on the non-party." *Id.*; *see also, e.g.*, *United States v. Crumb*, 2016 U.S. Dist. LEXIS 185430, at *8 (S.D. Ala. Oct. 4, 2016) (quashing subpoena "because the same documents have either already been requested via Rule 34 requests to [plaintiff] USA or can be obtained more conveniently and with less expense from USA."). Certainty that the documents are available from a party is not required. As then-Magistrate Judge Moorer explained, where "the information sought [by the subpoenas] *may* be available through [a party] directly," it "is more appropriately requested from [the party] prior to seeking it from nonparties." *Morrow v. Flowers Foods, Inc.*, 2008 U.S. Dist. LEXIS 134126, at *4-5 & n.2 (M.D. Ala. May 28, 2008). That's precisely what should have happened here.

In terms of the Federal Rules, SPLC's duplicative subpoena triggers the mandatory discovery limits in Rule 26(b)(2)(C). The mandatory provision of Rule 26(b)(2)(C)(i) is triggered because the discovery SPLC seeks should be in Plaintiffs'

possession, and SPLC concedes it "presumably" is so. Seeking the same discovery from nonparty CIS is therefore a *per se* undue burden. *See City of Birmingham*, 2019 U.S. Dist. LEXIS 249326, at *6. Indeed, documents containing at least some of the information sought regarding financial transfers—tax returns—have already been produced to SPLC by Plaintiffs, but SPLC's counsel had not bothered to review those documents as of March 13. The mandatory provision of Rule 26(b)(2)(C)(ii) is also triggered because SPLC has had two years to seek discovery, but instead sat on its hands. Having declined to diligently pursue discovery, SPLC cannot now point to the impending discovery deadline to circumvent the requirement that discovery be first sought from a party. The Court should enter a protective order against SPLC's duplicative subpoena to nonparty CIS.

### B. SPLC's subpoena imposes a real burden on CIS and is not proportionate to the needs of this case.

SPLC's subpoena is not merely a burden because it's duplicative. The search itself will impose a significant burden. CIS does not have a dedicated information technology staff, and its email system is not centrally searchable. Krikorian Decl. ¶ 10. Accordingly, searching for responsive documents would require CIS to either (1) make a costly upgrade to its email service or (2) direct individual employees to cease performing their normal jobs and search for communications with Plaintiffs, then download any responsive emails into a reviewable and producible form. *Id.* ¶ 11. A preliminary search of the CIS Executive Director's email identified hundreds of

potentially responsive emails, many of which appear to be personal correspondence related to their common interest food: both men are foodies. *Id.* ¶ 12. Collecting emails would impose substantial costs on CIS, and attorney review of those emails would cost yet more. Suffice it to say, CIS does not have the vast financial resources of SPLC, and financially burdening CIS for duplicative discovery is grossly disproportionate to the needs of what is—at bottom—a private reputational dispute.

Even if some of Plaintiffs' email were missing, proportionality is still lacking. Plaintiffs presumably can produce enough communications for SPLC to get a good flavor of Plaintiffs' views, and any open questions can be resolved by deposing the Plaintiffs. This isn't a case that warrants leaving no stone unturned. At this juncture, SPLC bears the burden of demonstrating (1) non-duplicative discovery is available from CIS, and (2) the marginal benefit of that discovery outweighs the burden on CIS. *See Taylor v. Farm Credit*, 2022 U.S. App. LEXIS 27172 (11th Cir. Sept. 28, 2022) (citing *Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1085 (11th Cir. 1990), and affirming finding that discovery request was disproportionate and an undue burden: "The mere possibility that loose and sweeping discovery might turn up something …does not show particularized need and likely relevance that would justify the sweeping scope of the discovery request."). It cannot do so.

A perhaps more significant burden on CIS is difficult to quantify. As Alabama Attorney General Steve Marshall put it, "[t]he SPLC is infamous for leveling

unfounded charges of 'hate' against political opponents." St. John Decl. Exh. 9. One

victim of SPLC's accusations explained how SPLC isolates its opponents through a

warped version of Six Degrees of Kevin Bacon:

> The SPLC has a political agenda and they vilify people, that's what
> they do. There's very little in the way of an empirical examination of
> groups that might pose a threat to civil order. There's almost nobody
> left in the Klan, so ***what they do is they find respectable groups or
> high-profile people and they say, 'X is linked to Y, who is linked to a
> hate group.'***

*Id.* Exh. 10 at 5. The goal is not to persuade. Rather, the director of the Southern

Poverty Law Center's "Intelligence Project" proudly expounded: "Sometimes the

press will describe us as monitoring [SPLC-identifed] hate groups. I want to say

plainly that our aim in life is to destroy these groups. Completely destroy them." [1]

Being targeted by SPLC has real-world consequences. As CIS experienced,

certain companies refused to do business with those targeted by SPLC. Krikorian

Decl. ¶ 13. Wealthy donors decide resisting SPLC's pressure campaign isn't worth

the hassle or impact to their own businesses. *Id.;* St. John Decl. Exh. 11. And the

impact is not limited to economics. After her religious liberty non-profit was branded

a "hate group" by SPLC, one of the nation's leading Supreme Court advocates found

---

[1] https://www.youtube.com/watch?v=fnTz2ylJo_8 (at 1:35 – 1:48). It's not at all clear,
however, that SPLC's motives are purely political. Noted anti-death-penalty lawyer Millard
Farmer famously described SPLC founder Morris Dees as "the Jim and Tammy Faye Bakker of
the civil rights movement." St. John Decl. Exh. 12 at 6. Indeed, a former SPLC employee told *The
New Yorker* "it was hard, for many of us, not to feel like we'd become pawns in what was, in many
respects, a highly profitable scam." St. John Decl. Exh. 13 at 4.

the window of her car shot out in her church parking lot, and she was told she needed security officers to accompany her to a speech on a law school campus. Kristen Waggoner, *We Were Smeared by the SPLC*, WALL ST. J. (Apr. 3 2019). Indeed, an *actual* domestic terrorist "identified the [Family Research Council] … on the Southern Poverty Law Center Website," purchased a handgun, then went to the FRC's office with the intent of killing "as many people as he could" and smearing Chick-Fil-A sandwiches "in the faces of the shooting victims, 'to make a statement against the people who work in that building and with their stance against gay rights and Chick-Fil-A.'" St. John Decl. Exh. 15 at 16:19-18:13, 21:18-22:15.

In contrast to SPLC and its $169 million in annual revenue and $711 million in net assets, non-party subpoena recipient CIS is a small non-profit, dependent on its donors for its $3.8 million dollar budget. *See* St. John Decl. Exhs. 17, 18. CIS is also a think-tank, dependent on whistleblowers and quiet access to information. CIS has a very real fear that producing its communications to a powerful and avowedly hostile adversary like SPLC will undermine the willingness of both donors and whistleblowers to work with CIS. Krikorian Decl. ¶ 17; *see also NAACP v. Alabama*, 357 U.S. 449, 462 (1958) ("It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association."); *Farnsworth*, 758 F.2d at 1547 ("Central to this purpose is the ability to conduct probing scientific and social research supported by a

population willing to submit to in-depth questioning. Undisputed testimony in the record indicates that disclosure of the names and addresses of these research participants could seriously damage this voluntary reporting.").

The existing protective order does not alleviate that concern: it permits SPLC to access whatever discovery CIS is forced to produce. *Compare* ECF 50 ¶ 5 *with In re Secretary, Fla. Dep't of Corr.*, 2020 U.S. App. LEXIS 9894, at *6 (11th Cir. Mar. 30, 2020) (granting mandamus where protective order did not adequately limit access to discovery material). Regardless, producing communications to a political adversary intent on "completely destroy[ing]" CIS and its donors, *supra* fn. 2, will undermine CIS's trustworthiness in the eyes of its donors and sources. That's yet another reason why the Court should require SPLC to look to a litigant who chose the courts before permitting SPLC to seek discovery from CIS.

## II.   SPLC made no effort to minimize the burden on CIS

Finally, it's not just the undue burden on CIS that warrants a protective order; it's also SPLC's utter disregard of its duty to minimize that burden. "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Here, the record reflects no such steps were taken. On the contrary, the record reflects SPLC issued the subpoena as part of a fishing expedition hoping to dredge up evidence of a conspiracy theory.

13

During the March 13 meet-and-confer, SPLC conceded it had no basis for believing CIS had communicated with Plaintiffs or transferred funds to them. SPLC's counsel admitted he was "not sure [SPLC] can point to anything specific to CIS other than it's in the same [so-called] Tanton Network," and the "[a]nswer might be there are no such communications." St. John Decl. Exh. 1. He elaborated that it's "not like [SPLC] can say we've got an email from [CIS Executive Director] Mark Krikorian" to justify the subpoena to CIS. Of course, "the discovery rules do not permit [SPLC] to go on a fishing expedition." *EEOC v. S. Haulers, LLC*, 2012 U.S. Dist. LEXIS 68997, at *9 (S.D. Ala. May 17, 2012) (quoting *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006)). Apparently realizing the problem SPLC had stumbled into, two days later, SPLC's counsel pointed to a *National Review* column in which CIS Executive Director Mr. Krikorian encouraged the public to donate to support Plaintiffs' litigation of this case. *Id.* Exh. 8. But Krikorian is not CIS, and the time for such justification was before SPLC issued its subpoena, not as part of an ex post attempt to backfill support for its fishing expedition. *See id* at *9-11 & n.2.

Given the weak support for SPLC's subpoena and the fact that the subpoena facially seeks documents Plaintiffs "presumably" possess, CIS asked SPLC to put the subpoena on hold until SPLC received and reviewed discovery from Plaintiffs. St. John Decl. Exh. 1. SPLC refused to do so, with its counsel blithely remarking that the burden on CIS was not "undue." That misapprehends the undue burden of

subpoenaing a nonparty for duplicative discovery, and it reflects an utter refusal to minimize that burden when it was brought to SPLC's attention. At least in the absence of detailed proof of substantial, identified deficiencies in Plaintiffs' production, SPLC's subpoena should be quashed as overbroad and disproportionate to the needs of this case.

## **CONCLUSION**

SPLC's subpoena facially seeks documents that Plaintiffs possess. Seeking those documents from non-party CIS is accordingly a *per se* undue burden. Worse, SPLC refused to minimize by putting the subpoena on hold while it takes discovery from Plaintiffs. The Court should accordingly grant a protective order that the discovery not be had from CIS, and quashing SPLC's subpoena *in toto*. Alternatively, to minimize the burden as Rule 45 requires but SPLC refused to do, the Court should condition that discovery on SPLC paying CIS's costs; the personnel time required to search for documents; and CIS's attorney fees in making this motion, gathering responsive documents, and reviewing those documents in response to SPLC's subpoena. *See, e.g.*, *De Petro v. Exxon, Inc.*, 118 F.R.D. 523, 525 (M.D. Ala. 1988) (granting protective order limiting discovery unless the party seeking discovery paid for the costs the requested discovery would impose). Further, any documents produced by CIS should be limited to outside Attorney Eyes Only.

Dated March 19, 2024

Respectfully submitted,

/s/ Bryan Taylor
Bryan Taylor (ASB 0390-Y81T)
BACHUS, BROM & TAYLOR LLC
3125 Blue Lake Drive, Ste. 101
Birmingham, AL 35243
Tel: (205) 539-0238
btaylor@bachusbrom.com

/s/ Joseph Scott St. John
Joseph S. St. John (LSB 36682)
  (*pro hac vice forthcoming*)
ST. JOHN LLC
1701 Jefferson Avenue
New Orleans, LA 70115
Tel: (410) 212-3475
scott@stjohnlaw.com

*Counsel for Non-Party Movant*
*Center for Immigration Studies*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 19th day of March, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

James R. McKoon, Jr.
McKoon & Gamble
P.O. Box 3220
Phenix City, AL 36868
Email: jrmckoon@aol.com

Todd V. McMurtry
Scott R. Thomas
Hemmer Wessels McMurtry PLLC
250 Grandview Drive, Suite 500
Fort Mitchell, KY 41017
Email: tmcmurtry@hemmerlaw.com
Email: sthomas@hemmerlaw.com

Mathew D. Staver
Horatio G. Mihet
Daniel J. Schmid
Liberty Counsel
P.O. Box 540774
Orlando, FL 32854
Email: court@LC.org
Email: hmihet@LC.org
Email: dschmid@LC.org

Chad R. Bowman
Maxwell S. Mishkin
Lauren Patricia Russell
Ballard Spahr LLP
1909 K Street, NW 12th Floor
Washington, DC 20006-1157:
Email: Bowmanchad@ballardspahr.com
Email:Russelll@ballardspahr.com
Email:Mishkinm@ballardspahr.com

Shannon Lynn Holliday
Robert David Segall
Copeland Franco Screws & Gill
Po Box 347
Montgomery, AL 36101-0347
Email:Segall@copelandfranco.com
Email:Holliday@copelandfranco.com


/s/ Bryan Taylor
*Counsel for Non-Party*
*Center for Immigration Studies*