UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| DONALD A. KING and<br>THE DUSTIN INMAN SOCIETY, INC.,<br><br>   *Plaintiffs*,<br><br>v.<br><br>SOUTHERN POVERTLY LAW<br>CENTER, INC.,<br><br>   *Defendant*. | Case No. 2:22-cv-207 |

## NON-PARTY CENTER FOR IMMIGRATION STUDIES' MOTION FOR ATTORNEY FEES

Non-party Center for Immigration Studies ("CIS") moves pursuant to Federal Rules of Civil Procedure 26(g) and 45(d)(1) for attorney fees incurred in responding to a subpoena issued by Defendant Southern Poverty Law Center's ("SPLC"), moving for a protective order vis-à-vis that subpoena, and making this motion for attorney fees. As detailed in CIS's original motion and the accompanying memorandum, SPLC's subpoena was a *per se* undue burden because it facially sought documents from a non-party that should be in the possession of Plaintiffs. SPLC's subpoena accordingly violated Rule 45(d)(1), particularly in view of SPLC's refusal to put the subpoena on hold pending Plaintiffs' production of documents.

This motion is based on the attached memorandum, documents of record, the second declaration of Joseph St. John, and such other argument as the Court may allow. A proposed order is attached.

Counsel for CIS conferred in good faith with counsel for SPLC via telephone on April 3, 2024, but was not able to reach an amicable resolution. *See* 2d St. John Decl. Exh. 27.

Dated April 11, 2024

<div style="margin-left: 40%;">

Respectfully submitted,

/s/ Bryan Taylor
Bryan Taylor (ASB 0390-Y81T)
BACHUS, BROM & TAYLOR LLC
3125 Blue Lake Drive, Ste. 101
Birmingham, AL 35243
Tel: (205) 539-0238
btaylor@bachusbrom.com

/s/ Joseph Scott St. John
Joseph Scott St. John
   (LSB 36682, *pro hac forthcoming*)
ST. JOHN LLC
1701 Jefferson Avenue
New Orleans, LA 70115
Tel: (410) 212-3475
scott@stjohnlaw.com

*Counsel for Non-Party Movant*
*Center for Immigration Studies*

</div>

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| DONALD A. KING and<br>THE DUSTIN INMAN SOCIETY, INC.,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>SOUTHERN POVERTLY LAW<br>CENTER, INC.,<br><br>    *Defendant*. | Case No. 2:22-cv-207 |

**NON-PARTY CENTER FOR IMMIGRATION STUDIES'**
**MEMORANDUM ISO MOTION FOR ATTORNEY FEES**

**INTRODUCTION**

This litigation has been pending for nearly two years, but Defendant Southern Poverty Law Center did not make good use of that time. Indeed, it didn't bother to have a Rule 26(f) conference for over a year. SPLC then panicked at the impending close of discovery. So it issued a subpoena to non-party Center for Immigration Studies for documents it conceded Plaintiffs "presumably" possess, and it refused to put that subpoena on hold pending Plaintiffs' document production. CIS accordingly moved for a protective order and to quash, pointing to the *per se* undue burden of SPLC seeking discovery from a non-party of documents that facially should be in the possession of a party, as well as the actual burden to CIS of responding to SPLC's subpoena. After that motion was filed, SPLC withdrew its subpoena. When CIS approached SPLC's counsel seeking compensation for the burden SPLC had imposed on CIS in violation of Rule 45(d)(1), SPLC and its counsel refused, once again forcing CIS to seek relief from the Court. CIS now moves for attorney fees pursuant to Rule 26(g) and Rule 45(d)(1).

**BACKGROUND**

The Center for Immigration Studies is an independent, non-partisan, non-profit, research organization. ECF 53-1 ¶ 4. Since its founding in in 1985 by history professor Otis Graham Jr., CIS has pursued a single mission – providing immigration policymakers, the academic community, news media, and concerned citizens with

1

reliable information about the social, economic, environmental, security, and fiscal consequences of legal and illegal immigration into the United States. ECF 53-1 ¶ 5. CIS's experts have testified before Congress over 150 times. *Id.* ¶ 6.

For example, CIS Resident Fellow and former Immigration Judge Andrew "Art" Arthur has testified before Congress at least 11 times; was a drafter of the Homeland Security Act and various amendments to the Immigration and Nationality Act; and last year was retained by Louisiana to provide testimony as an immigration policy expert on behalf of 19 states, including Alabama. *Id.* ¶ 7. CIS Senior Legal Fellow George Fishman has similarly served as the Deputy General Counsel of the Department of Homeland Security; and was heavily involved in drafting the REAL ID Act, the Homeland Security Act, the USA PATRIOT Act, and the Illegal Immigration Reform and Immigrant Responsibility Act. *Id.* ¶ 8. CIS's experts are overseen by an equally prominent Board of Directors, which includes a retired Army Lieutenant General, a former U.S. Attorney, and the President and CEO of the Urban League of Miami. *Id.* ¶ 9. Like many non-profits, CIS's prominence and impact are disproportionate to its size and resources. CIS has only about 20 staff members and 9 fellows. *Id.* ¶ 10. It has no dedicated information technology staff. *Id.*

<div align="center">SPLC's Subpoenas</div>

This lawsuit was filed nearly two years ago by The Dustin Inman Society, Inc., and Donald King. Plaintiffs allege SPLC defamed them by labelling them an

"anti-immigrant hate group" and the leader of an "anti-immigrant hate group," respectively, apparently based on undefined "ties" to an organization called "US Inc." ECF 1. Plaintiffs further allege SPLC's "hate group" designation has real impact: "By repeatedly claiming the mantle of specialized knowledge and expertise and using a specific, fact based definition to determine what a 'hate group' is," SPLC's designation "causes severe reputational damage and for the target to live in a climate of constant fear for personal safety and that of his family." *Id.* ¶ 39. Plaintiffs make no allegations about movant CIS.

After this case had been pending for over a year, the Court entered an order "remind[ing]" the parties of their "obligation, imposed by Rule 26(f) of the Federal Rules of Civil Procedure, to confer and to develop a discovery plan." ECF 23. Another year has now passed. Plaintiffs have apparently identified 54,000 "artifacts" and have produced documents, but that production is not yet complete. *See* ECF 53-3. Plaintiffs have not been deposed.

On March 1, SPLC issued subpoenas to CIS and four other organizations, in each case seeking:

> 1. All Communications between you and King, from January 1, 2017 to present, concerning DIS, immigrants, aliens, refugees, or any other categories of persons who have crossed international borders, whether lawfully or unlawfully.
>
> 2. All Documents, from January 1, 2017 to present, relating to all transfers of funds made from you to King or from you to DIS,

regardless of how that transfer was categorized (e.g., gift, grant, loan, pass-through, investment, etc.).

ECF 53-4. Both requests facially seek documents that should be in Plaintiffs' possession.

CIS retained outside counsel, who conferred with SPLC's counsel on March 13. ECF 53-3. SPLC's counsel explained that subpoenas were issued "to third parties who *may* have communicated" with Plaintiffs about immigration. When asked why SPLC believed CIS communicated with Plaintiffs, SPLC's counsel responded with a theory about a so-called "Tanton Network": "[T]he main basis … is the fact that [Plaintiff DIS] coordinates with other groups in the Tanton Network like NumbersUSA." SPLC's counsel conceded he was "not sure [SPLC] can point to anything specific to CIS other than it's in the same [so-called] Tanton Network," and the "[a]nswer might be there are no such communications." He further admitted that it is "not like [SPLC] can say we've got an email from [CIS Executive Director] Mark Krikorian" to justify the subpoena.

SPLC then admitted Plaintiffs "presumably" have all documents that are responsive to SPLC's subpoena, but claimed Plaintiff King was having unspecified "computer issues" and noted that discovery was closing shortly. When asked why SPLC was burdening a non-party with a subpoena rather than seeking relief vis-a-vis Plaintiffs, SPLC's counsel responded that SPLC had elected to proceed collegially with Plaintiffs rather than via motion practice. The meet-and-confer

4

closed with SPLC refusing to put its subpoena on hold until after it had received and reviewed discovery from the Plaintiffs.

During the meet-and-confer, SPLC's counsel agreed to provide its evidence of the supposed Tanton Network. SPLC's did so a few hours later: three links to pages on SPLC's website making various accusations about CIS. Two of those pages were naked assertions with no source material. The third was an after-the-fact SPLC attempt to backfill support for labelling CIS as a hate group. A fourth link had nothing to do with CIS. ECF 53-9. Apparently appreciating the trivialness of its evidence, SPLC's counsel emailed two days later with a *National Review* column by CIS's Executive Director discussing this case and encouraging the public to donate to support Plaintiffs, as well as an email apparently produced in response to one of SPLC's March 1 subpoenas. ECF 53-10.

CIS served timely responses and objections to SPLC's subpoena. ECF 53-21. CIS then moved for a protective order and to quash, ECF 53, and the Court ordered SPLC to show cause why CIS's motion should not be granted, ECF 55. Rather than do so, SPLC withdrew its subpoena. ECF 57.

Cognizant of the clear line of authority prohibiting duplicative subpoenas like SPLC's and multiple cases awarding fees when such subpoenas were served, CIS requested a meet-and-confer regarding amicable resolution of its fee claim. 2d St. John Decl. Exh. 26. CIS identified caselaw supporting its position. *Id.* During the

meet and confer, SPLC's counsel simply said he "has a different view," declined to debate the issue, and identified no contrary authority. *Id*. Exh. 27. In a Friday, April 5, letter, SPLC's counsel offered a litany of excuses for the subpoena, faulted CIS for not engaging in yet more meet-and-confers, and accused CIS of "threatening" him by explaining the text of Rule 45. *Id.* Exh. 28. Tellingly, SPLC still identified no authority supporting its position. CIS's now moves for fees pursuant to Rule 26(g) and Rule 45(d)(1).

## **ARGUMENT**

## I. **SPLC's Duplicative Subpoena Was A *Per Se* Undue Burden on Non-Party CIS**

### **A. SPLC's subpoena improperly sought documents possessed by Plaintiffs.**

On its face, SPLC's subpoena sought communications and financial information that should be in Plaintiffs' possession. During a meet-and-confer, SPLC conceded Plaintiffs "presumably" possess any documents that would be responsive. SPLC nevertheless refused to minimize the burden on CIS by putting its subpoena on hold until Plaintiffs produced documents.

CIS recognized that it would suffer a substantial burden from having to collect documents. Its small size and lack of IT staff meant either an expensive software upgrade or significant employee time would be required. ECF 53-1 ¶¶ 10-17. CIS

also recognized the likelihood of reputational harm, both vis-à-vis its donors and its information sources. *Id.*

CIS's fears were well-founded. The Director of SPLC's "Intelligence Project" proudly expounded that SPLC's "aim in life is to destroy" political opponents like CIS.[1] Indeed, as Alabama Attorney General Steve Marshall put it, "the SPLC is infamous for leveling unfounded charges of 'hate' against political opponents." ECF 53-11. One victim explained SPLC's *modus operandi*:

> The SPLC has a political agenda and they vilify people, that's what they do. There's very little in the way of an empirical examination of groups that might pose a threat to civil order. There's almost nobody left in the Klan, so **what they do is they find respectable groups or high-profile people and they say, 'X is linked to Y, who is linked to a hate group.'**

ECF 53-12 at 5.

SPLC's smear campaign can be effective. Some companies refuse to do business with those targeted by SPLC, and wealthy donors decide resisting SPLC's pressure campaign isn't worth the hassle or impact to their own businesses. ECF 53-1 ¶ 13; ECF 53-13. So, faced with a facially duplicative subpoena imposing

---

[1] https://www.youtube.com/watch?v=fnTz2ylJo_8 (at 1:35 – 1:48). It's not at all clear, however, that SPLC's motives are purely political. Noted anti-death-penalty lawyer Millard Farmer famously described SPLC founder Morris Dees as "the Jim and Tammy Faye Bakker of the civil rights movement." ECF 53-14 at 6. A former SPLC employee similarly told *The New Yorker* "it was hard, for many of us, not to feel like we'd become pawns in what was, in many respects, a highly profitable scam." ECF 53-15 at 4.

significant burdens—both financially and to CIS's relationships with its supporters—CIS moved for a protective order and to quash.

### B. Subpoenas seeking discovery obtainable from a party are a *per se* undue burden and violate Rule 45(d)(1).

"[I]t is generally accepted that the scope of discovery allowed under Rule 45 is limited" to the same extent as discovery under Rule 26. *Jordan v. Comm'r, Miss. Dept. of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020). Indeed, discovery under Rule 45 is actually more constrained by the affirmative duty to minimize the burden on a non-party. *See* Fed. R. Civ. P. 45(d)(1); *Robinson v. McNeese*, 2021 U.S. Dist. LEXIS 11928, at *4 (N.D. Ga. Jan. 22, 2021).

As CIS's motion explained, the prohibitions on duplicative discovery and undue burden act as a nearly *per se* bar to duplicative discovery from a nonparty. ECF 53. That's because "[a] non-party should not be burdened with gathering and producing documents that can be obtained from … one of the parties in the lawsuit." *Bogus v. City of Birmingham*, 2019 U.S. Dist. LEXIS 249326, at *6 (N.D. Ala. Mar. 7, 2019). "Where the same or similar materials can be obtained reasonably and economically from … another litigant, requiring a non-party to gather and produce them is an 'undue burden' on the non-party." *Id.*; *see also, e.g.*, *United States v. Crumb*, 2016 U.S. Dist. LEXIS 185430, at *8 (S.D. Ala. Oct. 4, 2016) (quashing subpoena "because the same documents have either already been requested via Rule 34 requests to [plaintiff] USA or can be obtained more conveniently and with less

expense from USA."). As then-Magistrate Judge Moorer explained, where "the information sought [by the subpoenas] *may* be available through [a party] directly," it "is more appropriately requested from [the party] prior to seeking it from nonparties." *Morrow v. Flowers Foods, Inc.*, 2008 U.S. Dist. LEXIS 134126, at *4-5 & n.2 (M.D. Ala. May 28, 2008).

Applied here, SPLC's subpoena of documents and information facially obtainable from Plaintiffs triggered the mandatory discovery limits in Rule 26(b)(2)(C). Even if that wasn't the case, SPLC's subpoena would be improper as grossly disproportionate to the needs of what is—at bottom—a private reputational dispute. CIS therefore asked SPLC to put its subpoena on hold until SPLC had reviewed Plaintiffs' documents. SPLC refused, with its counsel blithely remarking the burden on CIS wasn't undue. That was wrong, and it reflected SPLC doubling-down on its violation of Rule 45(d)(1) rather than minimizing the burden on CIS.

## II.   The Court Should Award CIS Attorney Fees Pursuant to Rule 26(g) and Rule 45(d)(1).

"A party or attorney responsible for issuing and serving a subpoena *must* take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Courts "*must* enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *Id.* The rule is strict: "[G]ood faith in issuing a subpoena is not sufficient to avoid sanctions … if a party has issued the

subpoena in violation of the duty … to take reasonable steps to avoid imposing undue burden or expense on the person subject to the subpoena." *BMO Harris Bank, N.A. v. Richert Funding, LLC*, 2017 U.S. Dist. LEXIS 234735, at *33-34 (N.D. Ga. July 3, 2017). A court faced with a subpoena duplicative of party discovery thus should not only grant a protective order, it should order the party or attorney that issued the subpoena to pay the recipient's attorney fees. *See, e.g.*, *BNSF Ry Co. v. Ctr. for Asbestos Related Disease, Inc.*, 2022 U.S. Dist. LEXIS 82472, at *10, 13-15 (D. Mont. May 6, 2022); *Laribee v. Gypsum Express Ltd.*, 2023 U.S. Dist. LEXIS 131555, at *6-7 (M.D. Fla. June 20, 2023).

That SPLC withdrew its subpoena in the face of CIS's motion for a protective order doesn't change the analysis. In *Duong v. Groundhog Enterprises*, a litigant similarly served a subpoena seeking documents that could be obtained from a party, then withdrew the subpoena after the recipient moved to quash. 2020 U.S. Dist. LEXIS 76611, at *13-14 (C.D. Cal. Feb. 28, 2020). The court found that "thirteenth hour withdrawal to be 'too little too late,' and that such conduct is sanctionable." *Id.* (citing Rule 45(d)(1)). The court thus awarded attorney fees pursuant to Rule 26(g), but reduced the award because the non-party failed to comply with various local rules, including a pre-motion telephone conference with the Court. *Id.* at *34-36.

Here, awarding CIS its fees is particularly appropriate given that CIS identified the duplicative nature of the SPLC subpoena during the March 13 meet-

and-confer and asked SPLC to put the subpoena on hold until Plaintiffs produced documents. Had SPLC agreed, SPLC would have done *something* to minimize the burden on CIS. SPLC instead forced CIS to seek relief from the Court, and only withdrew its subpoena after forcing CIS to incur the burden of responding to the subpoena and drafting a motion for a protective order. In short, SPLC *maximized* the burden on CIS, in direct contravention of its duty under Rule 45.

**III.   The reasonable fee award to CIS is $11,340 for responding to SPLC's subpoena and moving for a protective order, $4,690 for this motion, and $600 for local counsel's fee.**

"[T]he starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate," *i.e.*, the lodestar. *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

**A.   CIS's counsel reasonably expended 32.4 hours responding to SPLC's subpoena and moving for a protective order and to quash.**

After exercising billing judgment and excluding paralegal activities, CIS's counsel reasonably expended 32.4 hours in responding to SPLC's subpoena and moving for a protective order and to quash. 2d St. John Decl. ¶ 12 & Exh. 21. Courts in this circuit have found similar amounts of time reasonable for a motion for a protective order. *See Weissman v. Cheokas*, 2023 U.S. Dist. LEXIS 201146, at *11-12 (M.D. Ga. Sept. 29, 2023) (finding 27.2 hours reasonably expended for a motion for a protective order and awarding $6,328 in fees); *Jean v. One West Bank, N.A.*,

2015 U.S. Dist. LEXIS 195526, at *7-8 (S.D. Fla. July 16, 2015) (finding 26.4 hours reasonably expended in connection with motion for protective order and awarding $11,880 in fees); *see also Ayers v. State Farm Mut. Auto Ins. Co.*, 2018 U.S. Dist. LEXIS 4906, at *10 (M.D. Fla. Jan. 11, 2018) (awarding $3,347.50 for 10.5 hours spent drafting a 2 ½ page motion for a protective order).

### B. CIS's counsel reasonably expended over 13.4 hours on this motion.

The 1991 Advisory Committee Notes state that the liability for violations of now-Rule 45(d) "may include the cost of fees to collect attorneys' fees owed as a result of a breach of this duty." As it did with the subpoena itself, CIS sought amicable resolution from SPLC and offered to forego recovering some costs, but also noted that Rule 45 contemplates an award of fees-on-fees. SPLC refused and inexplicably faulted CIS, but identified no authority supporting SPLC's position. As a result, CIS's counsel reasonably expended at least 13.4 hours pursuing this fee motion. 2d St. John Decl. ¶ 13 & Exh. 22.

### C. $350 per hour is a reasonable rate for CIS's lead counsel.

CIS's lead counsel has over fifteen years of experience in federal litigation. 2d St. John Decl. ¶¶ 5-9. He graduated from law school with honors, served as a law clerk at a U.S. Court of Appeals, and practiced in the Washington, DC, offices of two of the nation's most-prominent law firms. *Id.* ¶¶ 3-7. More recently, he served for six years as Louisiana's Deputy Solicitor General. In that capacity, he litigated

numerous high-profile matters in federal district court, various U.S. courts of appeal, and the U.S. Supreme Court. *Id.* ¶ 9 & Exh. 20.

The Eleventh Circuit has instructed that a reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. That SPLC believes a national law firm is necessary to litigate this case suggests the relevant legal community is national. Under that analysis, the USAO Fitzpatrick Matrix[2] and the rates of SPLC's counsel, 2d St. John Decl. ¶¶ 20-21 & Exhs. 24-25, suggest the reasonable hourly rate for CIS's counsel is approximately $700 per hour, *i.e.*, in line with his undiscounted, non-contingent hourly rate of $750 per hour, 2d St. John Decl. ¶ 14.

The more conservative approach, however, is that the relevant community is either Alabama, *Gartman v. Brady*, 2022 U.S. Dist. LEXIS 158125, at *20-21 (M.D. Ala. Sept. 1, 2022), or the Middle District of Alabama, *J.P. v. Elmore Cnty. Bd. of Educ.*, 2021 U.S. Dist. LEXIS 95732, at *5 (M.D. Ala. May 20, 2021). Either way, a rate of $350 per hour is reasonable for an attorney of Mr. St. John's skill and experience. To confirm the reasonableness of that rate, this Court can look to prior awards in other federal litigation, as well as its own expertise. *Norman*, 836 F.2d at 1300.

---

[2] https://www.justice.gov/usao-dc/page/file/1189846/dl

Take *Valley National Bank v. Czapla*. In that case, Magistrate Judge Pate found "hourly rates in the range of $400 to $442 for … an attorney with over twenty years of experience" and $289 to $332 for attorneys with approximately six years of experience "are reasonable and in line with the prevailing market rate in the legal community." 2023 U.S. Dist. LEXIS 77259, at *7-8 (M.D. Ala. May 3, 2023), *report and recommendation adopted* 2023 U.S. Dist. LEXIS 90686 (M.D. Ala. May 24, 2023) (Huffaker, J.). Cases from throughout Alabama are in accord. *E.g.*, *Jones v. City of Birmingham*, 2024 U.S. Dist. LEXIS 25771, at *7 (N.D. Ala. Jan. 3, 2024) (Maze, J., finding $350/hour to be a reasonable rate for an attorney with 16 years of experience); *Laird v. Jiya Jeel LLC*, 2023 U.S. Dist. LEXIS 65721, at *19 (S.D. Ala. Apr. 12, 2023) (Dubose, J., finding $400/hour to be a reasonable rate for an attorney with 21 years experience and $300/hour to be a reasonable rate for an attorney with 14 years experience).

**D. CIS should be awarded its local counsel's fee.**

In addition to the lodestar of its lead counsel, CIS should be compensated for the cost of its local counsel, who was retained for a discounted flat-fee of $600. CIS's local counsel is a prominent Alabama attorney with over 20 years of experience, including service as the Governor's General Counsel. 2d St. John Decl. Exh. 23.

## **CONCLUSION**

The authority to issue subpoenas is an awesome delegation of government power to private attorneys. Attorneys exercising that power bear an equally awesome duty—often disregarded—to issue subpoenas judiciously and to minimize the burden imposed on non-parties. CIS gave SPLC every opportunity to comply with that duty and avoid incurring fees under Rule 26(g) and Rule 45(d)(1). But SPLC and its counsel refused, resulting in a substantial undue burden to a small, non-profit organization that SPLC considers a political opponent. CIS should be awarded fees for the work its attorneys performed in responding to SPLC's improper subpoena, as well the work performed in seeking those fees. Given that the controlling legal rules were called to SPLC's counsel's attention, half of that award should be assessed against SPLC, and half against the attorney who signed the subpoena to CIS.

Dated April 12, 2024

Respectfully submitted,

/s/ Bryan Taylor
Bryan Taylor (ASB 0390-Y81T)
BACHUS, BROM & TAYLOR LLC
3125 Blue Lake Drive, Ste. 101
Birmingham, AL 35243
Tel: (205) 539-0238
btaylor@bachusbrom.com

/s/ Joseph Scott St. John
Joseph S. St. John (LSB 36682; *pro hac vice*)
ST. JOHN LLC
1701 Jefferson Avenue
New Orleans, LA 70115
Tel: (410) 212-3475
scott@stjohnlaw.com

*Counsel for Non-Party Movant*
*Center for Immigration Studies*

## CERTIFICATE OF SERVICE

     I hereby certify that on the 11th day of April, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

James R. McKoon, Jr.
McKoon & Gamble
P.O. Box 3220
Phenix City, AL 36868
Email: jrmckoon@aol.com

Todd V. McMurtry
Scott R. Thomas
Hemmer Wessels McMurtry PLLC
250 Grandview Drive, Suite 500
Fort Mitchell, KY 41017
Email: tmcmurtry@hemmerlaw.com
Email: sthomas@hemmerlaw.com

Mathew D. Staver
Horatio G. Mihet
Daniel J. Schmid
Liberty Counsel
P.O. Box 540774
Orlando, FL 32854
Email: court@LC.org
Email: hmihet@LC.org
Email: dschmid@LC.org

Chad R. Bowman
Maxwell S. Mishkin
Lauren Patricia Russell
Ballard Spahr LLP
1909 K Street, NW 12th Floor
Washington, DC 20006-1157:
Email: Bowmanchad@ballardspahr.com
Email:Russelll@ballardspahr.com
Email:Mishkinm@ballardspahr.com

17

Shannon Lynn Holliday
Robert David Segall
Copeland Franco Screws & Gill
Po Box 347
Montgomery, AL 36101-0347
Email:Segall@copelandfranco.com
Email:Holliday@copelandfranco.com

Joseph Scott St. John
St. John LLC
1701 Jefferson Avene
New Orleans, LA 70115
Email: scott@stjohnlaw.com

/s/ Bryan Taylor
*Counsel for Non-Party*
*Center for Immigration Studies*