**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **DONALD A. KING and THE** | **)** | |
| **DUSTIN INMAN SOCIETY, INC.,** | **)** | |
| | **)** | |
| **Plaintiffs,** | **)** | |
| | **)** | |
| **v.** | **)** | **Case No. 2:22-cv-207-CLM-JTA** |
| | **)** | |
| **THE SOUTHERN POVERTY** | **)** | |
| **LAW CENTER, INC.,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

**DEFENDANT SOUTHERN POVERTY LAW CENTER, INC.'S
RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE (DOC. 60)**

Defendant the Southern Poverty Law Center, Inc. ("SPLC") respectfully submits this response to the Court's Order (Doc. 60) directing it to show cause why the motion (Doc. 59) ("Mot." or "Motion") of non-party the Center for Immigration Studies ("CIS") seeking an award of its attorneys' fees should not be granted.

## INTRODUCTION

This dispute arises from a narrow document subpoena that SPLC served on third party CIS, seeking two categories of records concerning Plaintiffs D.A. King and the Dustin Inman Society ("DIS"). Following consultation, SPLC withdrew the subpoena in a good-faith effort to limit any burden on the third party.

The Motion relies on Federal Rule of Civil Procedure 45(d)(1), which provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Under that rule, "[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction . . . on a party or attorney who fails to comply." *Id.* The Court should deny CIS's motion because CIS fails to satisfy each prong of that test.

**First**, the subpoena did not require compliance in this Court. The Motion is therefore improper under the clear case law and should be denied.

**Second**, SPLC's subpoena did not impose an undue burden on CIS under the multi-factor test that courts apply to assess the burden that a subpoena imposes on a

third party.  CIS does not mention that test, let alone attempt to satisfy it.  It cannot.

**Third**, SPLC and its counsel took reasonable steps to minimize the subpoena's permissible burden on CIS.  Indeed, SPLC's counsel were in the midst of discussions over how to accommodate CIS's concerns when CIS – without warning or justification – moved (in the wrong court) to quash the subpoena nearly two weeks before CIS's deadline to respond, rather than objecting under Rule 45.

Both because CIS seeks relief here in the wrong court and because sanctions are not justified on the merits, the Court should deny CIS's motion.

## RELEVANT BACKGROUND AND PROCEDURAL HISTORY

### A.    The Underlying Lawsuit

DIS is "a non-profit Georgia corporation with a stated mission and goal of promoting the enforcement of immigration laws in the United States." *King v. SPLC*, 2023 WL 3061825, at *2 (M.D. Ala. Apr. 24, 2023) (cleaned up).  Its founder, King, "chartered DIS in 2005 and is the public face of the organization today." *Id.* (cleaned up).  SPLC is "the premier U.S. non-profit organization monitoring the activities of domestic hate groups and other extremists," and among its other efforts, "SPLC publishes an annual journal, titled 'Intelligence Report,' maintains a 'Hate Map,' and produces web pages with profiles about the designated hate groups." *Id.*

This case arises from SPLC's designation of DIS as an "anti-immigrant hate group" in 2018 and its re-designation of DIS as such in 2019-2021.  Plaintiffs claim

that those designations are false and defamatory, in particular because King asserts that he opposes "only *illegal* immigration through the enforcement of immigration laws" but does not oppose "*legal* immigration." *Id.* at *4 (cleaned up, emphasis added). SPLC moved to dismiss on multiple grounds, including that the challenged statements are non-actionable as either purely subjective expressions of opinion or opinions based upon disclosed facts; the Court denied the motion, stating that it had "a reasonable expectation that discovery will reveal evidence that SPLC's designation of DIS as an anti-immigrant hate group is sufficiently factual to be susceptible of being proved true or false." *Id.* at *15 (cleaned up).

**B.     SPLC's Subpoena To CIS**

Given the Court's ruling, discovery has focused on King's views toward immigrants and immigration policy and on the connections between Plaintiffs and other individuals and groups involved in the national immigration policy debate – especially other groups that SPLC has also characterized as "anti-immigrant." CIS, which SPLC designates as an anti-immigrant hate group,[1] is one such organization. CIS was founded in the 1980s by the late John Tanton, who "create[d] a network of organizations with a simple agenda: heavily restricting the immigration levels to the

---

[1] *See* SPLC, *Center for Immigration Studies*, https://www.splcenter.org/fighting-hate/extremist-files/group/center-immigration-studies.

United States in order to maintain a white majority."[2]  King publicly referred to

Tanton as "a personal friend and a personal hero," and for a period of time "tax-

deductible" donations could be made to DIS through Tanton's foundation, U.S. Inc.[3]

Additional connections between Plaintiffs and CIS are also public.  King referred to

CIS Executive Director Mark Krikorian as a friend in a 2010 blog post,[4] while

Krikorian referred to King as "my friend" in 2011,[5] and "my pro-enforcement friend

on the ground in Georgia" in 2017.[6]

Given the connections between DIS and CIS, the first set of requests for

production that SPLC served on Plaintiffs in November 2023 included a request for

"[a]ll communications" between King and Krikorian.  Ex. 1 at Req. 17.  In December

---

[2] *Id.*

[3] *See* SPLC, *Dustin Inman Society*, https://www.splcenter.org/fighting-hate/extremist-files/group/dustin-inman-society.

[4] *See* D.A. King, *Amnesty Deported from SOTU*, Dustin Inman Society (Jan. 28, 2010),  https://www.thedustininmansociety.org/blog/2010/01/28/our-freind-mark-krikorian-on-obama-throwing-la-raza-et-al-under-the-bus-last-nightamnesty-deported-from-sotu/.

[5] *See* Mark Krikorian, *Two Governors and Immigration*, Center for Immigration Studies (Feb. 22, 2011), https://cis.org/Krikorian/Two-Governors-and-Immigration.

[6] *See* Mark Krikorian, *Should the Public Know When ICE Releases Criminal Aliens? Georgia Bill Says 'Yes'*, Center for Immigration Studies (Mar. 14, 2011), https://cis.org/Krikorian/Shouldnt-Public-Know-When-ICE-Releases-Criminal-Aliens-Georgia-Bill-Says-Yes.  Krikorian has also written publicly about this very lawsuit, disclosing that he has donated toward King's litigation efforts and encouraging others to donate as well.  *See* Mark Krikorian, *SPLC: Still Alive and Hating*, National Review (June 7, 2023), https://www.nationalreview.com/corner/splc-still-alive-and-hating/.

2023, Plaintiffs responded that "[n]on-privileged responsive documents regarding communications with . . . Mark Krikorian . . . will be produced."  Ex. 2 at 10.  In February 2024, SPLC's counsel sent Plaintiffs' counsel a deficiency letter noting that Plaintiffs had "not yet provided multiple categories of records that [they] represented [they] would produce," including communications between King and Krikorian.  Ex. 3 at 1.  Plaintiffs' counsel assured SPLC's counsel that they were working diligently to process and produce such responsive records but having technical difficulties, sparking concern about their abilities to produce records completely and in a timely manner.[7]

In late February 2024, with discovery then scheduled to close in mid-April, SPLC and its counsel also sought these still-unproduced records directly from CIS. SPLC issued a subpoena to CIS on March 1, 2024, with a return date of April 1, 2024, which was served on March 5, 2024.  *See* Doc. 53-4 at 1.  The subpoena sought two narrow categories of records: (1) records of communications between CIS and King, from January 1, 2017 to the present, concerning DIS or immigration ("Request No. 1"); and (2) records related to payments that CIS may have made to King or DIS from January 1, 2017 to the present ("Request No. 2").  *Id.* at 8-9.

---

[7] Plaintiffs' counsel has yet to produce electronic documents in industry-standard format to ensure all content and metadata are included.  SPLC thus still has concerns regarding the completeness of the production and is in ongoing discussions with Plaintiffs' counsel on this topic.

Counsel for CIS reached out to SPLC's counsel on March 12, 2024, requesting to meet-and-confer the next day, and CIS's counsel spoke with SPLC's counsel on March 13, 2024.  Doc. 53-9.  During that discussion, SPLC's counsel explained why they had a good-faith belief that CIS was in possession of records responsive to the subpoena that would be relevant to key issues in this defamation action.  Doc. 53-3 at 1-2.  SPLC's counsel also invited CIS's counsel to propose solutions for how to reduce any purported burden responding to the subpoena posed to CIS, including by extending the return date.  Doc. 59-10 at 1.

CIS's counsel claimed that it was a "conspiracy theory" to believe that CIS and King had communicated regarding immigration.  *Id.*  SPLC's counsel disagreed and asked CIS's counsel to reduce to writing CIS's objections to the subpoena – particularly what, in CIS's view, made the subpoena's burden "undue."  *Id.* at 1-2.

Following the meet-and-confer discussion, SPLC's counsel provided CIS's counsel with a sampling of SPLC's reporting about the network of organizations founded and/or funded by Tanton, including CIS, as well as DIS's public acknowledgment that it had received funding from another such group.  Doc. 53-9. SPLC's counsel concluded his message that he was "[l]ooking forward to discussing further." *Id.* at 1.  CIS's response did not convey a demand to withdraw or modify the subpoena.  Doc. 53-3.

Two days later, on March 15, 2024, SPLC's counsel sent CIS's counsel

another email to call attention to the article that Krikorian had written about this
lawsuit. *See* Doc. 53-10. SPLC's counsel concluded his message as follows:

> As I stated on the call, the Federal Rules generally permit civil
> subpoenas to impose burdens on third parties, just not undue
> burdens. Your letter does not elaborate on why you believe this
> subpoena – which narrowly seeks only two categories of records
> from defined time ranges pertaining to a single identified
> individual (King) and single identified organization (DIS) –
> imposes an *undue* burden on your client. Again, as I stated on
> the call, it would greatly help my client evaluate any steps it
> might take with respect to the subpoena if you could do so.

*Id.* at 1. CIS's counsel did not respond to that email.

## C.    CIS's Motion To Quash

On March 19, 2024 – nearly two weeks before the subpoena's return date –
CIS filed a motion for a protective order and to quash the subpoena. Doc. 53. That
motion was filed in the wrong court. This subpoena required compliance in the
District of Columbia, *see* Doc. 53-4 at 1, where it was served and where CIS is based,
*see* Doc. 53-19 at 1. CIS thus should have filed its motion to quash in the U.S.
District Court for the District of Columbia. *See* Fed. R. Civ. P. 45(d)(3)(A).

CIS's motion was also unnecessary. Discussions between SPLC and CIS
were ongoing and, pursuant to Rule 45(d)(2)(B), CIS could simply have sent an
objection letter to SPLC that would have preserved CIS's objections and shifted the
burden to SPLC to move to compel a response. CIS attached its responses and
objections to the subpoena as an exhibit to the motion to quash, which CIS filed

7

*before* sending a copy of those same responses and objections to SPLC.  During a subsequent telephone conference, CIS's counsel had no answer when asked why CIS filed a motion to quash rather than simply serving objections.  *See* Doc. 59-10 at 2.

Once finally served, SPLC considered CIS's responses and objections.  As to Request No. 2, CIS stated that it conducted "a reasonable search" and that "no responsive documents were located."  *See* Doc. 53-21 at 5.  SPLC accordingly considered the subpoena satisfied as to Request No. 2.  As to Request No. 1, in a declaration attached to the motion to quash, Krikorian averred that he had "preliminarily searched [his] email for communications with Mr. King," and that this "search returned hundreds of results" (some number of which he believes are not responsive to the subpoena).  *See* Doc. 53-1 at ¶ 12.  CIS objected to reviewing or producing these communications on the principal basis that these records "should be in Plaintiffs' possession."  *See* Doc. 53 at 10.

Meanwhile, Plaintiffs *only then* produced hundreds of communications between King and various individuals at CIS (which, among other things, made clear that the subpoena was not, as CIS claimed, "based on nothing more than a conspiracy theory").  *See* Doc. 53 at 4.  In light of Plaintiffs' belated production of some records responsive to Request No. 1 and CIS's response to Request No. 2, SPLC withdrew its subpoena to CIS, which rendered the motion to quash moot.  *See* Doc. 60.  CIS then, after conferring with undersigned counsel, filed the Motion.

**ARGUMENT**

The Motion, like CIS's motion to quash, has been filed in the wrong district, and the Court should deny it without prejudice on that basis alone.  Moreover, on the merits, the Motion fails to justify sanctions under Rule 45 both because SPLC's subpoena did not impose an undue burden on CIS and because SPLC acted in good faith to minimize any reasonable burden.

**A.      The Fee Motion Fails Because CIS Filed It In The Wrong Court**

Rule 45 provides, no less than half a dozen times, that "the court for the district where compliance is required" possesses the authority to adjudicate disputes over third party subpoenas.  *See* Rule 45(d)(1), 45(d)(2)(B)(i), 45(d)(3)(A), 45(d)(3)(B), 45(e)(2)(B), 45(f), and 45(g).  Under Rule 45(d)(1), relevant here, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and "[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction . . . on a party or attorney who fails to comply."

The subpoena commanded CIS to produce documents in the District of Columbia, *see* Doc. 53-4 at 1, which is where CIS is based and where it was served, *see* Doc. 53-19 at 1.  CIS therefore should have filed its motion to quash, as well as this Motion, in the U.S. District Court for the District of Columbia.

Courts addressing this issue, in this Circuit and elsewhere, have resoundingly

9

concluded that a motion challenging a third-party subpoena filed outside of the

district where compliance is required must be denied under the plain text of Rule 45.

*See, e.g.*, *Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, 2022 WL 1239237, at *1 (M.D.

Fla. Feb. 16, 2022) ("[T]he Middle District of Florida is not the district where

compliance is required, and the motion is thus not properly before this Court.")

(collecting cases); *Kleiman v. Wright*, 2022 WL 189871, at *2 (S.D. Fla. Jan. 21,

2022) ("[O]nly the court where compliance is required has the authority to protect a

non-party from the burden and expense of complying with a subpoena by ordering

fee-shifting.").[8]  SPLC's counsel brought this jurisdictional requirement of Rule 45

---

[8] *See also, e.g.*, *York Holding, Ltd. v. Waid*, --- F.R.D. ---, 2024 WL 1432783, at
*1 (D. Nev. Apr. 3, 2024) ("When a subpoena-related motion has been filed in the
wrong District, courts routinely deny that motion without prejudice to refiling it in
the proper tribunal."); *Greater Chautauqua Fed. Credit Union v. Quattrone*, 2024
WL 497521, at *1 (S.D.N.Y. Jan. 3, 2024) ("This Court does not have the power to
quash and/or modify the subpoena."); *Glover v. EQT Corp.*, 2023 WL 2825827, at
*1 (N.D. W. Va. Mar. 31, 2023) ("Courts around the country have denied motions
to compel compliance with a subpoena and motions to quash a subpoena for lack of
jurisdiction where the subpoena required compliance in another district."); *4R4 Sons,
LLC v. Tru G. Wilhelm, Inc.*, 2022 WL 2905468, at *4 (D. Nev. July 22, 2022)
("[T]he Court finds that it does not properly have jurisdiction to decide the merits of
any issues related to the subpoena."); *In re Smerling Litig.*, 2022 WL 684148, at *2
(S.D.N.Y. Mar. 8, 2022) ("Having jurisdiction over the case only affects this Court's
power to issue the subpoena, not to quash it . . . ."); *In re Pork Antitrust Litig.*, 2021
WL 8648823, at *2 (D. Minn. Sept. 3, 2021) (finding no basis to "usurp the role
assigned to that court by Rule 45" and thus "conclud[ing] that it has no authority to
rule on the present motion"); *Deselms ex rel. Anita C. Deselms Living Tr. v.
Occidental Petroleum Corp.*, 2021 WL 2948747, at *2 (D. Wyo. June 16, 2021)
("The proper court to decide such issues is the court for the district where compliance
is required.").

to the attention of CIS. *See* Doc. 59-10 at 3. CIS nevertheless opted to file the Motion in this Court. The Motion is properly denied on this basis alone.

## B.      SPLC's Subpoena Did Not Impose An Undue Burden On CIS

To challenge a subpoena, a third party bears the burden of "establishing that compliance with the subpoena would be unduly burdensome." *Breland v. Levada EF Five, LLC*, 2015 WL 12995098, at *5 (S.D. Ala. Apr. 30, 2015). In determining whether a discovery subpoena imposes an undue burden on a third party, "courts consider the following factors: relevance, the requesting party's need for the documents, the breadth of the document request, and the time period covered by the request." *United States v. Crumb*, 2016 WL 6997122, at *2 (S.D. Ala. Oct. 4, 2016) (cited at Mot. at 8); *accord BMO Harris Bank, N.A. v. Richert Funding, LLC*, 2017 WL 11627485, at *11 (N.D. Ga. July 3, 2017) (cited at Mot. at 10). SPLC's subpoena did not impose an undue burden on CIS under this test.

**First**, as discussed above, the requested records are directly relevant to a central element of Plaintiffs' defamation claim, namely the truth of SPLC's challenged designation of DIS as "anti-immigrant." *See supra* at 2-3.

**Second**, SPLC had a clear need for the records at the time it issued the subpoena. As to communications between Plaintiffs and CIS, SPLC had not yet obtained those records from Plaintiffs despite having requested them four months earlier, and undersigned counsel is still in communication with Plaintiffs' counsel

regarding the completeness of the productions.  As to any records related to payments that CIS may have made to Plaintiffs, those documents would be in the hands of CIS alone if CIS did not identify itself in its donations.

**Third**, SPLC's requests were narrow in scope.  Request No. 1 sought communications between CIS and a single identified individual (King) and only those communications pertaining to DIS or immigration.  *See* Doc. 53-4 at 8. Request No. 2 sought records related to any payments that CIS made to a single identified individual (King) or a single identified organization (DIS).  *See id.* at 9.

**Fourth**, SPLC's requests were narrow in timeframe.  CIS was formed in 1985, *see* Doc. 53 at 5, and King allegedly launched DIS in 2005, *see* Doc. 1 ¶ 12.  SPLC's requests sought records from only January 1, 2017 through March 1, 2024, *see* Doc. 53-4 at 8-9, the time period most relevant to the challenged publications.

CIS does not even mention this test, let alone attempt to satisfy it.  Instead, CIS argues that "[s]ubpoenas seeking discovery obtainable from a party are a *per se* undue burden and violate Rule 45(d)(1)."  Mot. at 8.  Setting aside that the requested records were only potentially available *from CIS* as set forth above, CIS cites no authority in support of supposed rule. To the contrary, the cases it cites illustrate that courts do not recognize the "per se" rule that CIS posits and themselves demonstrate that, by seeking the communications from Plaintiffs well before requesting them from CIS, SPLC did *not* impose an undue burden on CIS:

• In *Bogus v. City of Birmingham*, 2019 WL 13268139 (N.D. Ala. Mar. 7, 2019) (cited at Mot. at 8), the court explained that a third-party subpoena imposes an undue burden when "the same or similar materials can be obtained *reasonably and economically* from a public source or another litigant." *Id.* at *3 (emphasis added). Here, SPLC sought communications from Plaintiffs months before seeking them from CIS and served the subpoena on CIS only after SPLC justifiably came to doubt whether it could *reasonably* obtain those records from Plaintiffs. *See* Doc. 53-3 at 2.

• In *Crumb*, 2016 WL 6997122 (cited at Mot. at 8), the court explained that a subpoena may be improper when the issuing party "request[s] the same documents from both . . . a party, and . . . a non-party, simultaneously," and where the issuing party "has not presented any argument that production from the party will be inadequate or that simultaneous production will (or is likely to) produce different results." *Id.* at *2. Here, SPLC issued the subpoena to CIS months after requesting the communications from Plaintiffs, and SPLC did so only after Plaintiffs' delays raised concerns that their productions, if any, would be inadequate.

• In *Morrow v. Flowers Foods, Inc.*, 2008 WL 11511782 (M.D. Ala. May 28, 2008) (cited at Mot. at 9), the court agreed to block discovery from a non-party where "the Court determine[d] the information sought *may* be available through the Defendants directly," but where Plaintiffs "never sought to obtain the information

from Defendants directly." *Id.* at \*1.  The court explained that "the information sought is more appropriately requested from defendants prior to seeking it from nonparties," *i.e.*, exactly what SPLC did here.  *Id.*

Under the very authority cited by CIS, therefore, sanctions are unwarranted.

## C.    SPLC Took Reasonable Steps To Avoid Imposing Undue Burden On CIS

Sanctions are also not appropriate here because SPLC acted in good faith in serving the subpoena and took reasonable steps to lessen any burden that the subpoena imposed.  *See, e.g., Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013) ("[T]he district court need not impose sanctions every time it finds a subpoena overbroad; such overbreadth may sometimes result from normal advocacy, which we have said should not give rise to sanctions.  A court may, however, impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law.").

As discussed above, SPLC's counsel was engaged in discussions with CIS when CIS moved to quash the subpoena, without even serving an objection letter. *See supra* at 6-7.  The motion to quash, filed nearly two weeks before the subpoena's return date, was a surprise and completely unnecessary.  *See* 9A Wright & Miller, Fed. Prac. & Proc. Civ. § 2463 (3d ed.) ("If a person subject to a subpoena to produce materials or permit inspection does object pursuant to Rule 45(d)(2)(B), then he or she need not comply with the subpoena."); *see also, e.g., Hadfield v. Newpage Corp.*,

14

2016 WL 427924, at *6 (W.D. Ky. Feb. 3, 2016) (adopting recommendation not to award subpoena recipient fees and costs where, as here, the recipient "could have served [the issuer] with a written objection instead of filing the motion to quash" and thus the recipient "suffered no undue burden or expense").[9]  Moreover, even though that motion to quash was barred because CIS filed it in the wrong court, SPLC withdrew the subpoena in the interest of limiting avoidable motion practice.

SPLC's actions are thus far from the type of conduct that courts have deemed sanctionable.  *See, e.g.*, *BNSF Ry. Co. v. Ctr. for Asbestos Related Disease, Inc.*, 2022 WL 1442854, at *5 (D. Mont. May 6, 2022) (cited at Mot. at 10) (sanctions appropriate where subpoena sought "over ten years of communications between a law firm and medical facility that treated hundreds if not thousands of its clients," which encompassed "confidential and voluminous information," and where subpoena sought records within "the astoundingly short response deadline of just 10 days" over the Christmas holiday).

## CONCLUSION

For the foregoing reasons, SPLC respectfully requests that the Court deny non-party CIS's motion for fees.

---

[9] *See also, e.g.*, *Duong v. Groundhog Enters., Inc.*, 2020 WL 2041939, at *12 (C.D. Cal. Feb. 28, 2020) (cited at Mot. at 10) ("[T]he Court notes that [the subpoenaed non-party] could have—indeed, should have—challenged the Subpoena through less time-intensive and costly avenues than the path of motion practice upon which it chose to embark.").

15

Dated: April 24, 2024                  Respectfully submitted,

                                       /s/ Robert D. Segall
                                       Robert D. Segall [ASB-7354-E68R]
                                       Shannon L. Holliday [ASB-5440-Y77S]
                                       COPELAND, FRANCO, SCREWS & GILL, P.A.
                                       Post Office Box 347
                                       Montgomery, AL  36101-0347
                                       Telephone:  334-834-1180
                                       Facsimile:  334-834-3172
                                       Email: segall@copelandfranco.com
                                       Email:  holliday@copelandfranco.com

                                       Chad R. Bowman (*pro hac vice*)
                                       Maxwell S. Mishkin (*pro hac vice*)
                                       Lauren Russell (*pro hac vice*)
                                       BALLARD SPAHR LLP
                                       1909 K Street NW, 12th Floor
                                       Washington, DC 20006
                                       Telephone:  202-661-2200
                                       Facsimile:  202-661-2299
                                       Email:  bowmanchad@ballardspahr.com
                                       Email:  mishkinm@ballardspahr.com
                                       Email:  russelll@ballardspahr.com

                                       **Attorneys for Defendant**
                                       **The Southern Poverty Law Center, Inc.**

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of April, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

James R. McKoon, Jr.
McKoon & Gamble
P.O. Box 3220
Phenix City, AL  36868
Email:  jrmckoon@aol.com

Mathew D. Staver
Horatio G. Mihet
Daniel J. Schmid
Liberty Counsel
P.O. Box 540774
Orlando, FL  32854
Email:  court@LC.org
Email:  hmihet@LC.org
Email:  dschmid@LC.orga

Todd V. McMurtry
Scott R. Thomas
Hemmer Wessels McMurtry PLLC
250 Grandview Drive, Suite 500
Fort Mitchell, KY  41017
Email:  tmcmurtry@hemmerlaw.com
Email:  sthomas@hemmerlaw.com

s/*Robert D. Segall*