UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
Montgomery Division

| | |
|---|---|
| Donald King, et al., | |
| Plaintiffs; | 2:22-cv-00207-CLM-JTA |
| v. | |
| Southern Poverty Law Center, Inc., | |
| Defendant. | |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

SUMMARY OF REPLY ........................................................................................ 1

ARGUMENT .......................................................................................................... 3

I.    SPLC failed to meet its burden of showing that the requested discovery does not come within the broad scope of relevance. ................................................ 3

II.   SPLC failed to meet its burden in invoking a qualified First Amendment journalist's privilege. ..................................................................................... 9

      A.    SPLC lacks standing to invoke the journalist's privilege because it is not a traditional or investigative news entity. ........................................ 9

      B.    Even if SPLC is a newsgathering agency, the journalist's privilege is inapplicable because Plaintiffs are not seeking the identity of a confidential informant. ....................................................................... 11

III.  Plaintiffs are entitled to discovery starting from 2011 because it is relevant as to SPLC's knowledge of Plaintiffs' history and activities. ........................ 14

CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Angiolillo v. Collier Cnty.*, 2009 WL 3762857 (M.D. Fla. June 18, 2009) ........11, 12

*Boe v. Marshall*, 2023 WL 3702326 (M.D. Ala. Mar. 27, 2023) ..............................4

*Branzburg v. Hayes*, 408 U.S. 665 (1972) ...............................................................11

*Brownstein Corp. v. Palmer*, No. 2:20-cv-378-RAH-JTA (M.D. Ala. Dec. 7, 2021)1

*Coker v. Duke & Co.*, 177 F.R.D. 682 (M.D. Ala. 1998) ..........................................3

*Dongguk Univ. v. Yale Univ.*, 734 F.3d 113 (2d Cir. 2013) ..................................4, 6

*Ellis v. Pilot Travel Centers LLC*, 2019 WL 13198255 (N.D. Fla. Sept. 26, 2019) ..8

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657 (1989) ......................2

*Herbert v. Lando*, 441 U.S. 153 (1979) ....................................................................5

*Hunt v. Liberty Lobby*, 720 F.2d 631 (11th Cir. 1983) ............................................14

*In re Madden*, 151 F.3d 125 (3d Cir. 1998) ............................................................10

*King v. S. Poverty L. Ctr., Inc.*, 2023 WL 3061825 (M.D. Ala. Apr. 24, 2023) .........5

*Miller v. Transamerican Press, Inc.*, 621 F.2d 721 (5th Cir.) ..............................3, 11

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) ..............................................4

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) .......................................4

*Sharon v. Time, Inc.*, 103 F.R.D. 86 (S.D.N.Y. 1984) ...............................................2

*Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp.*, 2022 WL 2528249 (N.D. Ala. June 23, 2022) ..............................................................14

*United States v. Vasquez-Ortiz*, 2008 WL 11449045 (N.D. Ga. Jan. 23, 2008) ......12

*Univ. of Alabama Bd. of Trustees v. New Life Art, Inc.*, 2006 WL 8440554 (N.D. Ala. Apr. 10, 2006) ..............................................................................................10

**Other Authorities**

*Methodology: How Hate Groups Are Identified and Categorized*, Southern Poverty Law Center (Mar. 18, 2020) ........................................................................8

**Rules**

Fed. R. Civ. P. 26 ....................................................................................................1, 4

**Treatises**

50 Am. Jur. 2d Libel and Slander § 453 ...............................................................9, 13

## SUMMARY OF REPLY[1]

Defendant Southern Poverty Law Center's (SPLC) opposition brief confirms why the Court should grant Plaintiffs' Motion to Compel. "A litigant can *only* sustain its discovery objections in a pending motion to compel by demonstrating that the requested discovery *has no possible bearing* on the claims and defenses in the case at bar." *Brownstein Corp. v. Palmer*, No. 2:20-cv-378-RAH-JTA, Dkt. 74 at 7 (M.D. Ala. Dec. 7, 2021) (Adams, J.) (emphasis added). SPLC has failed to meet that heavy burden. *First*, SPLC has not shown that its "hate group" research methodologies, decision-making protocols, and related communications fall completely outside the broad scope of relevance under Rule 26. Indeed, the requested discovery is not only relevant; it will likely substantiate Plaintiffs' allegation that SPLC—which concededly has tracked DIS and King for *over 15 years*—defamed them with knowledge of falsity or in reckless disregard for the truth.

*Second*, SPLC's contention that only individuals directly involved in drafting or editing the defamatory publications are relevant to the actual malice inquiry is

---

[1] SPLC correctly noted (Opp'n at 5, note 5) that Plaintiffs' Motion to Compel was not double-spaced per the Court's order (Dkt. 67). Plaintiffs acknowledge that the motion was mistakenly drafted with 1.5-line spacing. Contrary to SPLC's contention, Plaintiffs were not trying to "evade" page limits. Prior to seeking leave to file their Motion to Compel, Plaintiffs had already drafted the Motion, which is why they requested permission to file a 31-page brief. Plaintiffs mistakenly believed that their motion was drafted with double spacing, and thus they requested—and received—advance leave to file a double-spaced motion. (Dkt. 63 at 4.) Plaintiffs regret and apologize for their unintentional spacing error, and respectfully request that the Court accept their motion and brief as filed.

1

wrong. Plaintiffs are "*entitled* to prove [SPLC's] state of mind through circumstantial evidence," *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989) (emphasis added), and the defendant's prior acts are relevant to proving actual malice, *see Sharon v. Time, Inc.*, 103 F.R.D. 86, 93 (S.D.N.Y. 1984). Plaintiffs thus are entitled to discover SPLC's Hatewatch and Intelligence Project policies, practices, and related communications to investigate potential institutional biases and systematic flaws with its hate-group-designation process, all of which may demonstrate a reckless disregard for the truth.

*Third*, SPLC's assertion that it has already searched for and produced all relevant records related to its policies and guidelines for tracking hate groups is disingenuous. SPLC limited its search to 2017, disregarding Plaintiffs' request for records beginning in 2011. This incomplete response fails to account for years of potentially pertinent data and documentation, rendering SPLC's production inadequate and evasive. Moreover, SPLC's sole reliance on a publicly available webpage as the entirety of its methodology is utterly implausible for an organization of its stature. Indeed, SPLC's own webpage states it uses a variety of methodologies, all of which Plaintiffs are entitled to discover.

*Finally*, SPLC failed to meet its burden of invoking the First Amendment's journalist privilege. That is unsurprising given that SPLC is a legal advocacy organization, not a news entity, and thus it lacks standing to invoke the privilege.

2

Even if SPLC were a newsgathering organization, the Eleventh Circuit firmly holds that the journalist's privilege "is not absolute and in a libel case as is here presented, the privilege *must yield*." *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 725 (5th Cir. 1980) ("*Miller I*") (emphasis added). The Court should therefore grant Plaintiffs' Motion to Compel Discovery.

## ARGUMENT

I. **SPLC failed to meet its burden of showing that the requested discovery does not come within the broad scope of relevance.**

SPLC's brief in opposition (Dkt. 72 [hereinafter "Opp'n"]) suffers from a fundamental problem: "Courts are *required* to accord discovery *a broad and liberal scope* in order to provide parties with information essential to the proper litigation of all relevant facts, to eliminate surprise and to promote settlement." *Coker v. Duke & Co.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998) (emphasis added). As argued in their Motion to Compel (Dkt. 69 [hereinafter "Mot."]), Plaintiffs are entitled to discover SPLC's internal policies and guidelines for tracking, categorizing, and classifying "hate groups." Discovery of these policies, along with related communications, and their implementation is relevant to the thoroughness and integrity of SPLC's investigative process, whether SPLC's characterization of DIS as a hate group aligns with its own definitions and standards, and whether SPLC prioritizes sensationalism and profit rather than truthfulness and accuracy. (*See* Mot. at 1, 26–27.)

3

In support of its refusal to comply with Rule 26, SPLC offers a hodgepodge of counterarguments and excuses. None has merit. For starters, SPLC contends that "people who had nothing to do with drafting or editing the Challenged Publications" or "documents about other publications and non-parties" are not relevant to the actual malice inquiry. (Opp'n 17.) In support, SPLC cites (Opp'n at 16–17) cases for the proposition that where an organizational defendant's publication of a defamatory statement involves multiple actors, the plaintiff must identify the individual responsible for the statement's publication and prove that this individual acted with actual malice. *See Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123 (2d Cir. 2013) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964)).

SPLC's attempt to narrow the scope of discovery on those grounds is misguided. In the discovery context, relevance is "construed broadly to encompass *any matter* that bears on, or that reasonably could lead to other matters that could bear on, *any issue* that is or may be in the case," no matter if the material itself would be admissible. *Boe v. Marshall*, Case No. 2:22-cv-184-LCB, 2023 WL 3702326, at *1 (M.D. Ala. Mar. 27, 2023) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)) (emphasis added). And as Judge Watkins pointed out, "the Supreme Court recognized that, in a libel action, a plaintiff must be able to discover *all* state of mind evidence, both *direct and indirect*, 'unless liability is to be completely foreclosed.'" *King v. S. Poverty L. Ctr., Inc.*, Case No. 2:22-cv-207-WKW, 2023 WL

3061825, at *16 (M.D. Ala. Apr. 24, 2023) (quoting *Herbert v. Lando*, 441 U.S. 153, 160 (1979)) (emphasis added). In the context of this case, where SPLC has written policies, procedures, and communications for identifying and categorizing prospective "hate groups," proving actual malice requires a thorough examination of SPLC's internal protocols and decision-making processes, even if they involve individuals who did not directly draft or edit the so-called "Challenged Publications." Information from various personnel, including those who compiled research on DIS and King dating back to 2011, will help clarify SPLC's editorial standards and research methodologies, both of which are relevant—if not crucial—to establishing whether SPLC designates organizations such as DIS as "hate groups" in reckless disregard for the truth. *Cf. Herbert*, 441 U.S. at 160 ("Inevitably, unless liability is to be completely foreclosed, the thoughts and *editorial processes* of the alleged defamer would be open to examination." (emphasis added)).

Moreover, documents and information related to other publications and non-parties can provide important comparative insights. Such information will likely reveal patterns of behavior, editorial biases, or systemic flaws within SPLC's operations that are relevant to demonstrating actual malice. For instance, if SPLC routinely fails to verify sources or corroborate claims in other hate-group designations, if SPLC often omits exculpatory evidence in its publications, or if SPLC consistently fails to retract or correct errors in its reports, this pattern will

5

support Plaintiffs' claim that SPLC acted with reckless disregard for the truth in defaming DIS and King. And if SPLC does some or all or these things with respect to only certain groups which SPLC targets, and not others, such patterns would provide especially significant insight into SPLC's state of mind viz actual malice.

Contrary to SPLC's contention that Plaintiffs' requests are "remarkably broad" (Opp'n 9), case law supports broader discovery into SPLC's practices and methodologies. As observed in the case that SPLC cites (Opp'n at 16), "[a]ctual malice can be established using circumstantial evidence." *Dongguk Univ.*, 734 F.3d at 123. It is therefore essential to investigate the contributions of various personnel starting from 2011 and SPLC's overall approach to tracking and categorizing entities like DIS. And as Plaintiffs pointed out in their Motion (which SPLC did not refute and therefore conceded), courts have long recognized the relevance and admissibility of prior acts to support actual malice. (*See* Mot. at 27, note 18 [citing cases].)

SPLC's other excuses to justify its failure to comply with the discovery rules also lack merit. SPLC asserts that it "never once objected" to producing documents and information "solely based on the reporter's privilege." (Opp'n 13.) That is misleading. In both its responses and objections to Plaintiffs' interrogatories and document requests, *the very first* objection and privilege SPLC asserts is its "Reporter's Privilege," replete with citations to the United States and Alabama

6

Constitutions and Eleventh Circuit case law.[2] By leading off with its so-called Reporter's Privilege, SPLC has effectively indicated that it has responsive documents and information and that this privilege is a major barrier to Plaintiffs' obtaining the requested discovery.

SPLC similarly asserts that "Plaintiffs identify 23 discovery requests on which they seek an order compelling SPLC to respond to fully and completely, yet eight of these Requests did *not* draw an objection based on the reporter's privilege or the relevant time period." (Opp'n 13.) Again, that assertion is misleading. For each of the answers that SPLC did not expressly invoke the Reporter's Privilege, SPLC responded with "Subject to and without waiving the foregoing general and specific objections," then proceeded to respond.[3] As such, for each of those answers,[4] SPLC subjected its response to its "Reporter's Privilege" invoked in its General Objections.

---

[2] *See* SPLC's Resp. & Objs. to Pls.' First Set of Interrog., Gen. Objs. ¶ 2, Dkt. 69-4 at 3 ("SPLC objects to these Interrogatories to the extent that they seek information protected by privilege, including but not limited to (a) ***the journalist's privilege*** recognized under the First and Fourteenth Amendments, Article I, Section 4 of the Alabama Constitution, and common law, *see Price v. Time, Inc.*, 416 F.3d 1327 (11th Cir. 2005) (the "Reporter's Privilege")...." (emphasis added)); SPLC's Resp. to Pls.' First Set Produce Docs., Gen. Objs. ¶ 2, Dkt. 69-5 at 2 (SPLC objects to these Requests to the extent that they seek materials or information protected by privilege, including but not limited to (a) ***the journalist's privilege*** recognized under the First and Fourteenth Amendments, Article I, Section 4 of the Alabama Constitution, and common law, *see Price v. Time, Inc.*, 416 F.3d 1327 (11th Cir. 2005) (the "Reporter's Privilege")...." (emphasis added)).

[3] *See, e.g.*, SPLC's Resp. & Objs. to Pls.' First Set of Interrog. Nos. 12, 15, 16, 19, 21 & 23, Dkt. 69-4 at 19–28; SPLC's Resp. to Pls.' First Set Produce Docs. No. 22, Dkt. 69-5 at 25 ["Subject to and without waiving the foregoing general objections…."].)

[4] SPLC did not expressly invoke its Reporter's Privilege or qualify its response as "subject to and without waiving" in its answer to Interrogatory No. 13. Plaintiffs seek to compel SPLC's response to this interrogatory because SPLC is ostensibly withholding information out of objection to Plaintiffs' definition of the "Relevant Period." (*See* Dkt. 69-4 at 19.)

7

*See supra* note 2. Thus, SPLC's objections and responses are not only improper;[5] they broadly invoke the Reporter's Privilege as asserted in its General Objections.

Finally, SPLC asserts that it "already searched for and produced any records" related to SPLC's policies and guidelines for tracking, categorizing and classifying "hate groups." (Opp'n 13 [emphasis omitted].) That is highly doubtful. To begin with, SPLC limited its search to 2017, not 2011 as Plaintiffs requested. Thus, SPLC's response is incomplete and evasive. Beyond that, the only document that SPLC claims is "responsive" is a webpage that is "publicly available" on its website. (Opp'n 13–14.)[6] Plaintiffs are at a loss as to how SPLC, nationally known for its monitoring and categorizing of hate groups, relies *solely* on a publicly available webpage as its exclusive manual for tracking and classifying hate groups. Indeed, the very webpage produced by SPLC contradicts this notion, stating: "SPLC uses *a variety of methodologies* to determine the activities of groups and individuals. These include reviewing hate group publications and reports by citizens, law enforcement, field sources and the news media, and *conducting our own investigations*." *Supra* note 6 (emphasis added). Clearly, SPLC employs a multifaceted approach involving

---

[5] SPLC's confusion about its own discovery objections illustrates why courts in the Eleventh Circuit deem responses qualified by "subject to" and "without waiving" as "improper." *See Ellis v. Pilot Travel Centers LLC*, 4:19-cv-219-MW/CAS, 2019 WL 13198255, at *2 (N.D. Fla. Sept. 26, 2019).

[6] *See Methodology: How Hate Groups Are Identified and Categorized*, Southern Poverty Law Center (Mar. 18, 2020), https://www.splcenter.org/news/2020/03/18/methodology-how-hate-groups-are-identified-and-categorized.

internal documents, reports, guidelines, and investigative procedures—none of which was produced to Plaintiffs.

## II. SPLC failed to meet its burden in invoking a qualified First Amendment journalist's privilege.

### A. SPLC lacks standing to invoke the journalist's privilege because it is not a traditional or investigative news entity.

SPLC spends over seven pages in its opposition brief arguing (at 23–30) that it can shield discoverable documents and information behind its purported "Reporter's Privilege." It is all wasted. That is because SPLC's argument suffers a glaring problem of law: SPLC cannot invoke the First Amendment journalist's privilege because it is not a newsgathering entity. As Plaintiffs discussed at length in their Motion (at 18–20), SPLC is a legal advocacy organization, not a news agency that gathers and publishes news to the public, and thus it cannot invoke the journalist's privilege.

SPLC offers little of substance to refute this fact. SPLC instead simply asserts that it engages in "sensitive newsgathering working monitoring hate group organizations" and that its Hatewatch program and Intelligence Project "investigate and publish news reports about extremists and extremist groups that they are monitoring." (Opp'n 26.) Such self-serving characterizations are insufficient to confer standing as a news-reporting agency. *Cf.* 50 Am. Jur. 2d Libel and Slander § 453 ("Defendants claiming a conditional or qualified privilege have the burden of pleading and *proving* it." (emphasis added)).

9

SPLC has no answer to Plaintiffs' argument (Mot. at 18–20) that it lacks standing to invoke the journalist's privilege under *In re Madden*, 151 F.3d 125, 131 (3d Cir. 1998). In fact, SPLC completely ignores that case. That is unsurprising given that SPLC is not an agency "engaged in investigative reporting." 151 F.3d at 131. Nor does SPLC "gather[] news." *Id*. And SPLC failed to prove that it "possess[ed] the intent at the inception of the newsgathering process to disseminate this news to the public." *Id.* In short, SPLC cannot invoke the journalist's privilege because it is not an investigative newsgathering agency with a mission that is "traditionally inherent to the press." *Id.* at 129–30.

Other than a passing reference (Opp'n at 28), SPLC likewise fails to distinguish *University of Alabama Board of Trustees v. New Life Art, Inc.*, Case No. 7:05-cv-0585-RDP, 2006 WL 8440554, at *1 (N.D. Ala. Apr. 10, 2006) (Proctor, J.). Nor could it. SPLC is just like the non-media defendant in that case, who went to "great lengths" to establish his "role as a reporter" but failed to show that he "ever functioned as a traditional press person, much else an investigative reporter." *Id*., at *2. SPLC's attempt to cloak itself in the journalist's privilege is similarly unfounded, as SPLC does not engage in traditional or investigative journalism. The journalist's privilege is designed to protect genuine journalistic activity, not entities like SPLC that self-servingly characterize their promotional and fundraising activities as "investigative."

10

In sum, SPLC's reliance on the First Amendment journalist's privilege is baseless. SPLC is not a newsgathering entity, and thus it cannot invoke the privilege. As established in Plaintiffs' Motion and unrefuted by SPLC, the organization's primary purpose is legal advocacy and monitoring hate groups, not disseminating news to the public. SPLC's self-serving attempts to compare itself to traditional or investigative journalists are unconvincing and unsupported by case law. Consequently, SPLC lacks standing to invoke the journalist's privilege, and thus it cannot shield discoverable documents and information behind that privilege.

**B.    Even if SPLC is a newsgathering agency, the journalist's privilege is inapplicable because Plaintiffs are not seeking the identity of a confidential informant.**

As Plaintiffs argued in their Motion (at 21–24), even if SPLC could be characterized as a newsgathering organization, the First Amendment journalist privilege is inapplicable here because, under Eleventh Circuit precedent, the privilege only "protects the refusal to disclose the identity of confidential informants." *Miller I*, *supra*, 621 F.2d at 725 (citing *Branzburg v. Hayes*, 408 U.S. 665 (1972)). Ignoring that binding Circuit precedent, SPLC contends that district courts "have understood the privilege to sweep more broadly and to encompass 'professional news gathering efforts.'" (Opp'n 24–25 [citing *Angiolillo v. Collier Cnty.*, Case No. 2:08-cv-606-FTM-99SPC, 2009 WL 3762857, at *1 (M.D. Fla. June 18, 2009)].) Notwithstanding that SPLC does not engage in "professional news gathering efforts,"

11

*Angiolillo*, 2009 WL 3762857, at *1, SPLC failed to cite a single case setting forth the rule that SPLC would like this Court to apply. Indeed, a case on which SPLC relies (Opp'n at 25) was clear: "[T]he Eleventh Circuit has never explicitly determined that a qualified First Amendment privilege exists for a reporter's non-confidential information because its decisions appear to relate to confidential source information." *United States v. Vasquez-Ortiz*, No. 1:07-CR-348-CC/AJB, 2008 WL 11449045, at *4 (N.D. Ga. Jan. 23, 2008). SPLC thus is asking this Court to contravene *Miller I* and fashion a new rule allowing non-media defamation defendants to invoke the First Amendment journalist's privilege to shield discovery of non-confidential material. SPLC's request goes too far.

To be sure, the magistrate judge in *Vazquez-Ortiz*—a criminal case—assumed for purposes of a motion to quash the subpoena of a news network that the privilege also applied to non-confidential sources, but it nevertheless observed that "the privilege is less applicable when the reporter is trying to protect non-confidential information from disclosure." 2008 WL 11449045, at *5 n.8. Moreover, the magistrate judge went on to find that the privilege did not shield the news network from complying with the subpoena. *See id.*, at *6. Here, Plaintiffs are not seeking the identities of SPLC's confidential sources but information related to SPLC's policies and procedures in tracking and categorizing hate groups. As Plaintiffs explained in their Motion (at 22–23), such information is critical to evaluate the

12

accuracy, consistency, and potential biases in SPLC's categorization of hate groups. The information will also make clear whether SPLC's classification of certain groups is based on objective standards or is influenced by reckless, subjective judgments. The requested discovery thus aims to uncover whether SPLC's classifications are supported by reliable data and sound practices, or if they reflected a broader agenda that would cause SPLC to recklessly disregard the truth about a prospective hate group, including DIS.

SPLC hedges its bet by contending that Plaintiffs' discovery requests would "sweep up confidential newsgathering information" and "implicate information about confidential sources." (Opp'n 27.) SPLC provided no evidence to support that claim. Simply asserting that the requests could potentially encompass confidential information is insufficient. *See* 50 Am. Jur. 2d Libel and Slander, *supra*, § 453. Without specific, credible evidence demonstrating how the discovery requests directly threaten the confidentiality of sources, SPLC's argument is wholly unsubstantiated. In any event, Plaintiffs are not seeking the identities of SPLC's confidential sources. Instead, the focus is on SPLC's internal policies and procedures related to tracking and categorizing hate groups. This targeted request is designed to obtain information about SPLC's standards and methodologies, which are distinct from any confidential communications with sources. To the extent that the requested documents and information actually implicate confidential material, a motion for a

narrowly tailored protective order is the proper avenue for relief rather than withholding entire categories and whole swaths of relevant and responsive information.

### III. Plaintiffs are entitled to discovery starting from 2011 because it is relevant as to SPLC's knowledge of Plaintiffs' history and activities.

In opposing Plaintiffs' requests for documents and information starting in 2011, SPLC offers little of merit. SPLC is correct in stating that the relevant time period is determined "on a case-by-case basis." (Opp'n 21 (citing *Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp.*, 2022 WL 2528249, at *3 (N.D. Ala. June 23, 2022).) That is why 2011—not 2017—is the proper starting date for discovery. Indeed, SPLC concedes that it "has monitored Plaintiffs and written about their extremist language and work for *more than 15 years*." (Opp'n 7 [emphasis added].) That being so, and as Plaintiffs explained in their Motion (at 28–31), documents and information from when SPLC first began tracking DIS may show, for example, that SPLC actually knew that Plaintiffs were not "anti-immigrant," and thus it acted with actual malice when it defamed Plaintiffs.

SPLC nevertheless contends that discovery should be limited only to the time of the "Challenged Publications." (Opp'n 22.) That is wrong. Although the defendant's state of mind at the time of publication is critical in defamation cases, *see Hunt v. Liberty Lobby*, 720 F.2d 631, 647 (11th Cir. 1983), understanding SPLC's state of mind *in this case* requires examining the historical context leading up to the

14

publication. SPLC's long-term monitoring of Plaintiffs—concededly spanning over 15 years (Opp'n at 7)—is directly relevant to assessing whether SPLC had serious doubts about the truth of its statements or acted with reckless disregard for the truth when it designated DIS as a hate group in 2018. In short, if SPLC has been tracking DIS and King for over a decade, compiling a database of information, then this historical information can reveal whether SPLC's change in stance in 2018 was based on new, credible evidence or if it was a sudden, unsupported shift suggesting actual malice.

In sum, if SPLC "has monitored Plaintiffs and written about their extremist language and work for more than 15 years," (Opp'n 7), then SPLC has accumulated substantial documentation and information about DIS and King, which extends well beyond the four-year period they propose for discovery (2017-2021). SPLC's concession thus strongly suggests that discoverable information exists from 2011 and that limiting discovery to 2017 would exclude material evidence to support Plaintiffs' defamation claim.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion to Compel.

Dated: July 12, 2024

/s/ Horatio G. Mihet
Mathew D. Staver, Esq.
Horatio G. Mihet, Esq.
Daniel J. Schmid, Esq.
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776
court@LC.org
hmihet@LC.org
dschmid@LC.org

Respectfully submitted,

/s/ James R. McKoon, Jr.
James R. McKoon, Jr., Esq.
 (ASB-3005-078J)
MCKOON & GAMBLE
P.O. Box 3220
Phoenix City, AL 36868
(334) 297-2300
jrmckoon@aol.com


/s/ Todd v. McMurty
Todd V. McMurtry, Esq.
 (PHV)
Scott R. Thomas (PHV)
J. Will Huber, Esq. (PHV)
HEMMER WESSELS
 MCMURTRY PLLC
250 Grandview Dr., Ste. 500
Fort Mitchell, KY 41017
(859) 344-1188
tmcmurtry@hemmerlaw.com
sthomas@hemmerlaw.com
whuber@hemmerlaw.com

*Attorneys for Plaintiffs*

16

## CERTIFICATE OF SERVICE

I certify that on July 12, 2024, I electronically filed the foregoing documents and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Respectfully submitted,

/s/ Horatio G. Mihet
Horatio G. Mihet

*Attorney for Plaintiffs*