IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
MONTGOMERY DIVISION

| | | |
|---|---|---|
| DONALD A. KING, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 2:22-cv-00207-CLM-JTA |
| | ) | |
| THE SOUTHERN POVERTY | ) | |
| LAW CENTER, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT SOUTHERN POVERTY LAW CENTER, INC.'S
MOTION FOR SUMMARY JUDGMENT**

Chad R. Bowman (*pro hac vice*)
Maxwell S. Mishkin (*pro hac vice*)
Lauren P. Russell (*pro hac vice*)
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, DC 20006
Telephone: 202-661-2200
Facsimile: 202-661-2299
Email: bowmanchad@ballardspahr.com
Email: mishkinm@ballardspahr.com
Email: russelll@ballardspahr.com

Robert D. Segall
[ASB-7354-E68R]
Shannon L. Holliday
[ASB-5440-Y77S]
COPELAND FRANCO SCREWS &
GILL, P.A.
Post Office Box 347
Montgomery, AL 36101-0347
Telephone: 334-834-1180
Facsimile: 334-834-3172
Email: segall@copelandfranco.com
Email: holliday@copelandfranco.com

*Attorneys for Defendant Southern Poverty Law Center, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. ii

PRELIMINARY STATEMENT ..................................................................... 1

ARGUMENT ................................................................................................. 2

I.  PLAINTIFFS URGE APPLICATION OF SUBSTANTIVE LAW
    THAT WOULD EXTINGUISH D.A. KING'S CLAIMS ......................... 2

II.  THE SINGLE PUBLICATION RULE BARS CLAIMS BASED
     ON THE INITIAL DESIGNATION AND THE EXTREMIST
     PROFILE ............................................................................................ 4

III. PLAINTIFFS MISCONSTRUE, AND FAIL TO REBUT,
     SPLC'S ARGUMENT THAT THE HATE GROUP
     DESIGNATIONS ARE PROTECTED EXPRESSIONS OF
     OPINION ............................................................................................ 8

IV. PLAINTIFFS WHOLLY FAIL TO PROFFER THE REQUISITE
    "CLEAR AND CONVINCING" EVIDENCE OF ACTUAL
    MALICE FAULT FOR CHALLENGED PUBLICATIONS .................. 11

CONCLUSION ............................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**                                           **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................ 12

*Blanchard v. Walker*,
    2022 WL 3230426 (M.D. Ala. Aug. 10, 2022) ............................. 3

*Bose Corp. v. Consumers Union*,
    466 U.S. 485 (1984) ............................................................ 15

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................ 12

*Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co.*,
    358 F.3d 1306 (11th Cir. 2004) .............................................. 2

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
    6 F.4th 1247 (11th Cir. 2021)........................................... 12, 13

*Daugherty v. Mut. Life Ins. Co. of N.Y.*,
    649 So. 2d 857 (Ala. 1994)..................................................... 3

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
    491 U.S. 657 (1989) ......................................................... 13, 14

*Hollander v. Nichols*,
    19 So. 3d 184 (Ala. 2009)..................................................... 4, 5

*Hunt v. Liberty Lobby*,
    720 F.2d 631 (11th Cir. 1983)............................................ 13, 15

*Johnson v. BPS Direct, LLC*,
    2020 WL 6395571 (N.D. Ala. Nov. 2, 2020)................................. 3

*Jones v. Bank of Am., N.A.*,
    564 F. App'x 432 (11th Cir. 2014)........................................ 8, 9

*King v. SPLC*,
    2023 WL 3061825 (M.D. Ala. Apr. 24, 2023)................................ 8

*Lokhova v. Halper*,
    995 F.3d 134 (4th Cir. 2021)........................................................................7

*Middleton v. Caterpillar Indus., Inc.*
    979 So. 2d 53 (Ala. 2007)...........................................................................4

*Moore v. Cecil*,
    2021 WL 1208870 (N.D. Ala. March 31, 2021).........................................13

*Nunes v. CNN*,
    31 F.4th 135 (2d Cir. 2022) .........................................................................2

*Patterson v. United Cos. Lending Corp.*,
    4 F. Supp. 2d 1349 (M.D. Ala. 1998)......................................................4, 6

*Pippen v. NBCUniversal Media, LLC*,
    734 F.3d 610 (7th Cir. 2013).......................................................................5

*Salyer v. SPLC*,
    701 F. Supp. 2d 912 (W.D. Ky. 2009).........................................................5

*Silvester v. ABC*,
    839 F.2d 1491 (11th Cir. 1988)..................................................................12

*Themed Rests., Inc. v. Zagat Surv., LLC*,
    4 Misc. 3d 974 (N.Y. Sup. Ct. 2004).........................................................10

*Turner v. Wells*,
    879 F.3d 1254 (11th Cir. 2018)..................................................................11

*Wells v. Liddy*,
    186 F.3d 505 (4th Cir. 1999) ...................................................................2, 3

*Yeager v. Bowlin*,
    693 F.3d 1076 (9th Cir. 2012).....................................................................5

## Statutes & Other Authorities

Ala. Code. § 6-5-462.......................................................................................3

Fed. R. Civ. P. 25............................................................................................3

## PRELIMINARY STATEMENT

Plaintiffs' Opposition ("Opp."), ECF 123, to Defendant Southern Poverty Law Center's Motion for Summary Judgment, ECF 113, underscores why judgment as a matter of law is appropriate in this case.  Plaintiffs concede the entirety of SPLC's Statement of Undisputed Material Facts (ECF 116 at 11-23[1]), disputing only the legal implications of technical website changes to the Extremist Profile and its use of hyperlinks.  Opp. 10-11.  From this agreement on the material facts, the Opposition proffers erroneous conclusions of law.  It urges application of the substantive tort law of the forum (Alabama) despite controlling authority directing this Court to look to the place of alleged injury (Georgia).  The Opposition ignores— and thus concedes—most of SPLC's arguments that the challenged statements are constitutionally protected expressions of opinion, and misconstrues the speech doctrine of conclusions based on disclosed facts.

Perhaps most consequential for Plaintiffs, however, is that despite their burden at summary judgment to proffer *clear and convincing evidence* that would permit a jury to find SPLC published specific statements with actual malice fault, the Opposition musters nothing more than King's own self-serving testimony, unsupported theories, and a single comment made six years before the first challenged publication that does not even evidence knowledge of falsity.

---

[1] Page references throughout this brief are to ECF pagination.

For each and all these reasons, the Court should grant SPLC's motion for summary judgment.

## **ARGUMENT**

## I. **PLAINTIFFS URGE APPLICATION OF SUBSTANTIVE LAW THAT WOULD EXTINGUISH D.A. KING'S CLAIMS**

Though SPLC demonstrated that the substantive law of Georgia, the Plaintiffs' home state, governs the claims here, *see* ECF 116 at 25-26, the Opposition urges the Court to apply Alabama law, Opp. at 12-15. This is surprising for two reasons.

First, the Opposition ignores controlling authority that, under the applicable *lex loci delicti* conflicts analysis for tort claims, courts must "determine the substantive rights of an injured party according to the law of the state where the injury occurred." *Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004). The place of injury in a multistate defamation case is typically the domicile or primary place of business of the plaintiff. *E.g., Nunes v. CNN*, 31 F.4th 135, 143 (2d Cir. 2022); *Wells v. Liddy*, 186 F.3d 505, 528 (4th Cir. 1999). Although Alabama has not specifically considered Internet defamation choice of law, Plaintiffs offer no reason to depart from this rule. Indeed, the only federal appellate case cited in the Opposition relied on this rationale in assuming that Maryland appellate courts would apply the law of plaintiffs' domicile,

Louisiana, for claims based on statements that were widely broadcast on a syndicated radio show. *Wells*, 186 F.3d at 528.[2]

Second, Plaintiffs advance a position that would require the Court to deny their pending Motion to Substitute Estate for Plaintiff, ECF 119, and dismiss all claims by D.A. King. Substitution of an estate is permissible only "[i]f a party dies *and the claim is not extinguished.*" Fed. R. Civ. P. 25(a)(1) (emphasis added). Under Alabama law, death extinguishes claims for reputational harm, including defamation. Ala. Code § 6-5-462 ("[A]ll personal claims upon which an action has been filed, *except for injuries to the reputation*, survive in favor of and against personal representatives." (emphasis added)); *Daugherty v. Mut. Life Ins. Co. of N.Y.*, 649 So. 2d 857, 857 (Ala. 1994) ("[I]f a plaintiff dies, a pending action for 'injuries to the reputation' is extinguished." (quoting Ala. Code. § 6-5-462)); *see generally* ECF 121 ¶¶ 1-5. If the Court determines that Alabama's substantive law applies here, therefore, the Court should dismiss King's claims as extinguished by his death. Ala. Code. § 6-5-462; *see also* ECF 121 ¶ 1 (citing additional authority).[3]

---

[2] The court applied Virginia law to claims arising out of a speech that defendant delivered in Virginia only because that speech "was never broadcast by any means and was heard only by the audience [in Virginia]," and thus could not have harmed plaintiff in her domicile. *Id.* at 522.

[3] Although central to the survivability of D.A. King's claim and relevant to other substantive issues that could arise at a trial or on appeal, the substantive choice-of-law question is not dispositive of arguments raised on summary judgment. Alabama provides the applicable statutes of limitations, as a matter of procedure. *Blanchard v. Walker*, 2022 WL 3230426, at *1 (M.D. Ala. Aug. 10, 2022); *see generally Johnson v. BPS Direct, LLC*, 2020 WL 6395571, at *1 (N.D. Ala. Nov. 2, 2020) (Maze, J.) ("In tort cases like this, Alabama looks to the place of the injury (*lex loci delicti*) to determine substantive rights, and the place of the forum (*lex fori*) to determine

## II.  THE SINGLE PUBLICATION RULE BARS CLAIMS BASED ON THE INITIAL DESIGNATION AND THE EXTREMIST PROFILE

The parties agree that Alabama choice-of-law rules look to its own state for statutes of limitations and that Alabama applies the single publication rule "where subsequent acts of defamation are verbatim republications of previously made libelous or slanderous statements." Opp. at 15-16 (quoting *Hollander v. Nichols*, 19 So. 3d 184, 195 n.4 (Ala. 2009). The rule is not limited to "media defendants," but rather applies to "*any* single, integrated publication, such as one edition of a newspaper, book, or magazine." *Patterson v. United Cos. Lending Corp.*, 4 F. Supp. 2d 1349, 1356 (M.D. Ala. 1998) (emphasis added), *aff'd*, 178 F.3d 1303 (11th Cir. 1999) (unpublished).

Nor do Plaintiffs dispute that *every* court that has considered the issue has concluded that the single publication rule applies to online publications. *See generally* ECF 116 at 26-28 (citing authority). Rather, Plaintiffs acknowledge that "the pronounced trend is to apply the rule to internet postings," and they fail to cite a single decision veering from this "trend." Opp. at 19-21. As courts have observed in adopting the single publication rule for websites, declining to do so would

procedural rights." (citing *Middleton v. Caterpillar Indus., Inc*. 979 So. 2d 53, 57 (Ala. 2007))). The other bases for summary judgment raised by SPLC—*i.e.*, that the challenged statements are not "of and concerning" King, that they represent non-actionable opinions, and that Plaintiffs failed to present clear and convincing evidence of actual malice—are constitutional issues controlled by federal precedent. *See generally* ECF 116 at 27-40.

"eviscerate the statute of limitations and expose online publishers to potentially limitless liability."  *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 615 (7th Cir. 2013); *see also* ECF 116 at 26-28 (citing additional authority).

Under the single publication rule, "[t]he mere act of editing a website to add unrelated content does not constitute republication of unrelated defamatory material that is posted on the same website.  Similarly, mere technical changes to a website, such as changing the way an item of information is accessed, is not republication." *Salyer v. SPLC*, 701 F. Supp. 2d 912, 917 (W.D. Ky. 2009) (rejecting argument that changes to SPLC's website unrelated to the defamatory statements amounted to republications); *see also Yeager v. Bowlin*, 693 F.3d 1076, 1082 (9th Cir. 2012) ("a statement on a website is not republished unless the statement itself is substantively altered or added to, or the website is directed to a new audience").  Plaintiffs thus err in arguing that the single publication rule does not bar their claims because SPLC later updated the Extremist Profile solely to redact a racial slur, or because SPLC later made unidentified updates to *other* pages on the SPLC website to which the Extremist Profile hyperlinks or included hyperlinks to the Extremist Profile in *other* SPLC publications.  *See* Opp. at 18-19.

Any technical changes to the Extremist Profile after its initial publication in January 2019 amounted to "verbatim republications" of the challenged statements. *See Hollander*, 19 So. 3d at 195 n.4; *see also* Opp. at 15-16 (citing same).  Plaintiffs'

lawsuit challenges the anti-immigrant hate group designations for the years 2018 through 2021, and one statement in the Extremist Profile: "The Dustin Inman Society, led by D.A. King, poses as an organization concerned about immigration issues, yet focuses on vilifying all immigrants." *See* SUMF ¶ 40. None of these challenged statements were revised in the technical website updates.

Plaintiffs argue, without citing any authority, that "any change to a publication, even if 'minor,' provides compelling evidence that the publisher has re-considered the publication, added updates or corrections, and chose to publish it again, likely with the expectation of reaching broader readership." Opp. at 16. This notion amounts to an "ongoing publication" theory – *i.e.*, that failure to remove already-published statements creates an ongoing cause of action – which "is clearly contradictory to the 'single publication' rule." *Patterson*, 4 F. Supp. 2d at 1356-57. SPLC has presented uncontested evidence that the subsequent revision to redact a single slur from the Extremist Profile was "pursuant to a change in SPLC policy regarding spelling out racial slurs in its online articles." ECF 114-12 ¶ 4. Plaintiffs, by contrast, have not presented *any* evidence to support their speculation that SPLC "re-considered the publication" when removing a slur consistent with a policy change that applied to *all* SPLC online publications. Opp. at 16-19. Case law is therefore clear that this minor change to the Extremist Profile – to a portion that Plaintiffs do not even place at issue – does not amount to a republication.

Plaintiffs likewise cite no authority for their hyperlink-based theories of republication, which claim that the statute of limitations on the Extremist Profile restarted every time (1) SPLC published a *new* article that *links* to the Extremist Profile and (2) SPLC changed any *other* article to which the Extremist Profile linked. Opp. at 17-19. To be sure, other plaintiffs have argued the first theory, but those arguments have been uniformly rejected, as the Fourth Circuit explained in *Lokhova v. Halper*, 995 F.3d 134, 142-44 (4th Cir. 2021) (cited at Opp. 19).

The second theory, however, is a trial balloon, and undersigned counsel are not aware of *any* support for the idea in case law or scholarship. But it is more than unsupported: it is also unworkable because the theory has no limiting principle. If Page A links to Page B, Plaintiffs say, a change to Page B is really a change to Page A, which restarts the statute of limitations on Page A.



But Page B might link to Page C, so by the same theory a change to Page C is a change to Page A as well, and so forth for Pages D through Z, and so on.



Such cascading changes would make it impossible to determine when the statute of limitations has run, and as a result, plaintiffs could conceivably bring a defamation claim in perpetuity over any online publication with hyperlinks.

The Court should not invite such chaos. Instead, the Court should apply settled single-publication principles and conclude that claims arising from any statements except the 2021 re-designation should be dismissed as time-barred.

## III.  PLAINTIFFS MISCONSTRUE, AND FAIL TO REBUT, SPLC'S ARGUMENT THAT THE HATE GROUP DESIGNATIONS ARE PROTECTED EXPRESSIONS OF OPINION

Plaintiffs fail in multiple ways to rebut SPLC's demonstration that the hate group designations are protected expressions of opinion. For one, SPLC has explained that, based on the record developed in discovery, the Vilification Statement is an example of rhetorical hyperbole, *see* ECF 116 at 34-36, and Plaintiffs never respond to that argument. Instead, Plaintiffs quote Judge Watkins' opinion from the motion to dismiss stage for the general proposition that Plaintiffs' "allegations" about SPLC "make it plausible" that its challenged statements are non-hyperbole. Opp. at 26 (quoting *King v. SPLC*, 2023 WL 3061825, at *14 (M.D. Ala. Apr. 24, 2023) (ECF 22 at 38)). By failing to respond to SPLC's actual argument on this point, however, Plaintiffs concede it. *See, e.g.*, *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (affirming order granting summary judgment

8

for defendant where plaintiffs "failed to respond to [defendant's] arguments" in summary judgment motion).

Plaintiffs likewise fail to respond to SPLC's argument that the term "anti-immigrant" is a political label—just like King's preferred use of "anti-enforcement" to describe SPLC—and that allowing defamation claims over such rhetoric would disregard the First Amendment. *See* ECF 116 at 36-38; *cf.* Opp. at 9, 41 (acknowledging the "politically charged" nature of the immigration debate). The Opposition further fails to address King's dispositive concessions that (1) there is no precise meaning of "anti-immigrant" because, in his own words, "*the meaning of anti-immigrant isn't the same for everyone*," ECF 114-1 at 39 (148:16-22) (emphasis added), and (2) groups such as SPLC that characterize "illegal border crossers" as immigrants can indeed "call groups like [DIS] anti-immigrant," *id.* at 42 (159:6-21). On each of these rationales, a defense judgment is proper.

Plaintiffs do respond to SPLC's argument that its hate group designations are non-actionable as opinions based on disclosed facts, ECF 116 at 33-34, but misapprehend that doctrine. The Opposition insists that SPLC's publications cannot express protected opinions because "SPLC claims that it makes factual statements that result from the investigations of its researchers," Opp. at 26, because its publications are "fact-checked multiple times" and "edited at several stages," *id.* at 27, and because SPLC's publications about DIS "are literally replete with

9

information" that is "objectively verifiable," *id.* at 27-28. This misses the point. The whole rationale of the opinion-based-on-disclosed-facts doctrine is that it applies only where, as here, the defendant presents readers with factual information and then offers a conclusion *premised on* that disclosed information.

Courts have applied this doctrine, for example, in the context of critics' reviews—*i.e.*, subjective evaluations based on underlying facts. *See, e.g.*, *Themed Rests., Inc. v. Zagat Surv., LLC*, 4 Misc. 3d 974, 977 (N.Y. Sup. Ct. 2004) (collecting cases), *aff'd*, 801 N.Y.S.2d 38 (App. Div. 2005). A typical restaurant review, for example, often provides ample objectively verifiable information about the restaurant, whether portion size, ingredients, salt usage, or noise volume. The publisher may fact-check those details.[4] And to be sure, "where a review contains false statements of objective fact . . . regarding items such as the physical conditions of a restaurant or the ingredients of a dish, the false statement can be actionable." 4 Misc. 3d at 977. But when those disclosed objective facts about the restaurant are true, the critic's overall *assessment* of the restaurant *based on those facts* represents a non-actionable opinion. *Id.*

Here, Plaintiffs do not identify as factually false *any* of the "numerous statements, known associations, policy positions, strategies, and the like" that SPLC

---

[4] *See, e.g.*, Michael Schulman, *Daniel Radcliffe and the Art of the Fact-Check*, The New Yorker (Oct. 8, 2018), https://www.newyorker.com/magazine/2018/10/15/daniel-radcliffe-and-the-art-of-the-fact-check (describing how The New Yorker fact-checks its restaurant reviews).

published about Plaintiffs.  Opp. at 27-28.  As a result, these details are fully disclosed facts, and SPLC's conclusion *based on those facts* that DIS is an "anti-immigrant hate group" is a protected expression of opinion under established case law in the Eleventh Circuit.  *See, e.g.*, *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (when "the defendant makes a comment or opinion based on facts which are set forth in the publication," then that comment or opinion is "protected from defamation actions by the First Amendment"); *see also* ECF 116 at 33-34.  The Court should therefore grant summary judgment for SPLC on the grounds that the challenged statements are protected opinions.

## IV.    PLAINTIFFS WHOLLY FAIL TO PROFFER THE REQUISITE "CLEAR AND CONVINCING" EVIDENCE OF ACTUAL MALICE FAULT FOR CHALLENGED PUBLICATIONS

Even if claims based on the Vilification Statement and initial designation are not time-barred, and even if the Court deems them and the re-designations of DIS as an "anti-immigrant" organization to be potentially actionable statements of fact rather than protected opinions, Plaintiffs still bear the burden to establish "actual malice" fault sufficient to raise a jury issue in order to survive summary judgment. In this regard, the Opposition misstates the applicable standard on summary judgment, errs on the controlling law, and proffers no relevant—much less "clear and convincing"—evidence of actual malice fault.  *See generally* Opp. at 39-42.

On the applicable standard, the Opposition cites a wrongful death decision to assert that "all that is required is that the plaintiff possess 'sufficient' evidence to enable a reasonable jury to determine each element of the case." Opp. at 40 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). But the U.S. Supreme Court has expressly held that, in cases involving evaluation of constitutional actual malice fault, "clear and convincing" evidence is required at summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986) ("[T]he appropriate summary judgment question will be whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not."). As the Eleventh Circuit has explained, public figure defamation plaintiffs, like Plaintiffs here, "must present clear and convincing evidence that the defendants acted with actual malice to defeat defendants' summary judgment motion." *Silvester v. ABC*, 839 F.2d 1491, 1498 (11th Cir. 1988). The Opposition simply ignores this controlling authority.

On the law, Plaintiffs err in urging a supposed "malign motivation" as a basis for finding actual malice. Opp. at 40. Even putting aside that this allegation lacks any citation to record evidence establishing that the people responsible for specific challenged statements harbored such a "malign motivation," it is legally irrelevant to constitutional actual malice, which relates not to ill will but rather to subjective awareness of falsity. *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6

F.4th 1247, 1253 n.8 (11th Cir. 2021) ("[T]he actual malice standard is not about whether the speaker had evil intent or a motive arising from ill will; it is about whether the speaker subjectively doubts the truth of the publication."); *Moore v. Cecil*, 2021 WL 1208870, at *2 (N.D. Ala. March 31, 2021) (Maze, J.) (admitted public figure "must plead facts that would prove falsity or reckless disregard, not just ill will or animosity").

The Opposition truly founders, though, on the evidence. As supposed evidence of fault, Plaintiffs principally cite (1) King's own testimony in 2025 that he is not "anti-immigrant," Opp. at 40-41 (citing ECF 114-3), and (2) an interview in 2011—six years prior to the initial designation—in which then-Director of the Intelligence Project Heidi Beirich said that she did not view DIS as a hate group at that time, *id.* at 41 (citing ECF 114-7). Simply stated, King's insistence that he and his organization are *not* "anti-immigrant" does not constitute admissible evidence of SPLC's supposed actual malice. Self-serving deposition testimony by a plaintiff in 2025 has nothing to do with the state of mind of the individual relevant SPLC employees in 2018, 2019, 2020, or 2021. *E.g.*, *Hunt v. Liberty Lobby*, 720 F.2d 631, 647 (11th Cir. 1983) ("The test of actual malice . . . focuses on the defendant's state of mind at the time of publication."). Moreover, as a matter of law, a mere denial does not create knowledge of falsity. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 691 n.37 (1989) (publishers "need not accept denials, however

vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error."); *id.* at 681 ("Difference of opinion as to the truth of a matter – even a difference of 11 to 1 – does not alone constitute clear and convincing evidence that the defendant acted with a knowledge of falsity or with a 'high degree of awareness of probable falsity.'").[5]  That is particularly the case here, where the challenged statements are *characterizations* of DIS positions, rhetoric, and associations.  The plaintiff's own after-the-fact testimony is irrelevant.[6]

Nor does a 2011 quote from a newspaper article establish fault in 2018, or afterward.  Beirich simply told a reporter, *at that time*, that SPLC did not have a basis to designate DIS as an anti-immigrant hate group.  Opp. at 33-34 (ECF 114-7 at 21 (75:25, 76:1-5)); *see also* ECF 114-10 at 3.  The relevant state of mind is the

---

[5] Plaintiff cite *Connaughton* for the proposition that motive provides "evidentiary significance."  As the Supreme Court underscored in *Connaughton*, however, the actual malice standard measures subjective awareness of falsity – a standard satisfied on the record of that case, where a politically motivated publisher had "obvious reasons to doubt" the truth of the published information and purposefully avoided consulting sources that would disprove the information.  *Id.* at 666, 688.  Here, both the initial activation report and the subsequent Extremist Profile set forth the many, unchallenged bases for the conclusions, SUMF ¶¶ 28, 30, 36-38, and there are no obvious rebuttals to SPLC's evaluations that it purposefully avoided.  Indeed, King acknowledged that he was widely characterized as "anti-immigrant."  SUMF ¶ 15.

[6] While the Opposition repeatedly urges that SPLC "knew" that "DIS was not 'anti-immigrant,'" Opp. at 10, and "knew the truth" that he did not denigrate all immigrants, *id.* at 40-41, it offers no actual evidence of that claim, *id.* at 40-42.  To the contrary, the Extremist Profile itself cites the bases for SPLC's conclusions—including King's own rhetoric about immigrants generally.  ECF 114-12 at 8.  The Extremist Profile also cites the financial relationship between King's organization and the white nationalist John Tanton, as well as an interview in which King dubbed Tanton "a personal friend and a personal hero" who he was "proud" to know.  *Id.* at 10.

time of publication. *Hunt*, 720 F.2d at 647; *see also Bose Corp. v. Consumers Union*, 466 U.S. 485, 512 (1984) (evidence must establish that defendant "realized the inaccuracy at the time of publication"). The *undisputed record* here shows that Beirich learned in late 2017 through a newspaper reporter that DIS was connected with a network of organizations she had studied and considered deeply problematic for their ties to white supremacy as a basis for anti-immigration advocacy, and then directed a researcher to review DIS rhetoric and activities. SUMF ¶¶ 23-31. Based on a resulting memorandum summarizing those findings, she updated her opinion about DIS. *Id.* Nor does the years-earlier statement by Beirich have anything to do with subsequent designations after she left SPLC. *Id.* ¶¶ 41-45.

The undisputed facts regarding the preparation and publication of the challenged statements in this case, SUMF ¶¶ 16-38, 41-45, fully demonstrate a lack of actual malice. After years of discovery and numerous depositions, Plaintiffs present no admissible evidence that has any bearing on whether SPLC published the challenged statements with actual malice, much less the necessary clear and convincing evidence warranting denial of SPLC's motion. Summary judgment is proper on this basis as well.

## <u>CONCLUSION</u>

For the foregoing reasons and those set out in SPLC's initial brief, the Court should grant summary judgment in favor of SPLC and against Plaintiffs.

Dated: July 8, 2025                    Respectfully submitted,

                                       */s/ Chad R. Bowman*
Robert D. Segall                       Chad R. Bowman (*pro hac vice*)
[ASB-7354-E68R]                        Maxwell S. Mishkin (*pro hac vice*)
Shannon L. Holliday                    Lauren P. Russell (*pro hac vice*)
[ASB-5440-Y77S]                        BALLARD SPAHR LLP
COPELAND, FRANCO, SCREWS               1909 K Street NW, 12th Floor
& GILL, P.A.                           Washington, DC 20006
Post Office Box 347                    Telephone:  202-661-2200
Montgomery, AL  36101-0347             Facsimile:  202-661-2299
Telephone: 334-834-1180                Email:  bowmanchad@ballardspahr.com
Facsimile:  334-834-3172               Email:  mishkinm@ballardspahr.com
Email:  segall@copelandfranco.com      Email: russelll@ballardspahr.com
Email:  holliday@copelandfranco.com

*Attorneys for Defendant Southern Poverty Law Center, Inc.*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 8, 2025, I caused a copy of the foregoing Reply Memorandum of Law in Further Support of SPLC's Motion for Summary Judgment to be filed using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

<u>*/s/ Chad R. Bowman*</u>
Chad R. Bowman